DAVID T. BARTELS (SBN 209449)
LAWRENCE BARTELS LLP
7700 Irvine Center Dr, Suite 800
Irvine, CA 92618
Telephone: 949.346.4646
dbartels@lawrencebartels.com
MATTHEW M. LAVIN (pro hac vice)
ARNALL GOLDEN GREGORY LLP
Telephone: 202.677.4959
Matt.Lavin@agg.com

Attorneys for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc.,
Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathon Hagen

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ASANA BUY SELL LLC, MARK SHANDROW, ADAM SHANDROW, AND JONATHON HAGEN,<br><br>    Defendants. | Case No.: 8:25-cv-735<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MATTHEW M. LAVIN**<br><br>Date:      July 14, 2025<br>Time:      8:30 a.m.<br>Location: Courtroom 10A<br>Judge:    Hon. David O. Carter |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July, 14, 2025, at 8:30 am, or as soon thereafter as counsel may be heard by the above-entitled court, located in Courtroom

10A at 411 West Fourth Street, Santa Ana, CA 92701, before the Honorable David O. Carter, United States District Court Judge, Defendants Asana Recovery, Inc. ("Asana"), Beachfront Sober Living, Inc. ("Beachfront"), Asana Buy Sell LLC ("Asana Buy Sell"), Mark Shandrow, Adam Shandrow, and Jonathon Hagen (collectively, "Defendants") will move the Court to dismiss the Complaint—which alleges claims for fraud and fraudulent concealment, negligent misrepresentation, intentional interference with economic/contractual relationships, aiding and abetting tortious conduct, violation of California's business and professional Code Section 17200, et seq. (a/k/a California's Unfair Business Competition Law), money had and received, and unjust enrichment/quantum meruit, restitution—for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), 8, and 9(b).

This Motion is made and based on this Notice, the Memorandum of Points and Authorities attached hereto, the pleadings and the papers filed herein. This motion is made following a meet and confer between counsel for the parties pursuant to Local Rule 7-3, which took place via Zoom conferencing on April 17, 2025. *See* Declaration of Matthew M. Lavin ¶ 2.

Dated this 13th of June, 2025.

LAWRENCE BARTELS LLP

/s/ *David T. Bartels*

DAVID T. BARTELS

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorney for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathon Hagen*

/s/ *Matt M. Lavin*

MATTHEW M. LAVIN
*Attorney for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathon Hagen*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS AS ALLEGED ................................. 3

III.  STANDARD OF REVIEW ......................................................... 9

IV.  ARGUMENT ................................................................................. 10

    A.  THE COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING ................................................................. 10

    B.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR FRAUD. ..................................................................................... 12

        1.  THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS REQUISITE SPECIFICITY REGARDING THE ALLEGED FRAUDULENT CONDUCT. ............................... 13

            a.  BCBSOK Fails to Sufficiently Plead Defendants Engaged Body Brokers. ................................................. 13

            b.  The Complaint is Devoid of Facts to Support a Fraud Claim Premised Upon Kickbacks Paid to and Received by Patients. ...................................................... 15

        2.  THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS PARTICULARITY REGARDING PURPORTED FALSE ADVERTISING. ........................................................... 17

        3.  THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS PARTICULARITY REGARDING FRAUDULENT ENROLLMENT OF MEMBERS. ............................................. 18

        4.  THE COMPLAINT LACKS PARTICULARITY REGARDING THE STANDARD OF CARE RENDERED. ........................... 20

        5.  BCBSOK FAILS TO SUFFICIENTLY PLEAD FRAUD BY REPRESENTATIVE EXAMPLES. ......................................... 21

        6.  THE COMPLAINT FAILS TO PLEAD ALLEGED CERTIFICATION OF COMPLIANCE WITH ANTI-KICKBACK LAWS. ................................................................. 23

    C.  THE REMAINING CLAIMS SOUND IN FRAUD AND FAIL TO SATISFY RULES 8 AND (9)(B). .................................................. 25

V.  CONCLUSION ............................................................................. 25

-i-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)

**Error! Unknown document property name.**

## TABLE OF AUTHORITIES

**Cases**                                                                       **Pages**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................... 9

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ..................... 9, 15

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ...................................... 24

*Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ..................... 9

*Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) .................................... 22

*Giannini v. County of Sacramento*, No. 2:21-cv-00581-KJN, 2023 U.S. Dist. LEXIS 171812, at **2, 5, 2023 WL 6279437 (E.D. Cal. Sept. 26 2023) ........... 11

*In re UnitedHealthcare*, No. 19-2075 JVS, 2023 U.S. Dist. LEXIS 62672, *114-115 (C.D. Cal. Jan 13, 2023) ................................................. 16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..................... 9

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) .................................. 12

*Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 U.S. Dist. LEXIS 180710, 2022 WL 4913347, *6 (N.D. Cal. Oct. 2, 2022) ................................. 24

*Morris v. Sun Pharma Global*, No. CV 20-10441, 2021 U.S. Dist. LEXIS 169187, at *8, 2021 WL 3913191, (C.D. Cal. May 13, 2021) ........................ 11

*Papasan v. Allain*, 478 U.S. 265 (1986)................................................. 9

