DAVID D. PIPER (CASB No. 179889)
dpiper@stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
1 World Trade Center, Suite 2050
Long Beach, CA 90831
T: (562) 366-1653
F: (562) 366-1646

BENJAMIN H. MCCOY *(pro hac vice)*
bmccoy@stradley.com
JORDANN R. CONABOY *(pro hac vice)*
jconaboy@stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: (215) 564-8108
F: (215) 564-8120

Attorneys for Plaintiff
BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, A DIVISION OF
HEALTH CARE SERVICE CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, a division of HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company,<br><br>Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ASANA BUY SELL LLC, MARK SHANDROW, ADAM SHANDROW, JONATHAN HAGEN, CHRISTIAN SMALL, M.D., JOHN DOES 1-50, AND ABC CORPS. 1-50,<br><br>Defendants. | Case No. 8:25-cv-00735-DOC-DFM<br><br>Hon. David O. Carter<br><br>**RESPONSE IN OPPOSITION TO THE ASANA DEFENDANTS' MOTION TO DISMISS (ECF NO. 28)**<br><br>Hearing Date: August 11, 2025<br>Time: 8:30 AM<br>Judge: Hon. David O. Carter<br>Courtroom: 10A |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

    I.      INDUSTRY BACKGROUND ........................................................ 3

    II.     The BCBSOK ACA EXCHANGE PLANS ................................... 3

    III.    DEFENDANTS' FRAUDULENT SCHEME ................................. 4

         A.    Defendants Induced Patients into Treatment Through Body Brokering and False Advertising ............................. 4

         B.    If Prospective Patients Did Not Have Insurance, Defendants Fraudulently Enrolled Them in BCBSOK Plans ......................................................................................... 5

         C.    Defendants Paid Kickbacks to BCBSOK Members to Keep Them in California and Prevented Patients from Leaving ......................................................................... 5

         D.    Defendants' "Treatment" Was Non-Existent or Useless .. 6

APPLICABLE STANDARDS ........................................................................... 7

LEGAL ARGUMENT ...................................................................................... 7

    I.      THE COMPLAINT IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING ................................................................ 7

    II.     THE COMPLAINT ADEQUATELY IDENTIFIES THE CIRCUMSTANCES CONSTITUTING FRAUD SO THAT THE DEFENDANTS CAN RESPOND ................................... 9

         A.    Rule 9(b) Requires the Identification of Each Defendant's Role and Pre-Discovery Support ....................................... 9

         B.    The Complaint Identifies Each Defendant's Role in the Scheme ........................................................................ 10

         C.    There is Sufficient Pre-Discovery Evidentiary Support .. 11

    III.    DEFENDANTS' ARGUMENTS CONFIRM THAT THEY HAVE NOTICE OF THE MISCONDUCT ALLEGED AND CAN RESPOND ...................................................................... 13

         A.    The Complaint Adequately Describes Defendants' Use of Body Brokers and the Kickback Scheme ........................ 13

         B.    Defendants' Affirmative Defenses in Response to Patient Kickbacks Are Not Appropriate for a Motion to Dismiss ............................................................................. 14

i

C. The Complaint Sufficiently Describes False Statements Relating to Ads and Enrollments ....................................14

D. The Alleged Quality of Defendants' Care Is Not a Proper Basis for Dismissal ........................................................15

E. The Complaint is Properly Supported, Including by Representative Examples................................................16

F. The Complaint Adequately Alleges Misrepresentations on Claim Forms ...............................................................17

IV. RULE 9(B) IS INAPPLICABLE TO THE NON-FRAUD COUNTS ..............................................................................18

V. IF ANY CLAIMS ARE NOT ADEQUATELY PLEAD, AMENDMENT WOULD CURE ANY DEFICIENCIES ........18

BCBSOK'S RESPONSE TO ASANA DEFENDANTS' MOTION TO DISMISS (ECF NO. 28)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*,
No. 19-05395, 2022 WL 889058 (D. Ariz. Mar. 25, 2022) ........................... 8, 9

*Aetna Life Ins. Co. v. Bay Area Surgical Mgmt., LLC*,
2016 Cal. Super. LEXIS 161 (Cal. Super. Feb. 24, 2016) .............................. 17

*Aetna Life Ins. Co. v. Young*,
No. 23-09654, 2024 WL 5182638 (C.D. Cal. Sept. 25, 2024) ........................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 7

*Blue Cross and Blue Shield of Oklahoma v. South Coast Behav. Health LLC, et al.*,
No. 24-10683 (C.D. Cal. June 20, 2025) (attached as **Exhibit 1**) ............. *passim*

*Brown v. Stored Value Cards, Inc.*,
953 F.3d 567 (9th Cir. 2020) .......................................................................... 18

*Erickson v. Pardus*,
551 U.S. 89 (2007) ........................................................................................... 7

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
No. 17-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ....................... 14

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) ........................................................................ 16

*Hawthorne v. Bennington*,
No. 16-00235, 2020 WL 3884426 (D. Nev. July 8, 2020) ............................... 7

