# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM                                        Date: August 5, 2025

Title: Blue Cross and Blue Shield of Oklahoma v. Asana Recovery, Inc. et al.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** ORDER DENYING ASANA DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [28] AND GRANTING IN PART AND DENYING IN PART DEFENDANT SMALL'S MOTION TO DISMISS [33]

Before the Court are Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathon Hagen (collectively, "Asana Defendants") and Defendant Christian Small, M.D. ("Defendant Dr. Small") and their respective motions ("Asana Mot.") (Dkt. 28) ("Small Mot.") (Dkt. 33) to dismiss this case for failure to state a claim. The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the briefing by the parties, the Court **DENIES** Asana Defendants' Motion and **GRANTS IN PART AND DENIES IN PART** Defendant Dr. Small's Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM                              Date: August 5, 2025

Page 2

## I. Background

### A. Facts

Plaintiff Blue Cross and Blue Shield of Oklahoma ("Plaintiff") is based in Illinois and administers health benefits plans. Complaint ("Compl.") (Dkt. 1) ¶¶ 16, 34. It "was the primary insurer in Oklahoma offering individual health plans pursuant to the Patient Protection and Affordable Care Act ('ACA')." *Id*. ¶ 34. Individuals enrolled in Plaintiff's plans are called members while individuals and entities providing health services are called providers. *Id*. ¶ 35. Plaintiff alleges that the following California-based individuals and entities purported to provide substance use disorder ("SUD") treatment to its members in California and engaged in health insurance fraud by wrongfully billing Plaintiff and profiting millions of dollars:

- Defendant Asana Recovery, Inc. ("Asana") is a privately-held California stock corporation with its principal place of business in Costa Mesa, California and is owned and operated by Defendants Mark and Adam Shandrow. *Id*. ¶ 17.
- Defendant Beachfront +Sober Living, Inc. ("Beachfront") is a privately-held California stock corporation with its principal place of business in Costa Mesa, California and is owned and operated by Defendants Mark and Adam Shandrow. *Id*. ¶ 18.
- Defendant Asana Buy Sell LLC ("Asana Buy Sell") is a California limited liability company with its principal place of business in Costa Mesa, California and is owned and operated by Defendants Mark and Adam Shandrow. *Id*. ¶ 19.
- Mark and Adam Shandrow are residents of Southern California and are jointly the owner and ultimate beneficiaries of Defendants Asana, Beachfront, and Asana Buy Sell. *Id*. ¶¶ 20, 22.
- Defendant Jonathon Hagen is a resident of Southern California and the executive director of Defendant Asana. *Id*. ¶ 23.
- Defendant Dr. Small is a resident of Southern California and the medical director of Defendant Asana. *Id*. ¶ 24.

As background, Plaintiff states that substance use disorders are properly treated in various levels of intensity, and the two highest levels are (1) short-term inpatient or "detox" treatment and (2) intensive outpatient treatment which can take the form of either partial hospitalization or intensive outpatient treatment. *Id*. ¶¶ 40–42. After an appropriate length of treatment, health benefit plans do not cover the most intensive level

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFM    Date: August 5, 2025

Page 3

of care and patients transition to temporary, outpatient care models. *Id*. ¶¶ 43–44. Patients, however, may choose to stay away from their home environment immediately after detox, "to remain free of the stressors that may have contributed to their addiction" and stay in "sober living homes" instead. *Id*. ¶ 45. Although health insurance continues to cover outpatient treatment, it does not pay for rent or housing costs for sober living stays. *Id*. ¶ 46. Plaintiff alleges that "many providers weaponize these [sober living] homes to induce patients to remain under their control so they can bill for insurance." *Id*. ¶ 45.