*Purcelley v. Ekster Inc.*, No. 2:23-cv-07908-WLH-JC, 2024 U.S. Dist. LEXIS 62589, *14-15 (C.D. Cal., April 4, 2024)........................................... 12

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985).......................... 10, 18

-ii-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)

**Error! Unknown document property name.**

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................. 17

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) .................................................................................................... 21, 22

*U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*, No. CV13-07039 SJO, 2016 U.S. Dist. LEXIS 192400, at *4 (C.D. Cal. June 6, 2016) ........................ 14

*United States ex rel. Jones v. Sutter Health*, No. 18-CV-02067-LHK, 2021 U.S. Dist. LEXIS 156308, 2021 WL 3665939, *11 (N.D. Cal. Aug. 18, 2021) ......... 10

*United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993 (C.D. Cal, 2015) ................................................................................................................... 10

*United States ex rel. Shapiro v. Fairfax Disc. Pharmacy*, No. 2:17-cv-05913-SVW-GJS, 2018 U.S. Dist. LEXIS 227395, 2018 WL 6185956, at *3 (C.D. Cal. Mar. 7, 2018) ................................................................................................................ 25

*United States v. Aurora Las Encinas, LLC*, No. CV10-01031, 2012 U.S. Dist. LEXIS 208470, 2012 WL 12897081, *12 (C.D. Cal. Sept. 6, 2012) ................. 21

*Vess v. Ciba-Geigy Corp. USA*, 371 F.3d 1097 (9th Cir. 2003) ................ 10, 13, 25

**Statutes**

42 U.S.C. § 1320a-7b ................................................................................. 24

Cal. Heath & Safety Code § 11831.65(b)-(c) ....................................................... 16

California's business and professional Code Section 17200, et seq ....................... 25

Patient Protection and Affordable Care Act .............................................................. 3

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................ 2

Fed. R. Civ. P. 8(d)(1) ........................................................................ 2, 25

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

Fed. R. Civ. P. 9(b) ................................................................................. passim

Local Rule 7-3 ............................................................................................ 2

Rule 12(b)(6) ................................................................................... 2, 3, 25

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)

**Error! Unknown document property name.**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Asana Recovery, Inc. ("Asana"), Beachfront Sober Living, Inc. ("Beachfront"), Asana Buy Sell LLC ("Asana Buy Sell"), Mark Shandrow, Adam Shandrow, and Jonathon Hagen (collectively, "Defendants") submit this motion pursuant Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8 to dismiss Plaintiff Blue Cross and Blue Shield of Oklahoma's ("BCBSOK") deficient Complaint.

The Complaint is a near carbon-copy of similar lawsuits BCBSOK recently has filed against other substance use disorder (SUD) treatment providers in the State of California, each following the same formula as the Complaint. These complaints appear to be nothing more than an orchestrated scheme on the part of BCBSOK to discourage out-of-state providers like Asana from treating Oklahoma residents in desperate need of SUD care, despite BCBSOK marketing its health plans on the premise that members may obtain services from providers throughout the country.

At bottom, all seven causes of action asserted in the Complaint are based on an alleged wide-ranging fraudulent scheme that BCBSOK contends applied to hundreds of patients and thousands of claims over the course of three-plus years. While the Complaint generally alleges that Asana submitted false statements with its claims forms—namely, representing to BCBSOK that provided treatments were medically necessary and in compliance with applicable laws, the Complaint fails to

-1-

identify any actual false statements or misrepresentations purportedly made by Asana or any other Defendants to BCBSOK that could plausibly give rise to an actionable fraud claim. And, the Complaint suffers from numerous other maladies.

For starters, the Complaint is the antithesis of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *Borrego Cmty. Health Found. v. Hebets*, No. 3:22-cv-01056-RBM-SBC, 2025 U.S. Dist. LEXIS 57758, at *51 (S.D. Cal. Mar. 24, 2025) ("Rule 8(d)'s requirement that each averment of a pleading be 'simple, concise, and direct[]' . . . is a basis for dismissal independent of Rule 12(b)(6)."). The Complaint is vague, conclusory, complex, and contains immaterial allegations not clearly directed to any particular cause of action or Defendant.

The Complaint is nothing more than a litany of legal conclusions masquerading as factual allegations to foster an illusion of fraudulent conduct. At every turn, the Complaint fails to provide Defendants with sufficient information about the alleged misconduct to wage a defense other than stating a general denial. Despite attaching voluminous exhibits to the Complaint, BCBSOK fails to allege any specific facts relating to hundreds of patients and thousands of claims that purportedly are subsumed within an alleged fraudulent scheme that forms the basis of each of Plaintiff's causes of action. Instead BCBSOK misguidedly relies on a

handful of purported "representative examples" that ostensibly apply equally to those hundreds of patients and thousands of claims for which no specific allegations are made. But even when looking solely at those few representative examples, BCBSOK's Complaint fails to pass Rule 9 and 12(b)(6) muster. Making matters worse, the exhibits themselves utterly fail to establish what BCBSOK purports them to be and, in many instances, directly refute BCBSOK's allegations. For these reasons, which are fully set forth below, the Complaint should be dismissed pursuant to Fed. R. Civ. P. §§ 12(b)(6), 9(b) and 8.