*L1 Techs., Inc. v. Chekanov*,
No. 20-00259, 2020 WL 12688366 (S.D. Cal. Dec. 16, 2020) ....................... 16

*Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*,
No. 22-07434, 2024 WL 3468930 (C.D. Cal. Feb. 14, 2024) ........................... 8

iii

*Matilock, Inc. v. Pouladdei*,
No. 20-01186, 2020 WL 3187198 (N.D. Cal. June 15, 2020) ........................... 18

*Moses v. Innoprise Software*,
No. 12-05271, 2013 WL 6019536 (N.D. Cal. Nov. 13, 2013) ........................... 9

*In re Netopia, Inc., Sec. Litig.*,
No. 04-03364, 2005 WL 3445631 (N.D. Cal. Dec. 15, 2005) ........................... 7

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ............................................................................... 9

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
No. 13-2378, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) ................... 9, 11, 12

*Sec. & Exch. Comm'n v. Daifotis*,
No. 11-00137, 2011 WL 4714250 (N.D. Cal. Oct. 7, 2011) ........................... 7

*State Comp. Ins. Fund v. Khan*,
No. 12-01072, 2013 WL 12132027 (C.D. Cal. July 30, 2013) ............... 9, 11, 16

*United States ex rel. STF, LLC v. Vibrant Am., LLC*,
No. 16-02487, 2020 WL 4818706 (N.D. Cal. Aug. 19, 2020) ........................ 13

*United States ex. rel. Swoben v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .................................................................. 8, 9, 14

*United States v. Mariner Health Care*,
552 F. Supp. 3d 938 (N.D. Cal. 2020) ...................................................... 8

*United States v. Orthopedic All., LLC*,
No. 6-3966, 2020 WL 8173025 (C.D. Cal. Nov. 19, 2020) ........................... 13

*United States v. Vernon*,
723 F.3d 1234 (11th Cir. 2013) ................................................................ 14

*State ex rel. Wilson v. Superior Ct.*,
174 Cal. Rptr. 3d 317 (Ct. App. 2014) ...................................................... 17

**Statutes**

ACA ............................................................................................................. 3

Cal. Health & Safety Code § 11831.65(b) (3) ........................................... 14

iv

Cal. Health & Safety Code § 11857 *et seq.* ............................................................. 2

Cal. Penal Code § 550(b)(2)-(3) ........................................................................ 17

**Other Authorities**

FRCP 12(b)(6) ................................................................................................ 7

FRCP 9(b) ................................................................................................ *passim*

FRCP 8 ............................................................................................................ 9

Plaintiff Blue Cross and Blue Shield of Oklahoma, a division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSOK") submits this Memorandum in Opposition to the Motion to Dismiss of Defendants Asana Recovery, Inc. ("Asana"), Beachfront Sober Living, Inc. ("Beachfront"), and Asana Buy Sell LLC ("Asana Buy Sell"), the owners of these entities, Mark Shandrow and Adam Shandrow, and the Executive Director of Asana, Jonathan Hagen (collectively, "Defendants"). The Court should deny the Motion in full.

## INTRODUCTION

Defendants have conspired to use kickbacks, lies, and coercion to obtain more than $10 million from BCBSOK for Substance Use Disorder (SUD) treatment allegedly provided to individuals enrolled in BCBSOK health plans. As detailed in the Complaint, Defendants utilized body brokers to find and coerce individuals in need of SUD treatment and bring them to California so they could cash in on their BCBSOK health plans. If the individuals did not have existing coverage—or did not have high-paying benefits—Defendants found ways to fraudulently enroll them in BCBSOK plans. To ensure they stayed under Defendants' control, BCBSOK members were given kickbacks such as free transportation, "treatment," and housing. But in practice, the treatment itself was often minimal or non-existent.

The Complaint discusses the resulting fraudulent healthcare claims that Defendants submitted, explains how Defendants moved specific patients through the scheme, describes the relationship among the various Defendants and their individual roles in the scheme, and contains supporting facts such as operational details, text messages, and claims data. It provides specific representative examples of each type of misconduct along with particularly detailed (and heartbreaking) examples of Defendants forbidding patients to leave or speak with family. In short, each Defendant is on notice of their role in the scheme and the misconduct involved.

Defendants' Motion combines willful ignorance with bouts of gaslighting. Most of the arguments are based on a purported absence of facts that are specifically

alleged in the Complaint, while others reframe facts in Defendants' favor contrary to the applicable standard. Sometimes, Defendants' positions only serve to undermine their credibility (or lack thereof). For example, Defendants blame the problems at their facilities on their patients' "lack of personal commitment or effort" while elsewhere contending they have no obligation to certify the truthfulness of their claims. Addressing text messages showing bills for therapy provided to a ***sleeping patient***, Defendants suggest therapy for "sleeping patients" is within the standard of care even if the patient isn't awake to receive it. In the unlikely event Defendants can find qualified experts to support these positions—and defeat a *Daubert* Motion— they can make these points at trial. But they are not a basis for dismissal.