Defendants owned, operated, or provided SUD treatment at sober living homes in California where Plaintiff's members were housed and/or receiving outpatient SUD treatment. *Id*. ¶¶ 17-24. Plaintiff alleges that Defendants formed a civil conspiracy in service of fraudulent misrepresentations and omissions regarding their patients' SUD care claims to Plaintiff. *Id*. ¶¶ 27–31. Plaintiff also alleges that all Defendants are liable as alter egos of each other and that each Defendant knew of the misconduct alleged, actively participated in the fraudulent scheme, and knowingly provided substantial assistance or encouragement. *Id*. Plaintiff alleges that "the fraud in this action permeates every level of the treatment cycle and covers a staggering array of overlapping conduct, including: body brokering, false advertising, fraudulent enrollment, cost-share waivers, fraudulent billing, and illegal kickbacks." *Id*. ¶ 47.

Plaintiff alleges that the fraudulent scheme began with Asana inducing potential patients to enroll in treatment by, *inter alia*, making false promises to prospective patients through social media groups and discussions with Native American tribes in Oklahoma. *Id*. ¶ 49(a). Asana and its staff paid current patients for "leads" and for false reviews and engaged in "body brokering" with former patients by paying "kickbacks" for successful enrollment referrals. *Id*. ¶ 49(b), (c).

Plaintiff alleges that Asana fraudulently enrolled prospective patients without insurance or those with "low-paying governmental plans" in Plaintiff's policies, which have particularly "robust out-of-network, out-of-state benefits." *Id*. ¶ 50. Asana and its admissions staff under the direction of the Shandrows would impersonate prospective members for the purpose of fraudulent enrollments, as well as instruct potential patients on what information to supply to obtain specific health care plans. *Id*. ¶¶ 55–56. Furthermore, Plaintiff alleged that records of treatment dates, residency, and identifications were often falsified for its members. *Id*. ¶¶ 57–62.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFM                               Date: August 5, 2025

                                                                            Page 4

Plaintiff alleges further that Defendants induced patients to enroll in and continue with their treatment programs by offering kickbacks in various forms, including waivers of the patients' cost-sharing fees, as well as free transportation and housing. *Id*. ¶¶ 63–68. For example, Defendants gave one patient free housing in Huntington Beach while in outpatient treatment, but when insurance stopped paying for treatment and the patient could not pay rent, the patient was forced to leave the apartment. *Id*. ¶ 66.

Plaintiff states that the treatment that Asana provided was "either non-existent or of such poor quality to be essentially useless." *Id*. ¶ 69. Plaintiff provides examples of the fraudulent treatment by Defendants including but not limited to Defendant Hagen instructing staff to bill for group therapy while a patient was asleep. *Id*. ¶¶ 69-74. Defendant Dr. Small, who certified all treatments as true and correct on claim forms, similarly failed to provide adequate treatment to patients and he "did little but sign forms and pocket money so his license could be used to give the gloss of professional treatment." *Id*. ¶ 75. Plaintiff emphasizes that insufficient and poor-quality treatment can be "life-threatening" during the detox phase because of the "heightened risk of withdrawal." *Id*. ¶ 76.

Plaintiff brings seven causes of action against all Defendants for (1) fraud and fraudulent concealment; (2) negligent misrepresentation; (3) intentional interference with economic/contractual relationships; (4) aiding & abetting tortious conduct; (5) violations of Business and Professional Code §§ 17200, *et seq.*; (6) money had and received; and (7) unjust enrichment/quantum meruit/restitution. Plaintiff attached exhibits with the allegedly fraudulent claims submitted by Defendants, the members that were billed for, and exemplar claim documents for three specific members discussed in the Complaint.

### B.  Procedural History

Plaintiff filed this action in this Court on April 10, 2025. Compl. (Dkt. 1). Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathon Hagen (collectively, "Asana Defendants") filed their present Motion to Dismiss Case ("Asana Mot.") on June 13, 2025 (Dkt. 28). Defendant Christian Small, M.D. ("Defendant Dr. Small") filed his present Motion to Dismiss ("Small Mot.") on June 26, 2025 (Dkt. 33). Plaintiff opposed the Asana Defendants' Motion on July 9, 2025 ("Asana Opp.") (Dkt. 39) and Dr. Small's Motion on July 21, 2025 ("Small Opp.") (Dkt. 40). The Asana Defendants filed their

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 5

Reply on July 28, 2025 ("Asana Reply") (Dkt. 43) and Dr. Small filed his Reply on July 28, 2025 ("Small Reply") (Dkt. 42).