## II.    STATEMENT OF FACTS AS ALLEGED[1]

"BCBSOK was the primary insurer in Oklahoma offering individual health plans pursuant to the Patient Protection and Affordable Care Act ('ACA')." Comp. ¶ 34. BCBSOK offered various statewide health benefit plans on the federal health insurance exchange through which individuals can enroll in privately insured healthcare plans, like those offered by BCBSOK. *Id*., ¶ 51. Individuals can enroll in BCBSOK insurance plans during open enrollment, which occurs once per year, or pursuant to "Special Open Enrollment" provided the applicant certifies that she experienced a qualifying event such as loss of coverage under a pre-existing plan.

_____

[1] Solely for purposes of this Motion, Defendants rely on the facts as pled in the Complaint without making any indication as to the veracity of such allegations.

-3-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

*Id*., ¶¶ 52-53. Notably, members of federally recognized Native American Tribes, whom BCBSOK contends were the focus of Defendants' purported fraudulent scheme, *id.*, ¶¶ 1, 49, may enroll in ACA marketplace plans like those offered by BCBSOK at any time and not only during open enrollment.

Once a member is enrolled in a BCBSOK plan, he has access to BCBSOK's "robust out-of-network, out-of-state benefits" enabling members to seek medical treatment outside Oklahoma. *See generally* Comp. ¶ 50. Many individuals seek treatment away from their home environments to eliminate stressors that contribute to addiction. *Id*. ¶ 45. This is precisely why "sober living homes" were created. *Id*. Before entering sober living homes, they typically undergo a more intense form of treatment known as detox. *Id*. ¶ 41. Detox is inpatient treatment and generally the first step of the recovery process with a focus on withdrawal management and stabilization. *Id*. During detox patients are housed in a qualified facility, like Asana, and monitored 24-hours a day for up to several weeks. *Id*. Following discharge from detox, patients begin residential treatment ("RTC") or "intensive outpatient treatment," which takes two forms: partial hospitalization ("PHP") and intensive outpatient treatment ("IOP"). *Id.* ¶¶ 42-44. Once PHP and/or IOP are completed, patients graduate to general outpatient care. *Id*. "While health insurance pays for outpatient treatment, it does not cover rent or housing costs." *Id.* ¶ 46.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

Asana operates a SUD treatment facility in Orange County, California and at all times relevant to the complaint provided detox, RTC, PHP, and IOP. *See generally* Comp. Asana accepts individuals insured with BCBSOK for treatment and, as a result, submits claims for treatment provided to plan members to Anthem Blue Cross of California (the local host plan), who then forwards the claims to BCBSOK for payment. *See id.*, ¶¶ 36, 62. To obtain payment for treatment rendered to BCBSOK members, Asana submits standard healthcare "claims forms" such as the CMS 1500, HCFGA, or UB-04 in which it purportedly represents and certifies that all services provided to the subject BCBSOK member were medically necessary, not in violation of applicable laws, and that the claim form is accurate. *Id.*, ¶¶ 36- 37. BCBSOK contends that it relies on these forms to remit payment. *Id.*, ¶ 38.

According to the Complaint, Asana "induced potential patients" to submit to its treatment center by advertising to unidentified recovery groups on social media and within Native American tribes in Oklahoma. *Id.*, ¶ 48-49. BCBSOK vaguely asserts that (i) "Asana represented that they had 'reached an agreement' with the state of Oklahoma to provide treatment so that individuals with BCBSOK plans could obtain a good deal for treatment" and (ii) an unidentified admissions director promised a potential patient $10,000 if he enrolled in a BCBSOK plan and attended treatment at Asana. *Id.*, ¶ 49(a). Notably, the Complaint fails to identify a single patient who allegedly received these advertisements and communications, or which, if any,

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

patients relied on these advertisements or communications for purposes of seeking treatment at Asana.[2] Moreover, the Complaint stops short of alleging that the referenced $10,000 offer was ever actually paid or that the patient submitted to treatment based on the alleged offer. *Id.* Asana patients were also purportedly incentivized to post positive reviews on Google, Yelp, and social media in exchange for gift cards, which BCBSOK contends "deceived prospective patients into enrolling at Asana." *Id.*, ¶ 49(b). Again, however, the Complaint fails to identify what information contained in the alleged reviews is false or misleading, much less who purportedly relied on the reviews. BCBSOK also contends that Asana employed former patients to recruit new patients and paid said recruiters for every new patient successfully enrolled in treatment, *id.*, ¶ 49(c), but does not identify the specific patients who were allegedly "brokered."

Because many potential patients either did not have insurance or, if they did, only maintained low-paying governmental plans, BCBSOK alleges that Asana encouraged these individuals to seek better insurance, including BCBSOK plans,

---

[2] While the Complaint also generally alleges that Asana made "false or misleading sales pitches about the quality of treatment at Asana and perks such as 'private chefs[,]'" (Comp. ¶ 49), BCBSOK fails to identify the actual statements that form the basis of this allegation, who made these representations, when and to whom they were made, and who purportedly relied on any such statements in making the decision to seek treatment at Asana.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

available on the federal health insurance exchange. *Id*., ¶ 50. Not less than 214 Asana patients purportedly were enrolled in BCBSOK plans by a single undisclosed insurance agent, some shortly before beginning treatment, and others outside of open enrollment. *Id*., ¶¶ 57-59. The Complaint, however, does not allege that Asana or any other Defendant had any contact with this unidentified agent. And, while BCBSOK vaguely alleges that Asana staff members pretended to be prospective members as part of the coverage enrollment process, *id.* ¶ 55, the Complaint fails to identify any specific patient who was enrolled through this alleged practice, what information was communicated, to whom the communication was made, or any other relevant details. BCBSOK also alleges that an Asana admissions director coached a prospective member as to what information he should report as his annual income to obtain a preferred plan. *Id.*, ¶ 56. However, the Complaint stops short of alleging that the prospective member actually provided false information to anyone, including BCBSOK, or that BCBSOK relied on any false information for purposes of enrolling this particular member (or any member) in a plan.