Defendants fare no better framing this action as a "near carbon-copy" of other lawsuits. BCBSOK is far from a serial Plaintiff. It has filed ***one*** other recent lawsuit against California SUD providers, which is hardly surprising given the gravity of the SUD fraud in the state.[1] And in that case, Judge Williams denied multiple motions to dismiss and ***rejected the exact arguments Defendants lodge here***. *See Blue Cross and Blue Shield of Oklahoma v. South Coast Behav. Health LLC, et al.*, No. 24-10683 (C.D. Cal. June 20, 2025) (attached as **Exhibit 1**). This Court should do the same.

---

[1]    The California legislature has passed or is considering a litany of SUD-related laws. *See*, *e.g.*, Cal. Health & Safety Code § 11857 *et seq.*; Senate Bill 35 (proposal to further punish body brokering or kickback schemes) (link); Senate Bill 83 (proposal to increase access to SUD provider complaints and licensing issues) (link).

Media outlets have also written extensively about the state's fraud issues relating to SUD treatment. *See*, *e.g.*, Daryl Huff, *'Lots of red flags': Drug rehab recruiters from California fuel concerns over 'body brokers' in Hawaii*; Hawaii News Now (Feb. 25, 2025) (link); David Gorn, *Along California's 'Rehab Riviera,' Sober Living Is Often Anything But*, KQED.org (May 14, 2018) (link); Teri Sforza et al., *How some Southern California drug rehab centers exploit addiction*, The Orange County Register (November 5, 2018) (link).

# BACKGROUND

## I.    INDUSTRY BACKGROUND

BCBSOK administers and insures health benefit plans for individuals and employers throughout the United States. Compl. ¶ 34. Particularly relevant here, BCBSOK was the primary insurer in Oklahoma offering individual health plans under the Patient Protection and Affordable Care Act ("ACA"). *Id.* To obtain payment for services rendered to BCBSOK members, healthcare providers submit standard healthcare "claim forms" containing information about the relevant patients and the services provided to them.[2] *Id.* ¶¶ 36-37. BCBSOK, like others in the industry, relies on providers to submit accurate information, make truthful representations, and include all material information when submitting claim forms. *Id.* ¶ 38. To that end, providers certify that they follow all applicable laws and that the information on claim forms is accurate and complete. *Id.* ¶ 37, ¶ 39.

## II.    THE BCBSOK ACA EXCHANGE PLANS

The ACA created insurance marketplace exchanges through which individuals can enroll in privately insured health benefit plans. *Id.* ¶ 51. During the relevant period, BCBSOK offered various statewide plans in Oklahoma on the Federal Health Insurance Exchange, located at healthcare.gov. *Id.*

Generally, individuals can enroll in BCBSOK plans only during the annual "open enrollment" period, which typically lasts from November to mid-December or January. *Id.* ¶ 52. Enrollment outside that period—called "Special Open Enrollment"—usually requires a qualifying event, such as a loss of coverage under a preexisting plan. To get "Special Open Enrollment," an applicant must certify, under penalty of perjury, that he or she experienced a qualifying event. *Id.* ¶ 53. An applicant must also be a resident of Oklahoma and provide an Oklahoma address on his or her application. *Id.* ¶ 54. One enrolled, a covered individual must remain a

---

[2]    Defendants provide a link to the CMS-1500 claim form in their motion. *See* Mot. (ECF No. 28) at 24 n.8.

resident of the service area to be covered under the plan; if he or she moves outside the service area, coverage will terminate. *Id*.

### III.   DEFENDANTS' FRAUDULENT SCHEME

The Complaint details how Defendants' misconduct permeates every level of the SUD treatment cycle, from false promises to coerce members into treatment, to fraudulent enrollments, to body brokering, cost-share waivers, and other improper kickbacks to keep members in treatment and the insurance money coming in.

### A.   Defendants Induced Patients into Treatment Through Body Brokering and False Advertising

The first step in the scheme was to induce potential patients into treatment, which was often difficult as patients had to come across the country to California. The Complaint details the various methods used to find BCBSOK members and induce them into treatment. *See*, *e.g.*, Compl. ¶¶ 2, 10, 49. It specifically identifies KB and BS, two former "patients" turned Asana representatives, who drummed up an exceptionally large number of kickback-tainted referrals, and who Defendants sent back to Oklahoma to drive referrals in person. *Id.* ¶¶ 1-3, 49(c)

The Complaint also details how Defendants have made false representations on social media regarding the quality of treatment and "perks" that the Defendants could provide, such as alleged private chefs and luxury accommodations. *Id.* ¶ 49(a). In addition, Defendants misrepresented that Asana had "reached an agreement" with the state of Oklahoma to provide treatment, and they promised cash payments in exchange for patients agreeing to enroll in BCBSOK plans and remain at Asana for extended periods. *Id.* (citing the example of patient DD, who was promised $10,000 by Asana's admissions director if he agreed to enroll in a BCBSOK plan and stay at Asana).

Defendants' aggressive tactics did not end there. Once BCBSOK members got to California and into treatment, Defendants paid or offered payments in cash or gift cards to provide contact information for more potential patients. *Id.* ¶ 49(b). And

Defendants bribed their existing patients to get them to leave positive reviews on Google, Yelp, and social media pages. See, *e.g.*, *id.* ¶ 49.