## II.     Legal Standard

### A.     Rule 12(b)(6) Dismissal

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 6

*Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### B. Rule 8 Dismissal

Federal Rule of Civil Procedure 8 requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint satisfies Rule 8 if it give the defendant "fair notice of what the claim is . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Violations of Rule 8 "warrant dismissal." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).

### C. Rule 9(b) Dismissal

"Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b).' *Id.* "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

"Federal Rule of Civil Procedure 9(b) provides that '[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud,' while '[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010) (quoting the factual circumstances of the fraud itself'" *Id.* at 558 (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007)). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107. "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 7

"[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). And while "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," it is sufficient for a plaintiff to "identify the role of each defendant in the alleged fraudulent scheme." *Id*. at 764–65 (cleaned up). "Further, in cases such as this one, involving hundreds or thousands of alleged fraudulent transactions, specifying each and every transaction with the particularity ordinarily demanded by Rule 9(b) 'is neither practical nor required.'" *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*, No. CV-19-05395-PHX-DLR, 2022 WL 889058, at *3 (D. Ariz. Mar. 25, 2022) (quoting *Nutrishare, Inc. v. Conn. Gen. Life. Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014)). "When dealing with thousands of instances, it is often the case that a complaint or counterclaim laying out each and every misrepresentation in detail would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version." *Id*. (quoting *Nutrishare*, 2014 WL 1028351, at *4).

### III.     Motion to Dismiss by Asana Defendants

#### A.     Shotgun Pleading and Rule 8

The Asana Defendants argue that the Complaint should be dismissed in its entirety under Rule 8 as a "shotgun pleading" because it lumps all Defendants together, fails to identify specific individuals, and does not specify which allegations are relevant to which claim. Asana Mot. at 10-12.

The Complaint is not a shotgun pleading. It sufficiently differentiates between the Asana Defendants and appropriately combines allegations when it is alleged that Defendants engaged in the same conduct. There are factual allegations specifically about Asana, Hagen, the Shandrows, and Dr. Small and their respective roles in the overall scheme alleged. Plaintiff also sufficiently alleges that Asana Buy Sell and Beachfront are the entities that own the sober living homes at issue and are the alter egos of Asana and the Shandrows and thus are proper defendants.

#### B.     Claim One (Fraud and Fraudulent Concealment)

Asana Defendants argue that the Complaint fails to state a claim for fraud because the fraudulent conduct is not plead with particularity as required by Rule 9(b). The Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 8

analyzes each of Asana Defendants' arguments in turn and concludes that the allegations sufficiently put them on notice of the misconduct to defend themselves. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

    **i.    Body Brokers**

Plaintiff plausibly and sufficiently pleads that Asana Defendants engaged body brokers and paid kickbacks to them in exchange for engagement and enrollment of new patients. Mark and Adam Shandrow directed kickback payments to body brokers and patients. *See* Compl. ¶¶ 20, 22. Asana, under the direction and control of the Shandrows and lead by Hagen, paid kickbacks to body brokers to find and bring members from Oklahoma to California and otherwise obtain new patients. *Id.* ¶¶ 10, 23, 48-49. Contrary to Asana Defendants' representations, the Complaint specifically names KB and BS as former patients who became Asana employees or contractors and were paid kickbacks for enrollment of new patients. *Id.* ¶ 49(c).

The Complaint also details the experience of JC, a Native American tribal member, who was enticed to come to California from Oklahoma by KB, flown out free of charge, and enrolled at Asana in June of 2023. *Id.* ¶¶ 1-3. JC ultimately did not receive the services she was promised and was refused adequate SUD treatment over her ten-day stay despite Asana billing JC's health plan issued by Plaintiff for thousands of dollars. *Id.* ¶¶ 4-7, 70. JC attempted to call her family and leave Asana, but Asana refused to let her use her phone or return her belongings. *Id.* ¶ 5.