BCBSOK next contends that, once individuals enrolled in BCBSOK plans and presented at Asana for treatment, they received inadequate care. *Id.*, ¶¶ 69-77. In support of this generalized allegation, which BCBSOK ostensibly contends applies to hundreds of patients and thousands of claims, BCBSOK identifies a single prior patient, JC, who allegedly was dissatisfied with her treatment at Asana. *See* Comp.

¶¶ 1-6, 70. BCBSOK similarly cherry-picks singular instances in which patients allegedly either (i) fell asleep during a single group therapy session (where, as BCBSOK alleges, is primarily intended to simply manage withdrawal and stabilize the patient) or (ii) elected not to pay attention during PHP/IOP sessions—which, according to BCBSOK, establishes that billed services were worthless and/or were not provided as billed for literally thousands of claims (despite that the Complaint includes specific, albeit limited, allegations for only four patients). *Id.*, ¶¶ 71, 74.

BCBSOK further alleges that Defendants enticed patients to seek and stay in treatment at Asana by (i) providing free transportation to California and free housing in sober living houses located in Huntington Beach, California, and (ii) waiving patient cost-share obligations. *Id.*, ¶¶ 63-67. The Complaint fails to identify any specific patients for whom Asana allegedly waived cost-share obligations and identifies only two patients who allegedly received "free housing", albeit at unidentified times and locations. Plaintiffs' own exhibits reflect that in many instances patients had no cost-share obligations. *See* Exs. A and C.

Based on these various alleged fraudulent schemes, BCBSOK contends that Asana, together with the other co-defendants, falsified standard claims forms by certifying that the claims forms followed all applicable laws and regulations, did not violate applicable laws, and that the claim form is accurate. *Id.*, ¶ 75, 80.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

## III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions, however, are not entitled to a presumption of truth. *Id.*; *see also Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts are not "required to accept as true allegations that contradict exhibits attached to the Complaint or … allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Rule 9(b) applies to all fraud-based claims and demands that all such claims and causes of action meet heightened pleading requirements. Fed. R. Civ. P. 9(b); *see also Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also United*

*States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1011 (C.D. Cal,

2015) ("to satisfy Rule 9(b), a plaintiff must specify the content of the fraudulent

representation, the person who made it, when and where the representation was made,

and the manner in which it was untrue and misleading, or the circumstances

indicating that it was false.") (internal citations omitted). Rule 9's heightened

pleading standard ensures allegations are "specific enough to give defendants notice

of the particular misconduct which is alleged to constitute the fraud charged so that

they can defend against the charge and not just deny that they have done anything

wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

"When an entire complaint . . . is grounded in fraud and its allegations fail to

satisfy … Rule 9(b), a district court may dismiss the complaint." *United States ex*

*rel. Jones v. Sutter Health*, No. 18-CV-02067-LHK, 2021 U.S. Dist. LEXIS 156308,

2021 WL 3665939, *11 (N.D. Cal. Aug. 18, 2021) citing *Vess v. Ciba-Geigy Corp.*

*USA*, 371 F.3d 1097, 1107 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    THE COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING.

A shotgun pleading is one in which "(1) one party pleads that multiple parties did

an act, without identifying which party did what specifically; or (2) when one party

pleads multiple claims and does not identify which specific facts are allocated to

which claim." *Giannini v. County of Sacramento*, No. 2:21-cv-00581-KJN, 2023 U.S. Dist. LEXIS 171812, at **2, 5, 2023 WL 6279437 (E.D. Cal. Sept. 26 2023) ("Dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit. The practice of incorporating each preceding paragraph, regardless of relevancy has been harshly criticized as a form of shotgun pleading that violates Rule 8's requirement of a short and plain statement and interferes with the court's ability to administer justice.") (internal citations and quotations omitted); *see also Morris v. Sun Pharma Global*, No. CV 20-10441, 2021 U.S. Dist. LEXIS 169187, at *8, 2021 WL 3913191, (C.D. Cal. May 13, 2021) ("Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. [] One common type of impermissible shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong.") (internal citations and quotations omitted).

Here, the Complaint fails to comply with Rule 8's requirements in multiple ways. The Complaint indiscriminately lumps all Defendants together under the guise that all Defendants acted in concert such that the act of one is attributable to all. Comp. ¶¶ 62-63, 79-121. With very few exceptions, the Complaint also fails to identify the

specific individuals who acted on behalf of the various corporate Defendants. And the Complaint incorporates all prior paragraphs and does not identify which specific allegations of fact are allocated to which claim. *Id.* ¶¶ 78, 88, 94, 100, 106, 112, 118. For these reasons, the Complaint should be dismissed pursuant to Rule 8.