### B.    If Prospective Patients Did Not Have Insurance, Defendants Fraudulently Enrolled Them in BCBSOK Plans

If potential patients did not have coverage under health benefit plans before treatment (or they had low-paying governmental plans), Defendants endeavored to fraudulently enroll them in BCBSOK plans to access the robust out-of-network benefits BCBSOK plans offered. Defendants did so by having staff members—under the direction of the Shandrows and Hagen—provide false information to get coverage under the most favorable plans, regardless of whether they qualified for coverage. *See, e.g.*, *id.* ¶¶ 55-56 (describing Defendants' fraudulent enrollment scheme and providing examples).

The Complaint provides data supporting its fraudulent-enrollment allegations. For example, the enrollment dates for roughly 53 members were less than a week from when their treatment began, and a single insurance agent enrolled more than 200 alleged patients in BCBSOK plans even though a typical agent does not enroll nearly that many members tied to just one facility. *Id.* ¶¶ 60-61. These are all strong indicators of misconduct, and the Complaint specifically identifies the subset of patients subject to fraudulent enrollments. *See* Compl., Ex. A.

### C.    Defendants Paid Kickbacks to BCBSOK Members to Keep Them in California and Prevented Patients from Leaving

The Complaint describes how Defendants have induced BCBSOK members to attend various treatment programs by offering kickbacks in the form of free treatment, transportation, and housing. *See*, *e.g.*, Compl. ¶¶ 63-68. Defendants' and their agents have even offered to make drugs available at the free housing. *Id.* ¶ 68. If patients indicated that they wanted to leave a program, Defendants took more drastic measures to keep them there. That included restricting BCBSOK members' access to phones, preventing them from going outside, and withholding their

necessary medications, all of which kept the members in "treatment" and allowed Defendants to keep billing BCBSOK.  *Id.* ¶¶ 5, 12.

### D.    Defendants' "Treatment" Was Non-Existent or Useless

The alleged "treatment" for which Defendants received millions of dollars from BCBSOK was minimal to non-existent. The Complaint details examples of several BCBSOK members who, despite being present at Asana for several days— and for whom Asana billed BCBSOK thousands of dollars—received no individualized treatment from any medical professional or SUD practitioner. *See*, *e.g.*, Compl. ¶¶ 70-71.

The Complaint includes text messages showing that Defendant Hagen, Asana's Executive Director, instructed staff to mark a patient as receiving therapy despite being asleep, *id.* ¶ 74:



The Complaint also alleges that Asana's Medical Director, Defendant Small, falsely certified that all treatments were true and correct, and were either carried out by him or under his supervision, despite him having little to no involvement in providing any treatment. *Id.* ¶¶ 24, 75.[3] All of these facts are further supported by detailed spreadsheets showing the claims and payments involved, including spreadsheets identifying fraudulently enrolled patients, specific claim and payment

---

[3]    Defendant Small filed his own Motion to Dismiss (ECF No. 33) that BCBSOK will respond to separately.

examples, and samples of patients who endured Defendants' fraudulent scheme.

## **APPLICABLE STANDARDS**

When evaluating Defendants' Motion to Dismiss, the Court must accept BCBSOK's factual allegations as true and draw all reasonable inferences in its favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Complaint need not contain "detailed factual allegations," but it must simply state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining plausibility, the Court may use its "judicial experience and common sense." *Iqbal*, 557 U.S. at 679. "Failure to state a claim means the rule should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint under Fed. R. Civ. P. 12(b)(6)." *In re Netopia, Inc., Sec. Litig.*, No. 04-03364, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005).

Contrary to Defendants' suggestion, "a complaint is not a vehicle in which a plaintiff must place or allege every fact known that supports his legal claims." *Hawthorne v. Bennington*, No. 16-00235, 2020 WL 3884426, at *10 (D. Nev. July 8, 2020). Nor are "specific facts" necessary. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). That holds true even under Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Sec. & Exch. Comm'n v. Daifotis*, No. 11-00137, 2011 WL 4714250, at *4 (N.D. Cal. Oct. 7, 2011) ("FRCP 9(b) does not require that every detail be alleged in a complaint."). Instead, a complaint need only "give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted). BCBSOK easily meets that standard.

## **LEGAL ARGUMENT**

## **I.    THE COMPLAINT IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING**

The central thrust of Defendants' Motion is that the Complaint is a "shotgun pleading" that "lumps all Defendants together under the guise that all Defendants acted in concert such that the act of one is attributable to all" and "fails to identify

the specific individuals who acted on behalf of the various corporate Defendants." Mot. at 11-12. But "[t]here is no flaw in pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States ex. rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 ("*Swoben*") (9th Cir. 2016). That is especially true in healthcare fraud cases involving similar entities and related actors engaged in similar misconduct. *See, e.g.*, *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.* ("*ARS-Aetna*"), No. 19-05395, 2022 WL 889058, at *3 (D. Ariz. Mar. 25, 2022) ("[A] complaint need not distinguish between defendants that had the exact same role in a fraud."); *United States v. Mariner Health Care*, 552 F. Supp. 3d 938, 952 n.6 (N.D. Cal. 2020) (same) (quoting *United States ex rel. Silingo v. Wellpoint*, Inc., 904 F.3d 667, 677 (9th Cir. 2018)).