Before the benefit of discovery, Plaintiff has plausibly alleged with sufficient particularity that Asana Defendants engaged in body brokering with former patients to obtain new patients.

    **ii.    Kickbacks**

Asana Defendants argue that the allegations of kickbacks to patients in the forms of free housing, free transportation, and waiver of patient cost-shares are insufficient to support a fraud claim for several reasons. Asana Mot. at 15.

First, they contend that Plaintiff does not identify any specific patient whose cost-share was waived. *Id.* at 15. This is contradicted by Exhibit A attached to the Complaint which identifies which patients and claims had their cost-share waived in addition to the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 9

date. Even if Exhibit A shows that "the lion's share of claims listed had no cost-share obligations" as Asana Defendants state, it does not follow that there was no waiver of cost-shares as alleged. *Id*. at 15.

Second, Asana Defendants argue that the allegations of free housing and transportation provided to patients fail because the California Health and Safety Code permits SUD providers to offer "discounted housing following discharge from in-patient treatment as well as ground or air travel to access treatment." *Id*. at 15-16 (citing Cal. Health & Safety Code § 11831.65(b)-(c)). Such affirmative defenses grounded in factual disputes, however, are premature at this stage. Even accepting these arguments as valid, they fail to rebut the allegations that patients were provided free housing *in exchange for* continued enrollment in treatment which is prohibited under California law. Compl. ¶ 65-68; Cal. Health & Safety Code § 11831.65(a) ("The offer for housing shall not depend on the individual's agreement to receive services from…the certified outpatient treatment program."). They also fail to rebut the allegations of patients such as JC who were flown from Oklahoma to California for free but not allowed to leave Asana. Compl. ¶¶ 3-6; Cal. Health & Safety Code § 11831.65(c)(2) ("Any air transportation provided to an individual who is seeking recovery or treatment services includes a return ticket that may be used by the individual upon discharge."). In short, the California Health and Safety Code provision permitting subsidized housing and free transportation is premised on several conditions that the Complaint alleges were violated and Asana Defendants ignore. Thus, the allegations of kickbacks in the form of free housing and transportation are sufficient.

The allegations of kickbacks in the form of free housing and transportation are also sufficiently particular. Contrary to Asana Defendants' argument, there are at least two examples of specific patients, AW and DD, who were given free housing in exchange for continued treatment. Compl. ¶¶ 66-68. The Complaint specifies the entities that owned the housing and the individuals and entity who facilitated the free housing. *Id*. ¶¶ 17-23.

Asana Defendants ignore the other allegations of kickbacks in the form of money and gift cards given to patients by Asana's Admissions Director and staff members in exchange for positive advertising, new patient leads, and new enrollments. Compl. ¶¶ 2, 10, 49. These allegations are sufficient at the pleading stage.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFM                               Date: August 5, 2025

Page 10

In a parallel case, Judge Michelle Williams Court declined to dismiss claims of a similar kickback scheme:

> Although the FAC does not allege a specific date a cash payment was exchanged to the Sober Living Defendants, or the amount of any specific payment, the FAC does provide sufficient detail, including the who, what, when, where, and how of the alleged payment scheme. *See United States v. United Healthcare Ins.*, 848 F.3d 1161, 1179 (9th Cir. 2016) (noting, in the False Claims Act context, that the Rule 9(b) standard "does not require absolute particularity or a recital of the evidence" and therefore the complaint "need not allege 'a precise time frame,' 'describe in detail a single specific transaction,'" "identify the 'precise method' used to carry out the fraud," or "identify representative examples of false claims to support every allegation" (citations omitted)).

*Blue Cross and Blue Shield of Oklahoma v. South Coast Behav. Health LLC, et al.*, No. 24-10683 (C.D. Cal. June 20, 2025).