**B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD.**

To successfully assert a cause of action for fraud, California law requires a plaintiff to plead the following elements with particularity: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The elements for fraudulent concealment, are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Purcelley v. Ekster Inc.*, No. 2:23-cv-07908-WLH-JC, 2024 U.S. Dist. LEXIS 62589, *14-15 (C.D. Cal., April 4, 2024) (internal citation and quotation omitted).

Here, BCBSOK alleges that Defendants knowingly made false or material misrepresentations to various unidentified third parties by (i) paying kickbacks to body brokers and engaging in false advertising to recruit patients, (ii) paying kickbacks to patients in the form of free housing and transportation and free

treatment by waiving members' cost share, and (iii) facilitating incorrect information as part of the member enrollment process, and to BCBSOK by submitting claim forms for payment with false certifications and/or without actually providing the services billed for. *See* Comp. ¶¶ 79, 81, 83. None of these averments are pled with the requisite particularity, and the Complaint therefore fails to satisfy Rule 9(b).

## 1. THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS THE REQUISITE SPECIFICITY REGARDING THE ALLEGED FRAUDULENT CONDUCT.

BCBSOK's allegations that Defendants paid kickbacks to "body brokers" who enrolled new patients for treatment at Asana and to BCBSOK members in the form of free treatment, free or discounted housing, food, and transportation are deficient as a matter of law. *See* Comp. ¶¶ 49(c), 63-65.  The Complaint lacks any specifics about these alleged kickbacks. Plaintiff completely fails to plead the "who, what, when, where, and how" particulars necessary for claims sounding in fraud. *Vess*, 317 F.3d at 1106-07 (plaintiff failed to plead the "the who, what, when, where, and how of the misconduct charged") (internal citation omitted).

### a. BCBSOK Fails to Sufficiently Plead Defendants Engaged Body Brokers.

The Complaint states only that "Asana 'employees' and/or 'contractors' were paid kickbacks for every patient they were able to … successfully enroll into treatment." Comp. ¶ 49(c). The Complaint does not identify who from Asana paid the alleged kickbacks or which patients obtained treatment at Asana based on the

-13-

alleged kickbacks.[3] The Complaint also does not identify a single "current patient" who allegedly received payment for "leads" or for providing positive reviews of their Asana experiences. *Id.* ¶¶ 48-49(a)-(c). The closest BCBSOK comes to alleging a specific "kickback" involves patient "DD" who was purportedly offered $10,000 "if he enrolled in a BCBSOK plan and attended Asana for a certain length of time." *Id.* ¶ 49(a). But the Complaint fails to allege that any payment was ever made to DD or that DD relied on this alleged offer when deciding to seek treatment at Asana. Put simply, the Complaint is devoid of any allegation that kickbacks were actually paid for alleged body brokering. *See generally U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*, No. CV13-07039 SJO, 2016 U.S. Dist. LEXIS 192400, at *4 (C.D. Cal. June 6, 2016) (holding that relator "fails to identify any specific individuals who accepted a kickback or any specific occurrence of a kickback actually being paid."). Accordingly, BCBSOK fails to plausibly allege a fraud claim

_____

[3] For example, Plaintiff alleges that patient "JC" was contacted by alleged body broker "KB" and ultimately sought treatment from Asana. Comp. ¶¶ 1-7. However, the Complaint stops short of alleging that KB or anyone else received a kickback for treatment services JC received at Asana, including any impermissible kickback paid by Defendants. Moreover, the Complaint does not allege that JC was fraudulently enrolled in a BCBSOK plan, that JC (or anyone else on her behalf) made false representations to BCBSOK for enrollment purposes, or that Asana billed or received payment for any days of treatment following her decision to terminate treatment.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

based on purported "body brokering," much less assert sufficient facts to put Defendants on notice of the particular misconduct that allegedly constitutes fraud. *See Bly-Magee*, 236 F. 3d at 1019 (9th Cir. 2001).

> **b.    The Complaint is Devoid of Facts to Support a Fraud Claim Premised Upon Kickbacks Paid to and Received by Patients.**

The same deficiencies plague the allegations regarding kickbacks to BCBSOK members. The Complaint summarily declares that "Defendants" waived patients' cost share but provides no support for this blanket assertion. *See* Comp. ¶ 64. Indeed, the Complaint fails to identify any specific patient whose cost-share obligations purportedly were waived by Defendants, and Plaintiff's own exhibits refute these allegations. Exhibit C, purportedly an explanation of benefits form for patient JH, reflects that she had no cost-share obligations[4] and Exhibit A reflects that the lion's share of claims listed had no cost-share obligations.

Insofar as the Complaint purports to allege representative examples of free housing for only 3 of approximately 214 patients at issue (AW, DD, and JH), these allegations fall short. California law expressly permits SUD providers to offer

---

[4] While Exhibits D and E reflect cost-share amounts for patients JC and AW, respectively, the Complaint does not allege that Asana failed to collect these amounts or advised either patient that he/she was not required to pay.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

patients discounted housing following discharge from in-patient treatment as well as ground or air travel to access treatment.[5] Moreover, not one of these 3 "examples" identifies which Defendant(s), if any, promised and/or provided free housing, the terms of the alleged free housing, if any, and the dates that free housing was provided. Rather, these allegations are premised on a member's alleged "impression" that housing was paid for by insurance without any color as to the basis of said impression. And, the Complaint does not even attempt to identify which, if any, of the approximately 214 patients identified by member identification number in Exhibit B purportedly received free housing.