Here, the Complaint describes Defendants' respective roles and misconduct on an individualized basis and, where appropriate, utilizes "group allegations relating to [] defendants together" since it "is alleging [they] engaged in identical conduct, *e.g.*, [they] all [conspired to] submit[] fraudulent bills to [BCBSOK] for reimbursement." *Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, No. 22-07434, 2024 WL 3468930, at *3 (C.D. Cal. Feb. 14, 2024). As the Ninth Circuit has explained, "[a] good claim against one defendant [does] not become inadequate simply because a co-defendant [is] alleged to have committed the same wrongful acts." *WellPoint, Inc.*, 904 F.3d 677. Defendants have thus failed to establish that the Complaint constitutes an impermissible "shotgun pleading," and all their other arguments compound this initial failure by essentially discarding any allegations made collectively.

## II.   THE   COMPLAINT   ADEQUATELY   IDENTIFIES   THE CIRCUMSTANCES CONSTITUTING FRAUD SO THAT THE DEFENDANTS CAN RESPOND

### A.   Rule 9(b) Requires the Identification of Each Defendant's Role and Pre-Discovery Support

While Rule 9(b) requires allegations about the "who, what, when, where, and how of the misconduct charged," *Swoben,* 848 F.3d at 1180, it is "not . . . an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity[,]" *Moses v. Innoprise Software*, No. 12-05271, 2013 WL 6019536, at *4 (N.D. Cal. Nov. 13, 2013) (quotation omitted). Instead, "Rules 8(a) and 9(b) must be read in conjunction with one another[,]" and a "[p]laintiff may state allegations of fraud in short, plain statements, provided that said statements put [d]efendants on adequate notice of the conduct alleged to be fraudulent." *ARS-Aetna*, 2022 WL 889058, at *3 (quotations omitted); *see also Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.").

In healthcare fraud cases—where each claim represents an instance of fraud— Rule 9(b) is satisfied if "(i) the defendant has been made aware of the circumstances for which she will have to prepare a defense at trial, and (ii) th[e] plaintiff has substantial prediscovery evidence of those facts." *ARS-Aetna*, 2022 WL 889058, at *3 (quotations omitted). There is no requirement that a "complaint or counterclaim lay[] out each and every misrepresentation in detail" because that "would provide less effective notice . . . than would a shorter, more generalized version." *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 13-2378, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014). Thus, courts in the Ninth Circuit and beyond regularly find Rule 9(b) satisfied when, as here, the claims are identified with sufficient detail in exhibit spreadsheets and the complaint describes each defendant's role. *See*, *e.g.*, *State Comp. Ins. Fund v. Khan*, No. 12-01072, 2013 WL 12132027, at *4 (C.D. Cal. July

9

30, 2013) (claims chart was "sufficient to allow Defendants to file a meaningful answer to the SAC, and … therefore sufficient under Rule 9(b)").

**B.    The Complaint Identifies Each Defendant's Role in the Scheme**

Paragraphs 17 through 26 of the Complaint set forth each Defendant's role in the scheme:

- Mark and Adam Shandrow are the co-owners of Asana, Beachfront, and Asana Buy Sell, and they directed kickback payments to body brokers and patients. *See* Compl. ¶¶ 20, 22. The Complaint contains examples of the Shandrows supervising or directing fraudulent enrollments in BCBSOK plans, *id.* ¶ 55, and it explains how they are responsible for setting the applicable policies and procedures, as well as how they are the ultimate beneficiaries of the scheme. *Id.* ¶¶ 20-22.

- Defendant Hagen is the executive director of Asana and personally instructed its staff on falsely documenting treatment (including treatment that did not occur), and he played a leading role in patient intake and other patient-related matters that were essential for Defendants to submit fraudulent bills to BCBSOK. *Id.* ¶ 23. The Complaint contains examples of Hagen's participation in the fraud, including text messages where he directed someone to falsely bill as if a patient had participated in a group-treatment session even though the alleged patient was asleep. *Id.* ¶ 74.

- Beachfront owns or operates some of the alleged sober homes that BCBSOK members were housed at while allegedly receiving "treatment" from Asana so that Asana could continue to submit false claims for those members. *Id.* ¶ 18.

- Asana Buy Sell also owns or operates some of the sober homes where BCBSOK members were housed while receiving "treatment" from Asana so that Asana could continue to submit false claims for those members. *Id.* ¶ 19.

- Asana, under the direction and control of the Shandrows and Hagen, and working in conjunction with Asana Buy Sell and Beachfront, was the central

vehicle through which Defendants perpetrated their fraudulent scheme. Defendants used Asana to hire body brokers and pay them kickbacks to funnel patients to Asana, then some of those patients stayed at other facilities owned by Asana Buy Sell and Beachfront. *See*, *e.g.*, *id.* ¶¶ 1-15, 17-18, 47-49. Asana also paid kickbacks to patients in the form of free transportation, waived cost-share obligations, and free housing. *See*, *e.g.*, *id.* ¶¶ 63-68. And Asana fraudulently enrolled patients—or facilitated their fraudulent enrollment—in health plans so that Defendants could bill BCBSOK and collectively profit from the fraudulent bills, at least some of which were for treatment that was useless or that never occurred at all. *See*, *e.g.*, *id.* ¶¶ 50-62, 69-77.