Asana Defendants also assert that they are lumped together and not differentiated in the kickback scheme allegations. Asana Mot. at 16-17. The Complaint, however, has specific kickback allegations against Asana, Asana's Admissions Director, Asana's staff members, and the Shandrows. For example, the Complaint alleges that Mark Shandrow "set the policies and procedures of those working for Asana relating to patient recruitment and advertising, was responsible (along with his brother [Adam Shandrow]) for directing the payments to body brokers and patients, and was personally involved with setting up free housing for patients." Compl. ¶ 20. It also states, "Adam Shandrow was personally involved in patient brokering as well as the provision of free housing." *Id.* ¶ 22. As the Executive Director of Asana, it is plausible that Hagen, who "took a leading role in intake and organization of patients," also "knew of the misconduct alleged herein, actively participated in the scheme(s), and provided substantial assistance or encouragement to the other tortfeasors." *Id.* ¶¶ 23, 31. The fact that all Defendants are alleged to have contributed and participated in the kickback scheme together does not mean that Plaintiff may not refer to Defendants collectively. Moreover, in a fraudulent scheme, it is sufficient for a plaintiff to "identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764-65. Here, the Asana Defendants' individual roles in the scheme have been sufficiently alleged. Thus, the allegations of kickbacks are sufficiently particular against the Asana Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM  Date: August 5, 2025

Page 11

### iii. False Advertising

Asana Defendants argue that the Complaint fails to state a claim and lacks particularity for the false advertising claims. Asana Mot. at 17-18.

Plaintiff alleges that to find patients, Asana did the following:

> Asana aggressively flooded recovery group social media groups and certain populations in Oklahoma – particularly Native American tribes – with false or misleading sales pitches about the quality of treatment at Asana and perks such as "private chefs." For example, Asana represented that they had "reached an agreement" with the state of Oklahoma to provide treatment and so individuals with BCBSOK plans could obtain a good deal for treatment. There was no such agreement. By way of another example, another patient (DD) was promised a payment of $10,000.00 by Asana's Admissions Director if he enrolled in a BCBSOK plan and attended Asana for a certain length of time.

Compl. ¶ 49 (a).

Plaintiff also alleges the story of JC who was promised SUD treatment that she did not receive. *Id*. ¶¶ 1-5. These allegations are sufficient because they identify the content of the false advertising, why it was misleading, the methods used, and examples of specific instances. Again, it is not necessary that each false statement by each Defendant be identified. *Swartz*, 476 F.3d at 764.

### iv. Fraudulent Enrollment of Members

Asana Defendants assert that the Complaint does not provide particular details of the alleged scheme to fraudulently enroll patients in Plaintiff's plans. The Complaint, however, provides the below specifics among numerous other relevant allegations:

> 55. Asana took actions to fraudulently enroll many individuals. Specifically, if a member did not have insurance, Asana would obtain the member's information and then pretend to be the member to enroll. This procedure was spearheaded by admissions director AV and previous admissions director LG, under the direction of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM                                    Date: August 5, 2025

Page 12

> Shandrows. AV, LG, and other admissions staff were the individuals that pretended to be the members during the enrollment process.
>
> 56. In other situations, Asana's brokers would instruct potential patients what information they needed to provide to agents to get into the most desirable plans. For example, LG, and those under her direction, tracked down potential patient DD and told him what he needed to say he earned per year to get into the BCBSOK plan Asana preferred. DD ultimately enrolled in a plan and Asana started billing for his treatment almost immediately upon his plan becoming effective.

Compl. ¶¶ 55-56.

Exhibit B attached to the Complaint contains the information of the specific members involved in allegedly fraudulent enrollments and the dates. Thus, Plaintiff provides the who, what, when, where, how, and why of the fraudulent enrollment scheme conducted by Asana Defendants to bill Plaintiff and profit. Moreover, when several defendants are sued in connection with a fraudulent scheme, "there is no absolute requirement" that the "complaint must identify *false statements* made by each and every defendant." *Swartz*, 476 F.3d at 765 (emphasis in original). After all, "each conspirator may be performing different tasks to bring about the desired result." *Id.* (citation omitted).