Moreover, BCBSOK lumps all defendants into the alleged kickback scheme without specifying which Defendants such allegations apply to. This is a fatal error under Rules 9(b) and 8. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the

_____

[5] Under California law, SUD treatment providers, like Asana, may (i) provide both air and ground transportation to individuals seeking recovery and (ii) offer discounted housing to patients following discharge from in-patient treatment if the parties enter into a separate housing contract that "includes a repayment plan for any subsidized rent," and the provider "makes a good faith effort to collect the debt." Cal. Heath & Safety Code § 11831.65(b)-(c); *In re UnitedHealthcare*, No. 19-2075 JVS, 2023 U.S. Dist. LEXIS 62672, *114-115 (C.D. Cal. Jan 13, 2023) (California law permits certified SUD providers to pay for transportation and discount housing).

-16-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal citations and alterations omitted).

### 2. THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS PARTICULARITY REGARDING PURPORTED FALSE ADVERTISING.

BCBSOK's false advertising allegations fare no better. BCBSOK vaguely asserts that: (i) "Asana aggressively flooded recovery group social media groups and certain populations in Oklahoma" with "misleading sales pitches about the quality of treatment at Asana and perks such as 'private chefs'"; (ii) "Asana represented that they had 'reached an agreement' with the state of Oklahoma to provide treatment so that individuals with BCBSOK plans could obtain a good deal"; (iii) an unidentified admissions director promised a potential patient $10,000 if he enrolled in a BCBSOK plan and attended treatment at Asana; and (iv) patients were paid for leads and for providing false reviews to influence prospective patients' treatment decisions. Comp., ¶ 49(a)-(b). Taking each of these in turn, BCBSOK fails to allege the contents of the purported misleading sales pitches, how the pitches were misleading, who actually received these pitches, when they were made, who specifically they were made to, whether any prospective or actual BCBSOK member relied on these pitches for purposes of obtaining coverage under a BCBSOK plan or seeking treatment at Asana, or how such pitches rendered any particular claim improper. Regarding the purported agreement with the State of Oklahoma, BCBSOK similarly

-17-
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
Error! Unknown document property name.

fails to identify the actual content of the alleged representation, when or how the statement was made, where it was made or published, or who it was made to. Nor does the Complaint allege how the alleged misrepresentation resulted in any alleged improper claims billed to BCBSOK. Regarding the alleged offer of payment to patient DD, the Complaint fails to allege any payment was actually made or that DD relied on the alleged promise for purposes of seeking treatment at Asana. Regarding the alleged payments for leads and positive reviews, the Complaint similarly fails to, among other things, identify any patient who provided information and received such payments, any prospective patient whose information was shared, or any patient who allegedly sought and received treatment based on these activities.

BCBSOK's generalized assertions of false advertising fall far short of a claim for fraud and certainly do not put Defendants on notice of the particular misconduct which is alleged to constitute the fraud charged. *See Semegen*, 780 F.2d at 731.

### 3.   THE COMPLAINT FAILS TO STATE A CLAIM AND LACKS PARTICULARITY REGARDING FRAUDULENT ENROLLMENT OF MEMBERS.

While the Complaint is long on the varied list of ways Defendants purportedly engaged in fraudulent enrollment practices, it is short on any particularized allegations necessary to support fraud claims.

In particular, the Complaint fails to identify a single member or prospective patient who was allegedly impersonated. Regarding the allegations that an

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
Error! Unknown document property name.

admissions director instructed patient DD as to "what he needed to say he earned per year to get into the BCBSOK plan preferred by Asana[,]" *id.* ¶ 56, the Complaint fails to allege that DD actually misrepresented his financial information to anyone (whether an agent or otherwise), whether DD even worked with an agent for purposes of seeking enrollment, or that BCBSOK relied on any falsified information for purposes of enrolling DD as a plan member. The Complaint similarly fails to identify a single patient whose bills were purportedly delayed by Asana pending enrollment in a BCBSOK plan, or who purportedly falsified a qualifying event or any residency information.[6] BCBSOK also fails to allege a single tie between any of the Defendants and the unidentified insurance broker who purportedly enrolled hundreds of members who ultimately sought treatment at Asana. Accordingly, in addition to falling well short of Rule 9(b)'s particularity requirement, BCBSOK's

------

[6] Ironically, BCBSOK, on the one hand, alleges that approximately 85 members were enrolled outside of open enrollment and contends, on "information and belief," that "many of the 'qualifying events' used to justify a special enrollment period were false." Comp. at ¶ 59. Yet, on the other hand, the Complaint is premised on the competing allegation that the members at issue are primarily members of Native American Tribe(s) in Oklahoma. *See id.*, ¶¶ 1, 49(a), 50. As BCBSOK assuredly knows, members of Native American Tribes may enroll in exchange plans at any time and need not wait for open enrollment. *See American Indians and Alaska Natives,* HEALTHCARE.GOV (Jun. 12, 2025 3:43pmET) https://www.healthcare.gov/american-inidians-alaska-natives/.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

hodge podge of allegations fails to plausibly assert a viable claim against any of the

Defendants based on alleged fraudulent enrollment practices.