## C.    There is Sufficient Pre-Discovery Evidentiary Support

Along with specifying each Defendant's role and misconduct, the Complaint references substantial pre-discovery evidence to support BCBSOK's allegations. For example, the Complaint outlines the specific categories of misconduct involved, Compl. ¶¶ 47-77, and Exhibit B is a detailed spreadsheet setting forth each claim at-issue, including "the number of claims made, a specific time period during which those claims were made, and the amount of reimbursement induced by these claims." *Nutrishare*, 2014 WL 1028351, at *4. That alone has been found "sufficient under Rule 9(b)." *Khan*, 2013 WL 12132027, at *4 (emphasis added); *see also South Coast* (Ex. 1) at 23.

Nevertheless, the Complaint goes well beyond the minimum with a variety of supporting evidence that is rarely obtained without discovery. Exhibit A reflects the specific subset of patients whose claims arose from fraudulent enrollments in a BCBSOK plan. Exhibits C through E contain example claim documents for specific patients (JH, JC, and AW). The Complaint further elaborates on how these specific patients passed through the scheme, starting with fraudulent enrollments and body brokers, Compl. ¶¶1-3, cost-share waivers, *id.* ¶ 64, and free housing and other kickbacks, *id.* ¶¶ 65-68. Plus, it details how Defendants went to appalling lengths to

prevent patients from leaving, including instances in which patients were offered drugs by house managers, denied access to phones and family, and prohibited from going outside, accessing their belongings, or receiving needed medications. *Id.* ¶¶ 4, 5, 12. And, as noted above, the Complaint includes the specific employees or contractors involved, *id.* ¶¶ 1-8, 49, 74-75, and the individuals who directed staff to doctor medical records and who certified Defendants' fraudulent claims, *id.* ¶¶ 65-77.

Far fewer allegations have been found sufficient. *See, e.g., Nutrishare, Inc.*, 2014 WL 1028351, at * 2-4 (allegation of copay waivers and identification of claims sufficient to meet Rule 9(b)). As another court in this District reasoned in denying a motion to dismiss involving similar allegations:

> Plaintiffs' exhibit identifies specific alleged frauds, and the first amended complaint's specific allegations regarding patients B.M., A.R., D.K., and R.H. are examples of how the [] Defendants participated in the alleged scheme. And the chart identifies the alleged fraudulent claims. As such, the Court is satisfied that the [] Defendants have been made aware of the particular circumstances for which [they] will have to prepare a defense as trial and have information sufficient to allow Defendants to file a meaningful answer to the first amended complaint.
> mark

*Aetna Life Ins. Co. v. Young*, No. 23-09654, 2024 WL 5182638, at *5 (C.D. Cal. Sept. 25, 2024). This same reasoning applies here.

If all this weren't enough (and it is), BCBSOK's allegations are bolstered by the irregular data patterns highlighted in the Complaint.  For instance, more than 200 individuals from Oklahoma enrolled in similar BCBSOK exchange plans—through the same insurance agent—and then traveled across the country to get treatment at Asana, many of them within less than a week of their enrollment. Compl. ¶¶ 58-61. This was not just an unexplainable anomaly. Coupled with the other allegations, these

trends represent strong indicia of fraud. *See United States v. Orthopedic All., LLC*, No. 6-3966, 2020 WL 8173025, at *7 (C.D. Cal. Nov. 19, 2020) (outlier data coupled with other allegations were reliable indicia of fraud); *South Coast* (Ex. 1) at 12.

## III.    DEFENDANTS' ARGUMENTS CONFIRM THAT THEY HAVE NOTICE OF THE MISCONDUCT ALLEGED AND CAN RESPOND

### A.    The Complaint Adequately Describes Defendants' Use of Body Brokers and the Kickback Scheme

Defendants first argue that the Complaint fails to identify specific facts about kickbacks to body brokers, such as "who from Asana paid the alleged kickbacks," "which patients obtained treatment based on kickbacks," and the patients who received payments for leads for providing positive reviews and social media posts. Mot. at 13-14. But BCBSOK "need not allege a precise time frame, describe in detail a single specific transaction, identify the precise method used to carry out the fraud, or identify representative examples of false claims to support every allegation." *South Coast* (Ex. 1) at 10 (quotations omitted) (citing *Swoben*, 848 F.3d at 1179). Instead, it is sufficient to allege facts describing the kickback arrangement. *See, e.g.*, *United States ex rel. STF, LLC v. Vibrant Am., LLC*, No. 16-02487, 2020 WL 4818706, at *13 (N.D. Cal. Aug. 19, 2020).