### v. Standard of Care

Asana Defendants argue that Plaintiff fails to sufficiently plead a claim for fraud based on services rendered and billed by Asana. Asana Mot. at 20. Plaintiff, however, provides sufficient examples of plausible fraud related to billing for and documenting inadequate, nonexistent, or not medically necessary SUD treatment services.

For example, the Complaint includes a screenshot of a text message from Hagen to staff instructing them to mark a patient as an attendee of "groups" even though "she is sleeping." Compl. ¶ 74. The Complaint also includes the following relevant allegations:

> 70. Returning to the example of JC, Asana offered her one virtual session, medication dispensed from a fellow patient, and allowed her to go on a hike. And yet, Asana submitted claims seeking $4,500 in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM                  Date: August 5, 2025

Page 13

> payments for every day of JC's stay, representing that they were providing 24-hour supervised detox treatment. This was obviously false.
>
> 71. Similarly, during JH's stay, he was given "group" therapy and some virtual sessions. The "group" therapy entailed sitting in a circle smoking cigarettes while somebody spoke on a computer. For the virtual sessions, Asana staff logged him into sessions and then advised that he was free to do what he pleased so long as he remained logged in. Here again, Asana submitted bills to BCBSOK seeking $4,500 per day and representing that it provided legitimate detox treatment.

*Id*. ¶¶ 70-71.

Exhibit A to the Complaint also contains allegedly fraudulent claims detailing the patients involved, amounts, and dates. The specific examples alleged along with Exhibit A are sufficient. At this stage, the Court takes Plaintiff's well-pleaded factual allegations as true. Disputes over what standard of care applies and was rendered rely on facts and are not appropriate to resolve at the pleading stage.

       vi.      **Representative Examples**

Asana Defendants argue that the examples provided to illustrate the fraudulent scheme alleged are insufficient because they lack "continuity," and each example fails to plead a fraud claim. Asana Mot. 21-23. They also argue that Plaintiff's attachment of Exhibit A containing all allegedly fraudulent claims and Exhibit B listing patients associated with fraudulent enrollments is also deficient because the exhibits are not supported by factual allegations and may not be similar to the specific examples in the Complaint. *Id*. at 22. As to the continuity arguments, Asana Defendants fail to cite any binding law to support their position. Moreover, the single Ninth Circuit authority cited, *Ebeid v. Lungwitz*, 616 F.3d 993, 998-999 (9th Cir. 2010), does not support the proposition that Defendants advance. In that False Claims Act case, the Ninth Circuit held that use of representative examples is only one manner to meet pleading requirements, but plaintiffs may also meet Rule 9(b) by alleging "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 999 (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir.2009)). This standard

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFMDate: August 5, 2025

Page 14

is more than met here as Plaintiff has identified the claims actually submitted in Exhibit A in addition to providing details of the fraudulent scheme and specific examples. That the facts constituting fraud for each claim and patient may ultimately differ from the examples detailed in the Complaint is not fatal. At the pleading stage without the benefit of discovery, Plaintiff is unable to uncover more information uniquely within Asana Defendants' possession and knowledge.

### vii. Certification of Compliance

Asana Defendants argue that the allegations of false or inaccurate information in claims forms certified by them lack particularity. Asana Mot. at 23-24.

Some of the relevant allegations are as follows:

> 36. To obtain payment for services rendered to BCBSOK members, healthcare providers submit standard healthcare "claims forms" (CMS 1500, HCFA, or UB-04 forms) representing the services provided to the respective BCBSOK members.
>
> 37. In submitting these claim forms, providers utilize industry standard terminology and procedures. Providers also must accurately set forth other information regarding the treatment, such as the place where the service occurred, the type of treatment offered, and the diagnosis. In submitting claims, Providers further represent that the treatment provided was medically necessary and appropriate and certify that they followed all applicable laws and regulations, have not violated applicable laws, and that their claim forms are accurate.
>
> 38. BCBSOK relies upon providers to submit truthful and accurate information and representations in their claim forms so that it can accurately determine whether the treatment is covered by a members plan as well as the amount of payment owed.
>
> 39. In turn, providers intend for BCBSOK to rely on statements in a given claim form to determine payment. For those reasons, the law, claim forms, and BCBSOK require providers to certify the accuracy of the information contained in claim forms.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFM                                    Date: August 5, 2025