### 4.  THE COMPLAINT LACKS PARTICULARITY REGARDING THE STANDARD OF CARE RENDERED.

Plaintiff similarly fails to sufficiently plead a claim for fraud relating to the

services rendered and billed for by Asana. The Complaint relies on two anecdotes

of purported insufficient care during the detox process at Asana. Comp. ¶¶ 1-7, 70-

72. With respect to the first patient, JC, BCBSOK alleges that "JC discovered the

treatment and experience she had been promised was a lie." *Id.* at ¶ 4. But other than

purportedly being *offered* "with an agreement to stay at Asana for 90 days, far longer

than the maximum 30-days she had been told prior to arrival," *id.* ¶ 3, the Complaint

fails to allege what specific false promises were purportedly made to her. And,

BCBSOK fails to allege that it was billed or paid for any days of treatment after JC

voluntarily terminated her treatment. *See also*, Ex. D (demonstrating Asana billed

for only seven days of treatment). Regarding the second patient, JH, BCBSOK

alleges that JH received group therapy and virtual sessions, but complains that

"'[t]he group' therapy entailed sitting in a circle smoking cigarettes while somebody

spoke on a computer" and "[f]or the virtual sessions, Asana staff logged him into

sessions and then advised that he was free to do what he pleased so long as he

remained logged in." *Id.* ¶ 71. While BCBSOK may take issue with the effectiveness

of the alleged treatment services, none of these allegations rise to the level of fraud. Whatever lack of personal commitment or effort a particular patient may have exerted during his respective stay does not mean that treatment was not provided or deficient. In short, none of these allegations, even if true, plausibly allege that treatment was not medically necessary or provided. The Complaint affirmatively alleges that these patients received medications, participated in group and virtual sessions, and were in-patient at Asana during the relevant billing dates. *Id.* ¶¶ 4, 70-71; *see also* Exs. C and D.[7]

### 5.    BCBSOK FAILS TO SUFFICIENTLY PLEAD FRAUD BY REPRESENTATIVE EXAMPLES.

"[T]he concept of a false or fraudulent scheme should be construed as narrowly as is necessary to protect the policies promoted by Rule 9(b)." *See United States v. Aurora Las Encinas, LLC*, No. CV10-01031, 2012 U.S. Dist. LEXIS 208470, 2012 WL 12897081, *12 (C.D. Cal. Sept. 6, 2012) (citing *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Accordingly, representative examples may support more generalized allegations of fraud only to the extent that such examples are truly representative of the broader class of claims.

---

[7] The same holds true regarding allegations of a patient falling asleep during a group therapy session. Simply because a patient fell asleep during a session does not mean that adequate services were not provided as billed or that Defendants falsified records.

*Id.* Representative examples are sufficient to plead fraud only where the particulars of the alleged scheme are "paired with a reliable indicia that lead to a strong inference" that the fraudulent scheme actually occurred. *See Ebeid v. Lungwitz*, 616 F.3d 993, 998-999 (9th Cir. 2010) (plaintiff failed to supply a "reasonable indicia" that false claims were actually submitted). Here, BCBSOK fails to plead any continuity among its allegations of alleged fraud and cannot satisfy Rule 9(b).

The Complaint identifies four specific patients (JC, DD, JH, and AW), and the specific allegations asserted relative to each are varied and not uniform. For the reasons set forth above, none of the allegations asserted as to these four patients sufficiently plead a claim of fraud. In an apparent attempt to plead around the insufficient representative examples, BCBSOK summarily contends that Exhibit A identifies all "claims arising from the fraudulent scheme" and Exhibit B identifies all "patients whose claims arise from the fraudulent enrollments." Comp. ¶ 77. Exhibits A and B consistent of 200-plus patients and thousands of claims, and neither exhibit provides any information to substantiate that the members are at all similar to even one of the four specific patients identified in the Complaint, including, for example, the manner of their enrollment or what renders the members' enrollment allegedly fraudulent. Summarily declaring a nondescript list of members "fraudulently enrolled" without any supporting factual allegations establishing what was false and/or fraudulent about the members enrollment is facially insufficient to

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

satisfy Rule 9(b). Similarly, BCBSOK alleges that "[t]he spreadsheet attached hereto as Exhibit A contain[s] the specifics of each misrepresentation submitted by Defendants through Asana." *Id.*, ¶ 82. Yet Exhibit A contains no certifications, statements, or any other discernable "specifics" of any purported misrepresentations.

BCBSOK's representative examples are individually deficient to support a fraud claim and do not establish any basis to conclude that they are representative of a broader class of claims.

### 6. THE COMPLAINT FAILS TO PLEAD ALLEGED CERTIFICATION OF COMPLIANCE WITH ANTI-KICKBACK LAWS.

BCBSOK's ostensible contention that Defendants' submission of claims forms constitutes false statements because such forms contain representations "that the treatment provided was medically necessary and appropriate and certify that [Defendants] followed all applicable laws and regulations, have not violated applicable law, and that their claims forms are accurate" falls far short of a claim for fraud. *See* Comp. ¶¶ 36-37, 80. Indeed, the Complaint is silent as to the basis of Defendants' supposed certification of compliance with unspecified "applicable laws[.]" This garden variety claim does not put Defendants on notice of what allegedly "applicable laws" they fraudulently certified compliance with, the context of the certification, or when and to whom the certifications were made. In fact, the

-23-

Complaint fails to specify in detail a single instance of how any defendant falsely certified a claim for payment to BCBSOK.