The Complaint easily meets this standard. As noted above, the Complaint explains how kickbacks were made at the various stages of treatment and the players involved. For example, Defendants ignore the allegations identifying Defendants Shandrow and Hagen as being responsible for overseeing and directing kickbacks and patient intake. Compl. ¶¶ 20-23. Specific examples of Asana's admissions director(s) offering kickbacks to specific patients are also provided. *Id.* ¶ 49. KB and BS are identified as the two former patients Asana utilized as body brokers on the ground in Oklahoma. *Id.* ¶ 49(c). And the specific means and methods of the kickbacks for positive marketing are further alleged. *Id.* ¶ 49(b). Nothing more is required since additional details of Defendants' lies and kickbacks are "peculiarly

within [their] knowledge." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-00564, 2017 WL 4224723, at *6 (N.D. Cal. Sept. 22, 2017).

**B.    Defendants' Affirmative Defenses in Response to Patient Kickbacks Are Not Appropriate for a Motion to Dismiss**

Defendants next assert that the Complaint is defective because it does not adequately identify kickbacks in the form of free-housing, cost-share waivers, and/or free transportation. Mot. at 15-16. That is simply false. The Complaint identifies specific examples of free transportation and housing, along with the entities that were utilized to provide housing (Asana Buy Sell and Beachfront). *Id.* at 64-68. The cost-share obligations that were waived can be found in the "cost share" field of Exhibit B to the Complaint. This is sufficient. *South Coast* (Ex. 1) at 23 (noting cost-share amount field in claims spreadsheet in denying motion to dismiss).

Recognizing as much, Defendants take issue with BCBSOK's failure to address alleged "safe harbors" for sober living, free transportation, and cost-share waivers. Mot. at 15-16. But these are affirmative defenses that are not an appropriate basis for a motion to dismiss. *See United States v. Vernon*, 723 F.3d 1234, 1271 (11th Cir. 2013) (concluding that safe harbor provisions give rise to affirmative defenses that must be proven by a defendant). The very fact Defendants can assert these defenses proves that they have "notice of the particular misconduct which is allege[d] to constitute the fraud so that [they] can defend against the charge."[4] *Swoben*, 848 F.3d at 1180 (quotations omitted).

**C.    The Complaint Sufficiently Describes False Statements Relating to Ads and Enrollments**

Defendants next assert that there are insufficient details about false pitches to patients and fraudulent enrollments. Mot. at 17-20. As to false pitches, the Complaint contains essentially everything Defendants claim it does not. It identifies the content

---

[4]    Still, it is worth noting that Defendants' previewed defense will fail because the sober-living safe harbor is unavailable when free housing turns on a patient's continued enrollment in a treatment program. *See* Cal. Health & Safety Code § 11831.65(b) (3).

of the pitches, the methods in which they were delivered, explains why they were misleading because, for example, benefits like "private chefs" were false, and it identifies exemplar patients that received the pitches. Compl. ¶ 49. And it explains that all of this was done with the purpose of convincing patients to enroll in health plans and get treatment at Asana. *Id.*

Similarly, the allegations of fraudulent enrollments are supported with overwhelming indicia of fraud. The Complaint identifies the specific Asana representatives that spearheaded the fraudulent enrollment scheme, *id.* ¶ 55, specific examples of these representatives instructing patients to provide false information *id.* ¶ 56, and the specific subset of patients who were fraudulently enrolled, *id.*, Ex. A. Continuing, the Complaint details data patterns indicative of fraud. For example, over 214 individuals were enrolled by the same insurance agent, (*id.* ¶ 61), 53 individuals submitted bills for treatment within a week of when their plans became effective, (*id.* ¶ 58), 85 members were enrolled outside open enrollment, (*id.* ¶ 59), and 51 individuals had address inconsistencies that called into question their Oklahoma residency, (*id.* ¶ 60). As the *South Coast* Court explained in rejecting a similar argument: "it is reasonable to infer that the Sober Living Defendants knowingly funneled potential enrollees to [an insurance agent], given that two-thirds of the hundreds of Blue Cross members who ended up receiving treatment at South Coast (located in California) had been enrolled by [the insurance agent] (who was located in Oklahoma)." *South Coast* (Ex. 1) at 12. The same holds true here.

## D. The Alleged Quality of Defendants' Care Is Not a Proper Basis for Dismissal

Defendants misfire again suggesting the Complaint "lacks particularity regarding the standard of care rendered." Mot. at 20. According to Defendants, the problems at their facilities stemmed not from their fraud and deficient services, but rather from their alleged patients' "lack of personal commitment or effort." *Id.* at 21. Similarly, Defendants say that "[s]imply because a patient fell asleep during a session

15

does not mean that adequate services were not provided as billed or that Defendants falsified records." *Id.* at 21 n.7. These statements are telling as to Defendants' money-driven motivation and operations. But for present purposes, what matters is that the arguments are grounded in factual disputes that cannot serve as the basis for dismissal. *L1 Techs., Inc. v. Chekanov*, No. 20-00259, 2020 WL 12688366, at *4 (S.D. Cal. Dec. 16, 2020) (a court "cannot weigh the evidence or the veracity of a complaint's allegations."). To the contrary, they confirm that Defendants understand the nature of the allegations and can mount a response.