                                                                                     Page 15

> 79. Defendants knowingly made, or knowingly caused to be made, material misrepresentations to BCBSOK in enrollment applications and claim forms.
>
> 80. In submitting claims, or causing claims to be submitted, Defendants represented to BCBSOK that: (i) Defendants complied with applicable laws, regulations, and procedures, (ii) the services billed were actually provided, medically necessary, and reimbursable, (iii) the information on the claim forms were true, accurate, and that material facts were not concealed, and (iv) those providing services were appropriately qualified and licensed.
>
> 81. As set forth above, each of these representations was knowingly false because Defendants: a. Paid kickbacks and engaged in false advertising to obtain patients; b. Waived the cost-share members were responsible for under their plans; c. Paid kickbacks to patients in the form of free housing and free treatment; and d. Did not provide the services billed for at all or as billed for.

Compl. ¶¶ 36-39, 79-81.

Contrary to Asana Defendants' assertions, the Complaint contains ample examples and details of the ways in which the claims forms submitted allegedly contained false information based on kickbacks, false advertising, cost-share waivers, and inadequate, nonexistent, or medically unnecessary treatment. It is plausible based on the facts alleged that Defendants submitted false claims to Plaintiff. Each of Defendants' roles in the fraudulent scheme beginning with false advertising and body brokering and ending in submitting false claims to Plaintiff are adequately alleged. Exhibit A also provides details of the allegedly fraudulent claims. This is sufficient under Rule 9(b). *See South Coast Behav. Health LLC*, No. 24-10683 at 9 (holding that the allegations of false insurance claims and certification of those claims against a SUD provider and its owner were sufficiently particular).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00735-DOC-DFM  Date: August 5, 2025

Page 16

### C. Remaining Claims

Asana Defendants contend that all remaining claims two through seven sound in fraud, are subject to the Rule 9(b) pleading requirements, and fail for the same reasons claim one for fraud fails. Asana Mot. at 25. Asanda Defendants provide no further argument on the remaining claims. The Court has held that the allegations supporting claim one for fraud meet Rule 9(b) thus the allegations are also sufficient to support the remaining claims against Asana Defendants.

Therefore, Asana Defendants' Motion to Dismiss is DENIED for all claims.

## IV. Motion to Dismiss by Defendant Dr. Small

Dr. Christian Small ("Small") moves to dismiss all causes of action against him under Rule 12(b)(6), Rule 9(b), and Rule 8(a)(2). *See generally* Small Mot. Defendant Small's arguments are based on the lack of factual allegations against him specifically. He correctly states that he is only mentioned by name in two paragraphs of the Complaint. Those paragraphs are the following:

> 24. Dr. Christian Small is the medical director of Asana…Dr. Small personally certified the claims on Asana's behalf and prescribed medications. According to claim submissions, Dr. Small served as the attending or supervising professional for essentially every patient at Asana. As explained herein, Dr. Small actually provided very little, if any, actual services. In reality, he and Asana abused his license to create the appearance that qualified professionals were providing services at Asana.

> 75. Asana's medical director, Dr. Small, was equally bad. According to claim forms, he certified that all treatments were true and correct, and either carried out by him or under his supervision. In reality, Dr. Small did little but sign forms and pocket money so his license could be used to give the gloss of professional treatment.

Compl. ¶¶ 24, 75.