At best, the Complaint provides that Defendants likely submitted claims to BCBSOK on CMS-1500 forms. *See* Comp. ¶ 36. However, the CMS-1500 form only requires certification of compliance with the Federal Antikickback Statute, 42 U.S.C. § 1320a-7b, for Medicare and Medicaid government claims.[8] To be certain, the Complaint does not involve federal health care program claims and the CMS-1500 does not contain a certification of compliance with anti-kickback laws for claims submitted to private commercial plans like BCBSOK. Thus, it is incumbent upon BCBSOK to identify the generalized "applicable laws," any BCBSOK plan provision, provider agreement, or industry standard requiring Defendants to include a certification of compliance with said "applicable laws." BCBSOK did not do this. *See generally United States ex rel. Shapiro v. Fairfax Disc. Pharmacy*, No. 2:17-cv-05913-SVW-GJS, 2018 U.S. Dist. LEXIS 227395, 2018 WL 6185956, at *3 (C.D.

---

[8] A copy of the CMS-1500 form is available at https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms1500.pdf. While courts generally look to the four corners of the complaint when addressing a motion to dismiss, under the doctrine of incorporation by reference "the Court may consider documents 'whose contents are alleged in complaint and whose authenticity no party questions. But which are not physically attached to the. . . pleadings.'" *See Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 U.S. Dist. LEXIS 180710, 2022 WL 4913347, *6 (N.D. Cal. Oct. 2, 2022) (*citing Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

**Error! Unknown document property name.**

Cal. Mar. 7, 2018) (relator failed to plead a false claim because "it requires several more logical steps (absent in the complaint) to warrant an inference that defendants must have been submitting false claims to the government.").

## C. THE REMAINING CLAIMS SOUND IN FRAUD AND FAIL TO SATISFY RULES 8 AND (9)(B).

Plaintiff also asserts causes of action for: negligent misrepresentation, intentional interference with economic/contractual relationships, aiding and abetting tortious conduct, violation of California's business and professional Code Section 17200, et seq., money had and received, and unjust enrichment/quantum meruit, restitution. The Complaint alleges that each cause of action pled relies on a "unified course of fraudulent conduct" making every claim subject to the Rule 9(b) heightened pleading requirements. *See Vess ,*317 F.3d at 1103-1104. Accordingly, for the same reasons as set forth above, Plaintiff's remaining causes of action must be dismissed under Rules 12(b)(6), 8, and 9(b).

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's claim should be dismissed for failure to state a claim pursuant to Rules 12(b)(6), 8, and 9(b).

LAWRENCE BARTELS LLP

/s/ *David T. Bartels*

DAVID T. BARTELS
*Attorney for Defendants Asana
Recovery, Inc., Beachfront Sober*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

1

*Living, Inc., Asana Buy Sell LLC,*
*Mark Shandrow, Adam Shandrow, and*
*Jonathon Hagen*

2

3

4

 /s/ *Matthew M. Lavin*

5

MATTHEW M. LAVIN
*Attorney for Defendants Asana*
*Recovery, Inc., Beachfront Sober*
*Living, Inc., Asana Buy Sell LLC, Mark*
*Shandrow, Adam Shandrow, and*
*Jonathon Hagen*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

## DECLARATION OF MATTHEW M. LAVIN

I, Matthew M. Lavin, declare as follows:

1.      I am an attorney at law, duly licensed to practice in the District of Columbia and before this Court *pro hac vice*. I am a partner of the law firm Arnall Golden Gregory LLP, counsel of record for Defendants Asana Recovery, Inc. ("Asana"), Beachfront Sober Living, Inc. ("Beachfront"), Asana Buy Sell LLC ("Asana Buy Sell"), Mark Shandrow, Adam Shandrow, and Jonathon Hagen (collectively, "Defendants") in this action. I submit this declaration in support of Defendants' motion to dismiss. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently to such facts.

2.      On April 17, 2025, I spoke with counsel for Plaintiff, Benjamin McCoy, to discuss Defendants' intention to move to dismiss the Complaint in this action and the legal and factual basis for this motion. The parties' counsel disagreed about the sufficiency of the Complaint as to Defendants, and we were unfortunately unable to reach a resolution which eliminates the necessity for Defendants' motion to dismiss.

///

///

///

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3    Executed on June 13, 2025, in Washington, DC.

4

5                                         /s/ *Matthew M. Lavin*

6                                         MATTHEW M. LAVIN
                                          *Attorney for Defendants Asana*
7                                         *Recovery, Inc., Beachfront Sober*
                                          *Living, Inc., Asana Buy Sell LLC, Mark*
8                                         *Shandrow, Adam Shandrow, and*
                                          *Jonathon Hagen*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BLUE CROSS AND BLUE SHIELD OF
OKLAHOMA'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND (9)(B)
**Error! Unknown document property name.**