###    E.    The Complaint is Properly Supported, Including by Representative Examples

Defendants next suggest that the Complaint improperly rests on representative examples. Mot. at 21-22. In doing so, Defendants conflate the issue of representative "***claims***" with supporting ***facts***. A recurring issue in healthcare fraud *qui tam* cases—which is not present here—is that plaintiffs often cannot identify any actual healthcare claims that were submitted and paid. Circuit courts have differed in their approach to that issue, with the Ninth Circuit employing a flexible standard where "[a] [plaintiff] is ***not required to identify representative examples*** of false ***claims*** to support every allegation, although the use of representative examples is one means of meeting the pleading obligation." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019) (emphasis added).

But there is no issue with claims identification here since BCBSOK has identified the ***entire universe of underlying claims*** in Exhibit B—not just "representative claims," as it could have done. And again, detailed claim spreadsheets and the identification of a defendant's role in the scheme are enough by themselves.[5] *Khan*, 2013 WL 12132027, at *4. The fact that BCBSOK went one step further to highlight specific patient examples—along with data, text messages, etc.—

---

[5]    Put another way, BCBSOK has met every conceivable standard. It identifies the claims (Ex. B), the patients fraudulently enrolled (Ex. A), specific example claims documents (Exs. C-E) and a litany of additional supporting facts, text messages, patient examples, and data.

only provides further factual support for the allegations.

## F. The Complaint Adequately Alleges Misrepresentations on Claim Forms

Finally, Defendants take the remarkable position that they made no misrepresentations on CMS-1500 forms because those only require certifications of truthfulness for government patients. Mot. at 24. Stated differently, Defendants essentially contend that they are free to lie to private health plans and administrators.

The *South Coast* Court rejected a similar argument, noting that the claim form itself includes "a notice stating that anyone who submits a claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act … and may be subject to civil penalties."[6] *South Coast* (Ex. 1) at 9 n.3. And, contrary to Defendants' position, Box 31 of the claim form states that these certifications apply.

Moreover, every provider in California that submits claims to private insurers represents that the statements on the claims are truthful, and that the claims seek payment for medically necessary services, do not conceal material information, and are not a product of kickbacks, patient brokering, or other enumerated misconduct. *See, e.g.*, Cal. Penal Code § 550(b)(2)-(3). Violations are "not negated by the absence of an express misstatement of fact contained in a resulting claim." *State ex rel. Wilson v. Superior Ct.*, 174 Cal. Rptr. 3d 317, 325–26 (Ct. App. 2014). Otherwise, one could avoid liability by simply hiding unlawful conduct. *See id.* If anything, Defendants' irrational position—that claim forms only preclude lies to governmental payors but not private insurers and health plans—raises more concerns about their dishonest practices and bolsters the Complaint's allegations

---

[6]    There are other misrepresentations on the forms themselves. For example, by waiving the patient component, Defendants misstated their charges and those misrepresentations present "triable issue[s] of material fact[.]." *Aetna Life Ins. Co. v. Bay Area Surgical Mgmt., LLC*, 2016 Cal. Super. LEXIS 161, *8-9 (Cal. Super. Feb. 24, 2016) (denying summary judgment based on this type of misrepresentation).

## IV.   **RULE 9(B) IS INAPPLICABLE TO THE NON-FRAUD COUNTS**

Defendants contend all the remaining claims (Counts 2-7) are subject to Rule 9(b)'s heightened pleading standard and fail for the same reasons as the fraud claim. Mot. at 25. This issue is ultimately moot because BCBSOK meets the Rule 9(b) standard for all claims. Nonetheless, a claim for which fraud is not an "essential element" of the cause of action need not meet the Rule 9(b) standard. *Matilock, Inc. v. Pouladdei*, No. 20-01186, 2020 WL 3187198, at *3 (N.D. Cal. June 15, 2020). As relevant here, Defendants seek dismissal of the fraud claims on the basis that they did not actually make misrepresentations about body brokering, kickbacks, and other misconduct in claim forms that they submitted to BCBSOK. But even if the Court accepts Defendants' argument, the remaining counts (except Count 2 for negligent misrepresentation) could proceed outside of Rule 9(b).

## V.   **IF ANY CLAIMS ARE NOT ADEQUATELY PLEAD, AMENDMENT WOULD CURE ANY DEFICIENCIES**

As noted above, all claims in the Complaint are adequately pled. If the Court finds deficiencies, however, BCBSOK requests leave to amend. Leave is given with "extreme liberality" unless a complaint cannot be cured by amendment. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Given that Defendants' arguments are all based on asserted factual deficiencies, any issues the Court finds can be cured though an amendment.

Respectfully submitted,

Dated: July 9, 2025            STRADLEY RONON STEVENS & YOUNG, LLP

*s/ Benjamin H. McCoy*
Benjamin H. McCoy (*pro hac vice*)
bmccoy@stradley.com
Jordann R. Conaboy (*pro hac vice*)
jconaboy@stradley.com
David D. Piper (CASB No. 179889)
dpiper@stradley.com
*Attorneys for Plaintiff*