While true that the specific factual allegations against Small by name are few, the allegations of inadequate or nonexistent treatment for which Asana billed Plaintiff are

Case 8:25-cv-00735-DOC-DFM Document 44 Filed 08/05/25 Page 17 of 19 Page ID #:605

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 17

many. The Court has already held that Plaintiff has plausibly and sufficiently alleged inadequate or nonexistent SUD treatment to support the claims against Asana Defendants. These allegations are also plausible and sufficiently particular against Small who allegedly certified all treatments and was the medical director for Asana.

Although the allegations of false advertising, body brokering, patient incentives, kickbacks, and insurance enrollment do not name actions taken by Dr. Small individually, he is sufficiently implicated in the overall scheme as a key player in completing the alleged fraud. "[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz*, 476 F.3d at 764. And while "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," it is sufficient for a plaintiff to "identify the role of each defendant in the alleged fraudulent scheme." *Id*. at 764–65 (cleaned up). Here, Small's role as medical director providing or supervising SUD treatment at Asana and signing claims forms is clear. His role was allegedly the last step in the overall fraudulent scheme of enticing and enrolling patients and collecting insurance payments for false treatments. The allegations provide Small fair notice of his misconduct.

Small argues that the allegations against Hagen contradict Small's alleged role in fraudulent billing because Hagen allegedly "instructed staff to doctor medical records to show attendance at treatments even if it was clear that an individual received no treatment…" Small Mot. at 8-9 (quoting Compl. ¶ 74). While Hagen is alleged to have directed falsifying records, the other allegations of inadequate or nonexistent treatment provided by Small or supervised by him and then certified by him in claims forms are sufficient to support the claims against him.

As to the aiding and abetting and conspiracy allegations against Small, these allegations are also sufficient. "Under the Federal Rules of Civil Procedure, substantial assistance of the underlying fraud must be pleaded with particularity, while actual knowledge of the underlying fraud may be averred generally." *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024) (collecting cases) (internal citations and quotations omitted). Plaintiff generally pleads that Small had knowledge of the scheme. *See* Compl. ¶ 31. Plaintiff also pleads with sufficient particularity that Small provided "substantial assistance" to the fraudulent scheme as Asana's medical director providing and supervising SUD treatment and certifying claims forms. Without Small's alleged

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00735-DOC-DFM | Date: August 5, 2025 |

Page 18

role, the scheme would be worthless and would not be able to succeed. Therefore, all Plaintiff's claims against Small are plausibly and sufficiently plead.

As to the alter ego allegations, they are conclusory because there are no facts alleged about Small to support unity of interest or ownership. Compl. ¶¶ 27-29. "An alter ego relationship is established under California law when '(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation ... would sanction a fraud or promote injustice.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) (quoting *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003)). There are no allegations of commingling funds or other recognized signs of unity of interest. *See Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). On alter ego liability, Plaintiff merely argues that, "Dr. Small (and his license) were inseparable from Asana and provided Defendants the gloss of a medical professional that they needed to carry out the scheme. None of this would have been possible without Dr. Small, and nothing more is required at this stage." Small Opp. at 12. This is insufficient and thus the alter ego allegations against Small are dismissed.

Therefore, Defendant Small's Motion is **DENIED** as to all claims and **GRANTED** as to the alter ego allegations only. The allegations that Small is the alter ego of other entities listed as Defendants are dismissed. Plaintiff is granted leave to amend those allegations within 14 days.

**V.      Disposition**

For the reasons set forth above, the Court hereby **DENIES** Asana Defendants' Motion and **GRANTS IN PART AND DENIES IN PART** Defendant Dr. Small's Motion. Plaintiff is **GRANTED LEAVE TO AMEND** the Complaint as to the allegations against Dr. Small as discussed herein within 14 days. There will be no oral arguments on this motion at the August 11, 2025 hearing**,** but parties are ordered to appear on this date for the Scheduling Conference.

The Clerk shall serve this minute order on the parties.

| | |
|---|---|
| MINUTES FORM 11 | Initials of Deputy Clerk: kdu |

CIVIL-GEN

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00735-DOC-DFM　　　　　　　　　　　　　　Date: August 5, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 19