DAVID T. BARTELS (SBN 209449)
LAWRENCE BARTELS LLP
7700 Irvine Center Dr, Suite 800
Irvine, CA 92618
Telephone: 949.346.4646
dbartels@lawrencebartels.com
MATTHEW M. LAVIN (pro hac vice forthcoming)
ARNALL GOLDEN GREGORY LLP
Telephone: 202.677.4959
Matt.Lavin@agg.com

Attorneys for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathan Hagen

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ASANA BUY SELL LLC, MARK SHANDROW, ADAM SHANDROW, AND JONATHAN HAGEN,<br><br>Defendants. | Case No.: 8:25-cv-735<br><br><br>**ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br><br>Date:<br>Time:<br>Location:<br>Judge: Hon. David O. Carter |

COMES NOW Defendants Asana Recovery, Inc. ("Asana"), Beachfront Sober Living, Inc. ("Beachfront"), Asana Buy Sell LLC ("Asana Buy Sell"), Mark Shandrow, Adam Shandrow, and Jonathan Hagen (collectively, "Defendants") by and through their undersigned counsel, and answer Plaintiff Blue Cross Blue Sheild of Oklahoma's ("BCBSOK") Complaint as follows:

## INTRODUCTION

1. Defendants admit only that KB contacted JC and that both women are members of the same Native American tribe. Defendants without knowledge or information sufficient to form

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS        PAGE **1** OF **43**

a belief as to the truth of the remaining allegations asserted in Paragraph 1 and therefore deny those allegations.

2.      Defendants admit only that KB is employed by and was a former patient at Asana. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 2.

3.      Defendants admit only that JC enrolled in Asana for treatment, and upon arrival at Asana underwent a voluntary body search and turned over all electronics. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 3.

4.      Defendants deny the allegations in Paragraph 4.

5.      Defendants deny the allegations in Paragraph 5.  Upon admission to Asana, JC executed a contract that informs patients if they choose to leave the program early against medical advice they will not receive their belongings for 72-hours.

6.      Defendants deny the allegations in Paragraph 6.

7.      Asana admits that it was paid for not less than seven days of residential treatment for JC, including room and board, at the contracted rate. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 7.

8.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 8 and therefore deny those allegations.

9.      Defendants deny the allegations in Paragraph 9.

10.     Defendants deny the allegations in Paragraph 10.

11.     Defendants deny the allegations in Paragraph 11.

12.     Defendants deny the allegations in Paragraph 12.

13.     Defendants deny the allegations in Paragraph 13.

14.     Defendants deny the allegations in Paragraph 14. Neither Asana, Beachfront, nor Asana Buy Sell ever provided free housing to any patient following detox. All patients that resided at Beachfront and Asana Buy Sell during outpatient treatment were invoiced for housing costs and if they were unable to pay, collection activities were undertaken.

15.     Denied.

## THE PARTIES AND THEIR ROLES

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 16 and therefore deny those allegations.

17.     Asana admits that it is a California stock corporation with its principal place of business at 1730 Pomona Avenue, Suite 3, Costa Mesa, California 92627. Asana further admits that it is owned and operated by Mark Shandrow and Adam Shandrow, among others. Except as expressly admitted herein, Asana denies the allegations in Paragraph 17.

18.     Admitted.

19.     Admitted.

20.     Mark Shandrow admits that he resides at 1621 Cornwall Lane, Newport Beach, California 92660 and co-owns Asana, Beachfront, and Asana Buy Sell with Adam Shandrow. Except as expressly admitted herein, Mark Shanrow denies the allegations in Paragraph 20.

21.     Mark Shanrow denies the allegations in Paragraph 21. Solid Landings was never accused of body brokering or kickbacks and did not undergo an investigation by the California Department of Insurance for body brokering or kickbacks.

22.     Adam Shandrow resides at 3764 Ceder Avenue, Long Beach, California 90807 and co-owns Asana, Beachfront, and Asana Buy Sell with Mark Shandrow. Except as expressly admitted herein, Adam Shandrow denies the allegations in Paragraph 22.

23.     Jonathon Hagen admits that he resides at 19005 Fairmont Lane, Huntington Beach, California 92648 and is the executive director at Asana. Except as expressly admitted herein, Jonathon Hagen denies the allegations in Paragraph 23.

24.     Paragraph 24 asserts no allegations against Defendants, and therefore Defendants are not required to respond to same.  To the extent a response is required, Defendants admit only that Dr. Small is the medical director at Asana.

25.     Paragraph 25 asserts no allegations against Defendants, and therefore Defendants are not required to respond to same.  To the extent a response is required, denied.

26.     Defendants deny the allegations in Paragraph 26.

### ALTER EGO/CONSPIRACY/AIDING AND ABETTING ALLEGATIONS

27.     Defendants deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants deny the allegations in Paragraph 31.

### JURISDICTION AND VENUE

32.     Paragraph 32 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 32 and therefore deny those allegations.

33.     Paragraph 32 consists of legal conclusions not requiring a response. To the extent a response is required, admitted.

## RELEVANT INDUSTRY BACKGROUND

**I.   BCBSOK RELIES UPON PROVIDERS TO SUBMIT ACCURATE INFORMATION AND CERTIFY COMPLIANCE WITH APPLICABLE LAWS**

34.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 34 and therefore deny those allegations.

35.    Admitted.

36.    Admitted.

37.    Admitted.

38.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 38 and therefore deny those allegations.

39.    Admitted.

40.    Defendants admit that there are various level of substance use disorder ("SUD") treatment that vary in intensity. Except as expressly admitted herein, the Defendants deny the allegations om Paragraph 40.

41.    Admitted.

42.    Admitted.

43.    Admitted.

44.    Admitted.

45.    Defendants admit that many patients choose to live away from their home environments following detox to remain free of stressors that may have contributed to addition, which led to the creation of sober living homes. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 45.

46.    Admitted.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS        PAGE **5** OF **43**

**DEFENDANTS FRADULENT SCHEME**

47.    Defendants deny the allegations in Paragraph 47.

## I.    ASANA INDUCES PAITENTS INTO TREATMENT THROUGH BODY BROKERING AND FALSE ADVERTISING

48.    Defendants deny the allegations in Paragraph 48.

49.    Asana denies the allegations in Paragraph 49 and each subparagraph thereof.

    a.    Asana denies the allegations in Paragraph 49(a). Asana advertised its services on social media and through social media groups.

    b.    Defendants deny the allegations in Paragraph 49(b).

    c.    Asana denies the allegations in Paragraph 49(c). Asana does not employ current patients or engage in kickbacks for enrollment. Asana has, not more than ten times, employed past patients who have remained sober for a significant period of time following treatment and who wish to help others struggling with SUD. These employees are W-2, salaried employees rightfully employed by Asana. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 49(c).

## II.    IF PROSPECTIVE PAITENTS DFID NOT HAVE INSURANCE, ASANA TOOK ACTION TO FRAUDULENTLY ENROLL THEM

50.    Asana denies that it fraudulently enrolled individuals in BCBSOK exchange act plans and that they targeted these plans due to their "robust out-of-network, out-of-state benefits." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 50 and therefore deny those allegations.

## A.  Background on BCBSOK Exchange Plans

51.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 51 and therefore deny those allegations.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 52 and therefore deny those allegations.

53.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 50 and therefore deny those allegations.

54.     Defendants deny the allegations in Paragraph 54.

## B.  Asana's Fraudulent Enrollments

55.     Defendants deny the allegations in Paragraph 55.

56.     Defendants deny the allegations in Paragraph 56.

57.     Defendants deny the allegations in Paragraph 57. Asana generally does not admit clients prior to insurance enrollment. However, not more than ten (10) times, patients have been admitted the day before enrollment due to transportation issues.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 58 and therefore deny those allegations.

59.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 59 and therefore deny those allegations.

60.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 60 and therefore deny those allegations. Asana was diligently secured government issued identification cards, including tribal membership cards, to confirm that insurance policies were legitimately acquired.

61.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in Paragraph 61 and therefore deny those allegations.

62.     Defendants deny the allegations in Paragraph 62.

### III.     ASANA PAID KICKBACKS TO THE PAITENTS IN THE FORM OF FREE TREATMENT AND HOUSING

63.     Defendants deny the allegations in Paragraph 63. Defendants never offered patients free treatment, free or low-cost housing, transportation and/or food.

64.     Defendants deny the allegations in Paragraph 62. To the extent a further response is required, Defendants never waived cost-share for patients. Patients who did not pay their cost-share were billed multiple times for this amount. However, since many patients at Asana are members of Native American tribes, they generally do not have cost-share obligations or deductibles.

65.     Defendants deny the allegations in Paragraph 65. To the extent that Asana assisted patients with transportation costs, the patient was billed for the cost and signed a promissory note to repay the cost of transportation. Asana never provided free housing to patients.

66.     Defendants deny the allegations in Paragraph 66. Asana never provided free housing to patients. Patients in outpatient treatment had to pay for housing and when residents did not pay Beachfront and Asana Buy Sell undertook collection efforts for payment. Free housing was never provided to patients.

67.     Defendants deny the allegations in Paragraph 67 and respectfully refer the Court to the explanation provided in response to Paragraph 66.

68.     Defendants deny the allegations in Paragraph 68. Defendants do not support "420-friendly" housing or offer drugs to patients to remain in treatment.

## IV. WORST OF ALL, THE TREATMENT RENDERED WAS EITHER NON-EXISTENT, USELESS, AND/OR RENDERED BY UNQUALIFIED INDIVIDUALS

69. Defendants deny the allegations in Paragraph 69.

70. Defendants deny the allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants deny the allegations in Paragraph 72.

73. Defendants deny the allegations in Paragraph 73.

74. Jonathon Hagen denies the allegations in Paragraph 74. It is common for patients to fall asleep during detox. Simply because a patient fell asleep during a session does not mean that adequate services were not provided as billed or that Defendants falsified records.

75. Paragraph 75 asserts no allegations against Defendants, and therefore Defendants are not required to respond to same.  To the extent a response is required, denied.

76. Defendants deny the allegations in Paragraph 76.

77. Defendants deny the allegations in Paragraph 77 and Exhibits A through E. Exhibit A is a nondescript mass claims register prepared by BCBSOK and organized only by dates of service. It provides no information as to why the claims are purportedly fraudulent (whether based on an alleged fraudulent enrollment, false promises or advertising, kickbacks, payments for prospect leads or positive patient reviews, cost-share waivers, free-housing, etc.). Exhibit B is a list of member id's and corresponding membership effective dates; it provides no information about purported fraudulent enrollments.

### FIRST CAUSE OF ACTION

**Fraud and Fraudulent Concealment**

**(Against All Defendants)**

78. Defendants incorporate by reference their responses to Paragraphs 1 through 77 above as if set forth fully herein.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS      PAGE **9** OF **43**

79.    Paragraph 79 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 79.

80.    Defendants deny the allegations in Paragraph 80.

81.    Defendants deny the allegations in Paragraph 81.

82.    Defendants deny the allegations in Paragraph 82. Exhibit A is a nondescript mass claims register prepared by BCBSOK and organized only by dates of service. It provides no information as to why the claims are purportedly fraudulent (whether based on an alleged fraudulent enrollment, false promises or advertising, kickbacks, payments for prospect leads or positive patient reviews, cost-share waivers, free-housing, etc.).

83.    Defendants deny the allegations in Paragraph 83.

84.    Defendants deny the allegations in Paragraph 84.

85.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 85 and therefore deny those allegations. Defendants never made false misrepresentations or material omissions in claims forms submitted to BCBSOK.

86.    Defendants deny the allegations in Paragraph 86.

87.    Defendants deny the allegations in Paragraph 87.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (Against All Defendants)

88.    Defendants incorporate by reference their responses to Paragraphs 1 through 87 above as if set forth fully herein.

89.     Denied. All services rendered at Asana were (and are) medically necessary, aligned with industry standards, and compensable. Defendants disclosed all material information for all services provided at Asana and billed to BCBSOK.

90.     Denied. All claims forms submitted by Asana to BCBSOK contained true and accurate information.

91.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 91 and therefore deny those allegations.

92.     Defendants deny the allegations in Paragraph 92.

93.     Paragraph 93 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 93.

## THIRD CAUSE OF ACTION

### Intentional interference with Economic/Contractual Relationships

### (Against All Defendants)

94.     Defendants incorporate by reference their responses to Paragraphs 1 through 93 above as if set forth fully herein.

95.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 95 and therefore deny those allegations.

96.     Defendants deny the allegations in Paragraph 96.

97.     Defendants deny the allegations in Paragraph 97.

98.     Defendants deny the allegations in Paragraph 98.

99.     Paragraph 99 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 99.

## FOURTH CAUSE OF ACTION

### Aiding and Abetting Tortious Conduct

**(Against All Defendants)**

100.    Defendants incorporate by reference their responses to Paragraphs 1 through 99 above as if set forth fully herein.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    Defendants deny the allegations in Paragraph 103.

104.    Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

## FIFTH CAUSE OF ACTION

**Violations of Business and Professional Code Section 17200,** *et seq***.**

**(Against All Defendants)**

106.    Defendants incorporate by reference their responses to Paragraphs 1 through 105 above as if set forth fully herein.

107.    Paragraph 107 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 107.

108.    Paragraph 108 consists of legal conclusions not requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants deny the allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111.

## SIXTH CAUSE OF ACTION

### Money Had and Received

### (Against All Defendants)

112.    Defendants incorporate by reference their responses to Paragraphs 1 through 111 above as if set forth fully herein.

113.    Defendants deny the allegations in Paragraph 113.

114.    Admitted.

115.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 115 and therefore deny those allegations.

116.    Defendants deny the allegations in Paragraph 116.

117.    Defendants deny the allegations in Paragraph 117.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment/Quantum Meruit/Restitution

### (Against All Defendants)

118.    Defendants incorporate by reference their responses to Paragraphs 1 through 117 above as if set forth fully herein.

119.    Defendants deny the allegations in Paragraph 119.

120.    Defendants deny the allegations in Paragraph 120.

121.    Defendants deny the allegations in Paragraph 121.

## GENERAL DENIAL

The Defendants deny each and every allegation in the Complaint (including allegations asserted in footnotes) not specifically admitted.

## AFFIRMATIVE DEFENSES

Without waiving any non-affirmative defenses that are not stated herein and without assuming the burden of proof on any defense where the law provides otherwise, Defendants submit their defenses to the claims set forth in the Complaint as follows:

### First Affirmative Defense

Plaintiff failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by reason of its own acts, omissions, representations, and/or course of conduct, by which it has waived its right to assert its claims against Defendants.

### Third Affirmative Defense

Each and every cause of action in the Complaint is barred by the equitable doctrine of unclean hands.

### Fourth Affirmative Defense

Plaintiff's cause of action alleged in the Complaint are barred by the doctrine of estoppel; Plaintiff paid Defendant's claims with knowledge of how Plaintiff provided and billed services and should therefore be estopped from now claiming that such claims were, and are, false.

### Fifth Affirmative Defense

Plaintiff failed to mitigate the damage allegedly suffered in the Complaint.

### Sixth Affirmative Defense

The Complaint and every cause of action therein is barred because Defendants at all times acted in conformity with, and reliance upon, applicable rules, regulations, and standards, including

those governing waiver of member cost-share payment obligations and the cost of sober living houses for recipients of SUD treatment in California.

### Seventh Affirmative Defense

At all times, Defendants' actions were reasonable and taken in the good faith exercise of its reasonable and professional judgment and business judgment. And, at all relevant times, Defendants exercised due care and good faith regarding all acts alleged in the Complaint.

### Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part on the basis of ERISA preemption to the extent such claims are governed by ERISA.

### Ninth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff authorized, consented to, and/or ratified Defendant's alleged conduct in the Complaint.

### Tenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged misrepresentations and/or omissions in the Complaint were not material to Plaintiff's payment of Defendant's claims.

### Eleventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff did not reasonably rely on Defendant's alleged misrepresentations and/or omissions in the Complaint.

### Twelfth Affirmative Defense

The damages alleged in the Complaint, if any, were proximately caused by the acts and omissions of persons or entities other than Defendants, which acts and omissions constitute intervening and superseding causes of the alleged damages.

**Thirteenth Affirmative Defense**

Plaintiff's alleged damages, if any, must be reduced by the doctrine of set off based upon Plaintiff's failure to pay claims due and owing to Asana.

Defendants respectfully reserve the right to supplement their affirmative and non-affirmative defenses up to and including the time of trial.

## COUNTERCLAIM

Counterclaims-Plaintiff Asana Recovery, Inc. ("Asana"), by and through its undersigned counsel, hereby asserts the following Counterclaims against Counterclaims-Defendant Blue Cross and Blue Sheild of Oklahoma, a Division of Health Care Services Corporation ("BCBSOK"):

**I.    Introduction**

1.     These counterclaims arise out of BCBSOK's failure to reimburse Asana for covered medical services that Asana provided to patients insured by BCBSOK ("BCBSOK Patients").

2.     Asana operates facilities in California that provide substance use disorder ("SUD") treatment services.

3.     BCBSOK is a health insurer within the Blue Cross Blue Shield Association (the "Association") of health insurance companies (referred to as "Plans"). As a member of the Association, BCBSOK participated in the Blue Card Program.

4.     The Blue Card Program enables members to travel outside their home Plan's service area and receive the same benefits.

5.     This is accomplished by the agreement among Association member companies to honor each other's contracts with providers. Each Plan agrees to offer all BCBS members access to its provider network. Each Plan also drafts its provider contracts to enable all other BCBS Plans to benefit from the negotiated rates set forth in its provider contracts.

6.      Under the Blue Card Program, the "Home Plan" is the member's actual plan (the plan operating in the state where the participant lives and is covered). The "Host Plan" is the plan operating where the provider is located whose services a member wishes to obtain.

7.      When a member's claim is processed under the Blue Card Program, the Home Plan determines payment and the Host Plan determines eligibility. That is, the Host Plan determines how much the provider is paid based on the negotiated rates in its contract with the provider. The Home Plan adjudicates the claim under the terms of the member's Home Plan, makes any eligibility or coverage determinations, and ultimately makes the payment.

8.      Here, Asana rendered SUD treatment services in California to BCBSOK Patients who reside in Oklahoma and are insured by BCBSOK.

9.      Asana has a provider contract with a BCBS entity in California, Blue Cross of California d/b/a/ Anthem Blue Cross ("BCBSCA") and affiliates.

10.     Under the Blue Card Program, BCBSCA acted as the Host Plan and BCBSOK acted as the Home Plan for the purposes of processing Asana's claims arising out of its treatment of BCBSOK Patients. Accordingly, BCBSCA's contract with Asana determined the appropriate payment amounts for the services Asana rendered, and BCBSOK determined eligibility and coverage only.

11.     In or about November 2021, BCBSOK began arbitrarily denying all or portions of claims for BCBSOK Patients requesting medical records that Asana previously provided.

12.     Asana complied with all of BCBSOK's requests, but BCBSOK still did not pay claims.

13.     Asana brings this suit to recover the money BCBSOK owes for services Asana provided to the BCBSOK Patients, plus fees and interest.

## II.    Parties, Jurisdiction, and Venue

14.    Counterclaims-Plaintiff Asana Recovery is a privately-held California corporation with its principal place of business in Costa Mesa, California. Asana is a licensed and qualified provider of substance use disorder treatment services. Its treatment centers are located in Costa Mesa, Huntington Beach, and Fountain Valley California, and its corporate office is located in Costa Mesa, California.

15.    Counterclaims-Defendant Blue Cross and Blue Sheild of Oklahoma ("BCBSOK") is an unincorporated division of Health Care Services Corporation, an Illinois mutual legal reserve corporation with its principal place of business in Illinois. As it pertains to Oklahoma and Oklahoma-based insurance plans, Health Care Services Corporation does business as Blue Cross and Blue Sheild of Oklahoma. *See* ECF 1 at ¶ 16.

16.    BCBSOK is in the insurance and health plan administration business. It insured and/or administered the health plan benefits of the BCBSOK Patients. The health plans it operated permitted patients to receive care outside the service areas in which the plans were issued and administered, including through the Blue Card Program.

17.    This Court has supplemental jurisdiction over Asana's Counterclaims pursuant to 28 U.S.C. § 1367, as the Counterclaims arise out of the same transaction or occurrence that is the subject matter of BCBSOK's Complaint (ECF 1, "Complaint"). This Court also has jurisdiction under 28 U.S.C. § 1332.

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the counterclaims occurred in California. In addition, BCBSOK chose this venue in bringing its Complaint against Asana.

### III.   Factual Allegations

19.   Asana provided medically necessary substance use disorder ("SUD") treatment services to BCBSOK Patients.

20.   Each BCBSOK Patient had a BCBSOK health plan, and each health plan provided coverage for SUD treatment provided by Asana through participation in the Blue Card Program.

21.   Asana, through its representatives, including the billing company it employs as its agent, Hansei Solutions ("Hansei"), received verification of benefits and pre-authorization for providing those services where required from BCBSOK.

22.   Some of the BCBSOK health plans had cost sharing obligations. Cost sharing obligations are the portion of health care costs paid out-of-pocket by patients, and include, for example, deductible amounts and coinsurance. Other BCBSOK health plans had no cost share obligations.

23.   Asana, through its representatives, including Hansei, diligently collected and attempted to collect each patient's cost sharing obligations, if applicable.

24.   These counterclaims arise out of BCBSOK's agreement to pay Asana for services rendered to BCBSOK Patients by virtue of Asana being a Participating Hospital/Facility in the Association and participating in the "Blue Card Program." Under the Blue Card Program, Asana's host plan, BCBSCA and Affiliates, arranges for the payment of care rendered to, *inter alia*, BCBSOK Patients, at Asana.

25.   Asana provided authorized, medically necessary treatment to BCBSOK Patients, followed all billing requirements, and is therefore entitled to full payment from BCBSOK.

26.   From November, 2021 through December, 2024 Asana rendered services to not less than 111 BCBSOK Patients with outstanding claims totaling at least $1,589,800.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS      PAGE **19** OF **43**

27.    Asana seeks to recover the value of the unpaid services that it provided to BCBSOK Patients from BCBSOK, plus fees and interest.

**A. BCBSOK participates in the BlueCard Program, which provides coverage for services received outside of its service area.**

28.    The Association is a is a national association of several dozen independently owned and locally operated BCBS companies, which collectively provide health insurance coverage across the country.

29.    The Association owns and manages the BCBS trademarks and names, grants use licenses to the independent companies for the exclusive geographic areas in which they operate.

30.    Health insurers contract with healthcare providers to participate "in-network." In-network providers agree to accept payment rates set by the insurer for covered services they provide and promise not to bill patients for more than any agreed-upon cost-share. Providers typically accept payment rates lower than their usual and customary charges in exchange for the benefit of being a participating or preferred provider for the insurer, which generates business.

31.    Each BCBS company or licensee engages local healthcare providers and medical facilities to enter into network agreements.

32.    The Association's licensing agreements ("Licensing Agreements") require BCBS companies (i.e., Plans), including BCBSOK and BCBSCA, to comply with particular standards or programs. One such program is the Blue Card Program.

33.    Introduced in 1995, the Blue Card Program enables BCBS members to transport their BCBS health insurance coverage across state lines or otherwise outside their particular Plan's service area.

34.    This is accomplished through each Plan's agreement with the Association to offer all BCBS members access to their respective in-network providers at their negotiated rates—

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS          PAGE **20** OF **43**

regardless of the specific Plan associated with the member's enrollment. Eligibility for coverage in the first instance, however, is still governed by the particular Plan in which the member is enrolled.

35. When a Plan (Plan A) opens its provider network to a BCBS member of another Plan (Plan B), Plan A is known as the "Host Plan" and Plan B is known as the "Home Plan." Under this collective coverage scheme, each BCBS company serves as a Home Plan to its subscribers and a Host Plan to subscribers of other BCBS companies.

36. When a BCBS member receives medical treatment or services from a Host Plan provider, the participating provider submits a claim to the Host Plan. The Host Plan processes the claim according to its contractual agreements with the provider, applying in-network rates and benefits. That is, the Host Plan determines the payment amount for the services based on the negotiated rate under the relevant provider agreement executed between the Host Plan and the provider.

37. The Host Plan does not, however, adjudicate the claim under the member's Home Plan or otherwise make any determinations regarding member eligibility or Home Plan coverage.

38. Instead, the Host Plan forwards the claim to the Home Plan along with the information regarding the payment amount required under the Host Plan's agreement with the provider.

39. The Home Plan then adjudicates the claim under the terms of the member's Home Plan health benefits to determine, for example, eligibility as well as any copayments, coinsurance, or deductible. This ensures that the patient's benefits are applied as if the services were obtained within the Home Plan's network.

40.     Following its adjudication, the Home Plan returns a record to the Host Plan detailing the Home Plan coverage and allowances, including any authorized payment to the provider.

41.     Once the Home Plan coverage and allowances are approved and communicated, the Host Plan typically remits payment to their provider initially in the approved amount. The Host Plan then prepares and transmits a record to effect reimbursement from the Home Plan.

42.     The provider can appeal any denial to the Home Plan, but not the Host Plan.

43.     In short, when a provider delivers medical services to a patient who is insured by an out-of-state BCBS entity, the provider submits the claim to the Host Plan. The Host Plan processes the claim and determines the amount of payment due to the provider. The Home Plan then determines whether the services that were provided to the patient are "covered services" under the patient's health insurance plan. If the services are covered services, the Home Plan authorizes the Host Plan to pay the provider based on the provider's contract with the Host Plan. The Home Plan then reimburses the Host Plan for its payment.

44.     In this case, the Home Plan is BCBSOK. The Host Plan is BCBSCA.

**B.  Asana provides critical substance use disorder treatment services to patients based on clinically appropriate ASAM criteria.**

45.     At all times relevant hereto, Asana, a small family-owned treatment center, operated a mix of residential and partial hospitalization ("PHP) and intensive outpatient treatment ("IOP") facilities.[1]

---

[1] As of the date of filing this Counterclaim, Asana operates only two out-patient SUD treatment facilities, which is significantly less than the six facilities providing both residential and outpatient SUD treatment that Asana operated in the beginning of 2025.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS     PAGE **22** OF **43**

46.     As relevant to the claims at issue, Asana provides a variety of medical services relating to the treatment of substance use disorders. Those services are organized into four phases that correlate to: (1) specific levels of care as outlined by the American Society of Addiction Medicine Criteria ("ASAM") for substance use disorder treatment; and (2) specific Healthcare Common Procedure Coding System ("HCPCS") codes.

47.     ASAM is the most widely used and comprehensive set of guidelines for placement, continued stay, transfer, or discharge of patients with substance use disorder conditions. It is the result of a collaboration to define one national set of criteria for providing outcome-oriented and results-based care in the treatment of substance use disorders. In the specialty of addiction medicine and substance use treatment, ASAM is nationally recognized and the generally accepted standard for determining appropriate treatment settings and levels of care for the treatment of substance use disorders.

48.     ASAM defines six "dimensions" corresponding to different levels of treatment based on the degree of direct medical management provided; the structure, safety and security provided; and the intensity of treatment services provided.

49.     The current ASAM levels of care include:

    Level 0.5: Early Intervention

    Level 1: Outpatient Services

    Level 2.1: Intensive Outpatient Services

    Level 2.5: Partial Hospitalization

    Level 3.1: Clinically Managed Low-Intensity Residential Services

    Level 3.2: Clinically Managed Residential Withdrawal

    Level 3.3: Clinically Managed Population-Specific High-Intensity Residential Services

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS     PAGE **23** OF **43**

> Level 3.5: Clinically Managed High-Intensity Residential Services
>
> Level 3.7: Medically Monitored Intensive Inpatient Services
>
> Level 4: Medically Managed Intensive Inpatient Services

50. Asana's state licenses require it to apply ASAM criteria as the minimum standard of care when treating its patients.

51. HCPCS is a collection of standardized codes that represent medical procedures, supplies, products, and services. The codes are used to facilitate the processing of health insurance claims by insurers.

52. Blue Cross and Blue Sheild affiliates also use revenue codes that correspond with the ASAM Levels to process health insurance claims.

53. Phase 1 of Asana's treatment program is a detoxification phase ("detox") corresponding with ASAM Level 3.2 and HCPCS code H0010 and Blue Cross and Blue Sheild Revenue Code 1056.

54. Phase 2 is a residential treatment phase corresponding to ASAM Level 3.5 and HCPCS code H0018 and Blue Cross and Blue Sheild Revenue Codes 0158 and 1002.

55. Phase 3 is a PHP corresponding to ASAM Level 2.5 and HCPCS code S0201 and Blue Cross and Blue Sheild Revenue Codes 0912 and 0913.

56. Phase 4 involves IOP treatment corresponding to ASAM 2.1 and HCPCS code H0015 and Blue Cross and Blue Sheild Revenue Code 0906.

57. Asana provided substance use disorder treatment services to BCBSOK Patients involving all four phases. That is, it provided detox, residential, PHP, and IOP treatment to BCBSOK Patients.

58. Asana renders high-quality, often life-saving treatment to individuals. Each patient undergoes assessments to determine the appropriate level of care prior to starting treatment. The patient and Asana work together to create an individualized treatment plan to help the patient accomplish the goals necessary to achieve recovery.

**C. Asana was Authorized to Provide Services to the BCBSOK Patients.**

59. Although located outside the State of Oklahoma, Asana is an in-network provider for BCBSOK Patients under the Blue Card Program.

60. Through the Blue Card Program, BCBSOK members can seek treatment at any facility in the Association's network.

61. In May 2020, Asana and BCBSCA entered into a "Mental Health Participating Hospital/Facility Agreement" ("Network Agreement" or "Agreement"), effective July 2020.

62. The Network Agreement includes relevant provisions relating to the BlueCard Program and claims processing.

63. First, the Agreement establishes Asana's participation in the BlueCard Program, which it describes as the "mechanism by which [BCBSCA], as the host plan, arranges for the payment of care rendered to [BCBS] members of out-of-state plans by [Asana]." The Agreement provides: (1) Asana is required to provide services to BCBS members in accordance with the terms of the Agreement; (2) other BCBS entities (i.e., Home Plans) are eligible to pay the negotiated rates provided by the Agreement; and (3) BCBS entities must "actively encourage" BCBS members to use in-network providers like Asana.

64. Second, the Agreement establishes that Asana "shall look to payment" from Home Plans (i.e., BCBSOK) for services it provides to their respective members and that Asana must

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS    PAGE **25** OF **43**

follow the Home Plan's "utilization review requirements regarding the determination of medical necessity and appropriateness of services provided."

65.     Third, the Agreement sets forth the timing and amount of payment. As for timing, the Agreement requires all claims to be paid within 30–45 working days from receipt, unless the claims are contested, in which case Asana must be informed in writing within 30–45 days.

66.     As for payment amounts, the Agreement provides specific rates of payment for each of the four levels of care provided by Asana: IOP, PHP, detox and residential. The Agreement designates these four rates as confidential, and Asana will provide them to the Court in a separate filing, under seal. For purposes of these Counterclaims, these rates are referred to as the "Anthem Rates."

67.     BCBSOK has never objected to the Anthem Rates. Rather, this dispute centers on BCBSOK's denial of coverage in the first place.

**D. Asana received promises to pay when it verified benefits and obtained authorization for the services.**

68.     When potential-patients with BCBSOK health plans seek treatment at Asana, Asana contacts BCBSOK to determine whether and to what extent the patient's treatment will be covered. Otherwise, Asana risks providing costly treatment to a patient who may not otherwise be able to pay for treatment. This call is referred to as a "verification of benefits" or "VOB" call.

69.     Providers like Asana rely on the information from VOB calls to determine whether to proceed with a patient's treatment. And, insurers like BCBSOK expect providers to rely on the accuracy of the information providers received. Insurers also know that patients rely on representations made during VOB calls because providers relay those representations to patients to inform them of their expected payment obligations—like cost-sharing obligations—which patients rely on to determine whether to proceed with treatment.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS     PAGE **26** OF **43**

70. In the in-network context, VOB calls are important to ensure that a patient is eligible for treatment under the terms of their plan.

71. The Network Agreement expressly contemplated such VOB calls and provided that these calls guaranteed payment for Asana absent fraud or misrepresentations.

72. In addition to VOB calls, providers and insurers within the Association often engage in "Pre-Service Review" also known as pre-authorization. A Pre-Service Review call is a formal request made by a provider to a patient's insurer for advance approval or permission for a proposed treatment, medical service, or procedure. The Pre-Service Review process serves as an additional level of scrutiny, further ensuring the medical necessity and appropriateness of the recommended services.

73. Insurers do not require Pre-Service Review for all services. Instead, insurers like BCBSOK maintain a list of services, treatments, or procedures that require Pre-Service Review.

74. The Pre-Service Review process involves a review of the patient's medical history, current condition, and the proposed treatment plan. Medical and clinical professionals employed by the insurer assess whether the proposed services meet established clinical criteria and guidelines. Upon successful review, an authorization number is usually issued, which serves as a commitment that the service will be covered.

75. Providers like Asana also engage in "Continuing Service Review" calls, even when services do not require pre-authorization, with clinical and medical professionals employed by the insurer to confirm that the services rendered are medical necessary and will be paid by the plan.

76. Health insurance companies like BCBSOK employ dedicated staff and develop standard protocols to handle the high volume of VOB and service review calls they receive.

77.     Asana does not admit or treat patients like the BCBSOK Patients without ensuring it will be paid for the services it provides. The BCBSOK Patients, like most patients, relied on their private insurance to indemnify the cost of their care. For patients that use insurance to pay for services, Asana verifies coverage requirements for medically necessary services at the Anthem Contract Rates prior to starting treatment. The claims at issue in this litigation arise under the Anthem Blue Card program which allowed the patients to obtain healthcare treatment outside the service area of their plan (i.e., out of state).

78.     Asana takes all precautions to establish an oral contract with BCBSOK to ensure that it will be reimbursed for the services it provides to its members.

79.     In this case, Asana made VOB calls to BCBSOK for each BCBSOK Patient treated at Asana and Pre-Service Request calls where applicable. For some BCBSOK Patients, that meant multiple Pre-Service Requests and/or Continuing Service Requests to verify coverage, for additional, changing, or continuing treatment. On these calls, Asana verified coverage for each BCBSOK Patient for every service requested.

80.     In each VOB call, Asana provided BCBSOK with patient information, the type of treatment sought, Asana's taxpayer identification number, and all other necessary information BCBSOK needed to determine its coverage of the BCBSOK Patients' treatment.

81.     Asana also made Pre-Service Requests to BCBSOK for every patient and for every service for which pre-authorization was required. BCBSOK required Pre-Service Requests for only detox and residential treatment. BCBSOK continued to verify coverage and confirm BCBSOK's agreement to pay—even after BCBSOK had begun denying claims.

82.     In the verification and service request calls between the parties, BCBSOK authorized treatment by Asana and therefore promised to pay Asana the Anthem Rates for services provided to the BCBSOK Patients.

83.     For each Pre-Service Request Asana sought from BCBSOK, it also received a reference or authorization number from BCBSOK, which indicated that BCBSOK agreed the services were medically necessary, that it would pay for the services, and that a contract for that payment had formed between Asana and BCBSOK.

84.     Asana also made continuing authorization calls for all services it provided to confirm that BCBSOK would cover the provided services.

85.     Asana reasonably relied on BCBSOK's representations that the BCBSOK Patients' claims would be paid. Based on that reliance, Asana provided the agreed-upon, medically necessary services to the BCBSOK Patients.

86.     The following paragraphs include representative examples of relevant claims, including call information as to BCBSOK approval for treatment payment of Asana's claims for treatment of the Asana Patients.

### a. Patient ADG

87.     Asana conducted a VOB call for Patient ADG on August 14, 2023.

88.     Asana spoke with a BCBSOK representative with initials AVR and received Refence Number 55197813630.

89.     Asana confirmed that the patient had a BCBSOK health plan, Blue Advantage PPO, effective August 1, 2023.

90. Asana confirmed with BCBSOK that the patient's plan provided coverage for substance use disorder treatment with no geographic restrictions on where those services were performed.

91. Asana confirmed that BCBSOK would reimburse Asana for its treatment services at the Anthem Rates.

92. The patient received treatment from August 15, 2023 through September 15, 2023, consisting of detox services, residential, and PHP.

93. Asana provided authorization numbers U23228BETE for detox services, U23242AYEQ for residential treatment, and U23255BZTD for PHP, all as required.

94. Although BCBSOK did pay some claims, it has failed to pay Asana for residential services rendered between September 4, 2023 through September 10, 2023 totaling not less than $28,000.

95. BCBSBOK contends that it has denied Asana's claims on the grounds that it required medical records for the patient. However, Asana provided the patient's full medical records on December 29, 2023, January 3, 2024, March 7, 2024, and July 10, 2024.

**b. Patient AC**

96. Asana conducted a VOB call for Patient AC on August 1, 2023.

97. Asana spoke with a BCBSOK representative with initials AVR and received Refence Number 55009273386.

98. Asana confirmed that the patient had a BCBSOK health plan, Blue Advantage PPO, effective not later than August 1, 2023.

99. Asana confirmed with BCBSOK that the patient's plan provided coverage for substance use disorder treatment with no geographic restrictions on where those services were performed.

100. Asana confirmed that BCBSOK would reimburse Asana for its treatment services at the Anthem Rates.

101. The patient received treatment from August 10, 2023 through September 17, 2023, consisting of residential and PHP.

102. Asana provided authorization numbers U232226ANYR for residential treatment and U23251BAKT for PHP, all as required.

103. Although BCBSOK did pay some claims, it has failed to pay Asana for residential services rendered between September 4, 2023 through September 8, 2023 totaling not less than $20,000.

104. BCBSBOK contends that it has denied Asana's claims on the grounds that it required medical records for the patient. However, Asana provided the patient's full medical records on December 27, 2023, May 30, 2024, and July 10, 2024.

### c. Patient RB

105. Asana conducted a VOB call for Patient RB on August 1, 2023.

106. Asana spoke with a BCBSOK representative with initials AVR and received Refence Number 54843413529.

107. Asana confirmed that the patient had a BCBSOK health plan, Blue Advantage PPO, effective not later than August 1, 2023.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS     PAGE **31** OF **43**

108. Asana confirmed with BCBSOK that the patient's plan provided coverage for substance use disorder treatment with no geographic restrictions on where those services were performed.

109. Asana confirmed that BCBSOK would reimburse Asana for its treatment services at the Anthem Rate.

110. The patient received treatment from August 12, 2023 through November 13, 2023, consisting of detox services, residential, PHP, and IOP.

111. Asana provided authorization numbers: (i) U23226AONE for detox, (ii) U23243CHUX for residential treatment, and (iii) U23256AZQM for PHP, and (iv) U23275AKWV for IOP, all as required.

112. Although BCBSOK did pay some claims, it has failed to pay Asana for residential services rendered between October 30, 2023 through November 3, 2023 totaling not less than $14,975.

113. BCBSBOK contends that it has denied Asana's claims on the grounds that it required medical records for the patient. However, Asana provided the patient's full medical records on March 8, 2024, April 18, 2024, November 2, 2024, January 6, 2025, April 22, 2025, and May 28, 2025.

### d. Patient BI

114. Asana conducted a VOB call for Patient BI on September 1, 2023.

115. Asana spoke with a BCBSOK representative with initials AVR and received Refence Number 55722500908.

116. Asana confirmed that the patient had a BCBSOK health plan, Blue Advantage PPO, effective not later than September 1, 2023.

117. Asana confirmed with BCBSOK that the patient's plan provided coverage for substance use disorder treatment with no geographic restrictions on where those services were performed.

118. Asana confirmed that BCBSOK would reimburse Asana for its treatment services at the Anthem Rate.

119. The patient received treatment from September 5, 2023 through December 7, 2023, consisting of detox services, residential, PHP, and IOP.

120. Asana provided authorization numbers: (i) U23249AIKA for detox, (ii) U23250CVZR for residential treatment, and (iii) U23270ANOR for PHP, and (iv) U23289ATNQ for IOP, all as required.

121. Although BCBSOK did pay some claims, it has failed to pay Asana for all services rendered resulting in a substantial unpaid balance.

122. BCBSBOK contends that it has denied Asana's claims on the grounds that it required medical records for the patient. However, Asana provided the patient's full medical records on December 28, 2023, January 9, 2024, March 7, 2024, March 8, 2024, June 21, 2024, July 25, 2024, Augst 27, 2024, September 24, 2024, October 10, 2024, November 13, 2024, and April 18, 2025.

123. On May 20, 2025, Asana was advised that the BI's medical records were received and forwarded to the members benefit office on April 20, 2025 for review.

## IV. Causes of Action

### COUNT I: Breach of Written Contract (By Assignment)[2]

89. Asana realleges and incorporates by reference the above allegations as if fully set forth herein.

90. Asana brings this Counterclaim under California law. The services provided to the BCBSOK Patients were to be and were in fact performed in California, as it agreed to do by participating in the Association and Blue Card Program, and where BCBSOK agreed to pay Asana as indicated by issuing authorization numbers.

91. This Counterclaim is pled in the alternative, as permitted under Fed. R. Civ. P. 8(d)(3).

92. A breach of contract has four elements: (1) the existence of the contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damage to the plaintiff caused by the defendant's breach.

93. Each element for a cause of action for breach of contract under California law is satisfied.

94. First, there are insurance contracts between the BCBSOK Patients and BCBSOK. Pursuant to each of these contracts, BCBSOK agreed to provide coverage and pay for medically necessary services.

95. Second, the patients performed by making all required premium payments to BCBSOK. Further, Asana provided treatment to the BCBSOK Patients under terms that were

---

[2] Asana understands that all plans at issue are non-ERISA plans. To the extent additional facts come to light suggesting otherwise, Plaintiffs reserve the right to amend to assert ERISA claims.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS        PAGE **34** OF **43**

authorized by BCBSOK, at a rate agreed to between Asana and BCBSOK. At no time did the patients miss premium payments or breach the terms of their insurance contracts with BCBSOK. After rendering the services, Asana and its agents, including Hansei, properly and timely invoiced BCBSOK for all days and services referenced above, using the appropriate authorization numbers and billing codes.

96.    Third, BCBSOK has breached its contracts with Asana by: (1) not providing coverage for the medically necessary services, and (2) failing to pay Asana at the Anthem Rates.

97.    Fourth, Asana (and the BCBSOK Patients) have suffered damages as a direct consequence of BCBSOK's breach.

98.    Asana obtained written assignments from each of the BCBSOK Patients, by which the BCBOK Patients intended to, and did, assign to Asana all rights to payment of claims, and all rights and causes of action against BCBSOK in connection with such claims.

99.    The assignments executed by each BCBSOK Patient state:

> It is my intent to grant the Facility all rights, power, authority, and standing – to the maximum extent possible and conceivable – to pursue amounts owed under my health insurance plan and/or to pursue vindication of my rights under my health insurance plan or federal or state law. Such pursuits include without limitation, legal action, in the same fashion as if I myself were acting. Any ambiguity in this transfer of rights and designation of authority should be construed in favor of granting the Facility the rights, powers, authority, or standing that it seeks to exercise or rely upon.
>
> To that end, I appoint the Facility my Attorney-in-Fact (Section A below). To the extent that designation is found to be invalid or the designation is found insufficient for the purpose that the Facility seeks to use it for, I designate the Facility my Authorized Representative (Section B below). To the extent that designation is found invalid or is not sufficient for the purpose that the Facility seeks to use it for, I assign my benefits and rights under my health insurance plan to the Facility (Section C below). The Facility, at its sole discretion, may elect to exercise one, two, or all three of these appointments, designations or assignments simultaneously. The

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS    PAGE **35** OF **43**

> Facility, at its sole discretion, may decline to exercise one or more of these appointments, designations, or assignments.

100. The right to payment includes the right to sue for payment.

101. Moreover, BCBSOK confirmed, represented, and promised Asana, through the required verification of benefits and the Pre-Service Request process, that: (1) each of the BCBSOK Patients was covered by BCBSOK health plans; (2) the premiums were paid; (3) the plans were effective; and (4) Asana, as assignee of the insureds, would be paid for treating the BCBSOK Patients.

102. BCBSOK knew that Asana was treating and providing services to the BCBSOK Patients and would continue to do so based on BCBSOK's authorizations and verification of benefits. BCBSOK was advised and fully aware of the Anthem Rates that it was required to pay, and in some instances did pay, for Asana's treatment of BCBSOK Patients for each level of care.

103. BCBSOK knew of the BCBSOK Patients assignment of benefits to Asana. For the claims at issue, Asana submitted invoices to BCBSOK on standardized billing forms known in the healthcare industry as UB-04 forms. Box 53 of the UB-04 form includes an option to indicate whether the patient has assigned benefits to Asana. For every invoice, Asana checked Box 53 because Asana was the assignee of the patient. BCBSOK has never raised an objection to the assignments.

104. Asana is an expressed and intended third-party beneficiary of the BCBSOK health plans issued to the BCBSOK Patients and is entitled to recover on that basis.

105. BCBSOK and the BCBSOK Patients intended that Asana directly benefit from the health plans and the plans indicate the intent to benefit Asana by providing for payment to Asana for the treatment and services provided to the BCBSOK Patients.

106. BCBSOK's intent to benefit Asana, by the terms of the health plans at issue, is further evidenced by BCBSOK's conduct. For years, BCBSOK consistently made payments to Asana for the medically necessary treatment and services rendered to its insureds. This conduct continued until on or around November 2021 when BCBSOK began arbitrarily denying all or portions of Asana's claims for treating BCBSOK Patients.

107. Asana provided covered, verified, pre-authorized, and medically necessary treatment to BCBSOK Patients at great expense to Asana. After providing services, Asana submitted its claims for payment, requesting compensation for the treatment and services provided to the BCBSOK Patients.

108. Asana and the BCBSOK Patients have performed all, or substantially all, of the requirements under the health plans, except as excused by BCBSOK's material breaches.

109. BCBSOK has breached the health plans by the conduct alleged herein, including withholding proper claim payments from Asana and filing a baseless lawsuit against Asana to avoid its contractual obligations.

110. As a direct and proximate result of BCBSOK's breach, Asana (and the BCBSOK Patients) have suffered, and will continue to suffer in the future, economic loss, including the benefits owed under the health plans, interruption in Asana's business, lost business opportunities, lost profits, and other general, incidental, and consequential damages, in amounts to be proved at trial.

### COUNT II: Breach of Oral Contract

111. Asana realleges and incorporates by reference the above allegations as if fully set forth herein.

ASANA DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, & COUNTERCLAIMS        PAGE **37** OF **43**

112.    This cause of action is pled in the alternative as permitted under Fed R. Civ. P. 8(d)(3).

113.    An action for breach of an oral contract includes the same elements as those for an express contract. Each of those elements is satisfied for the reasons described above.

114.    This cause of action is based on the telephone communications in which BCBSOK agreed to pay for the services Asana rendered to BCBSOK Patients at the Anthem Rates. These communications set forth all the essential elements for a contract.

115.    Asana fully and substantially complied with all their obligations under the oral contracts between Asana and BCBSOK.

116.    Asana provided treatment to the BCBSOK Patients under terms that were authorized by BCBSOK and at the Anthem Rates as agreed to between Asana and BCBSOK and described in the Network Agreement and confirmed on verification and authorization calls.

117.    At no time did Asana breach the terms of their oral contract with BCBSOK for services provided to the BCBSOK Patients.

118.    After rendering the services, Asana properly and timely invoiced BCBSOK for all days and services referenced above, using the appropriate authorization numbers and billing codes.

119.    BCBSOK has breached their bargained-for agreements with Asana by not paying the rates for the authorized services set forth in the Network Agreement. BCBSOK has paid nothing at all for the claims at issue in this suit.

120.    The breach is clear. BCBSOK has not paid Asana for all services provided by Asana to BCBSOK Patients for the claims at issue in this Counterclaim.

121. As a direct and proximate result of BCBSOK's breach, Asana has sustained damages of not less than $1,589,800 for unpaid services, plus fees and interest, which amount Asana is entitled to have proven at trial.

### COUNT III: Breach of Implied Contract

122. Asana realleges and incorporates by reference the above allegations as if fully set forth herein.

123. This cause of action is pled in the alternative as permitted under Fed R. Civ. P. 8(d)(3).

124. This cause of action is brought pursuant to the law of California. The implied contracts between Asana and BCBSOK were to be and were in fact performed in California, where Asana provided services to BCBSOK Patients as it agreed to do by participating in the Association and Blue Card Program, and where BCBSOK agreed to send payment to Asana as indicated by issuing authorization numbers.

125. A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct. Thus, should the ultimate trier of fact find that the numerous conversations between Asana and BCBSOK described above do not constitute oral contracts, Asana asserts that they are based on industry practice, and the prior course of dealing between Asana and BCBSOK under which BCBSOK paid Asana's charges for services for several years, starting at least in 2020.

126. The course of dealing, followed in each of the claims made for series Asana provided to the BCSOK Patients, was that an Asana employee and/or agent contacted BCBSOK's agent in an initial VOB call. Dring that call Asana and BCBSOK discussed the anticipated

treatment and the payment Asana expected to receive for providing treatment as billed charges or at the Anthem Rate. Asana understood that it had the duty to render treatment services to the BCBSOK Patients, to obtain authorizations to provide services when required, to provide BCBSOK with medical and treatment information when required, and to do so in accordance with all relevant professional standards — all of which Asana did.

127.    After years of properly paying on claims to other BCBSOK insureds based on rates set forth in the Network Agreement, BCBSOK stopped paying the disputed claims at issue in this suit relating to Asana's provision of covered services to the BCBSOK Patients.

128.    As such, the regular course of conduct clearly created implied contracts each time Asana followed well-established procedures and provided services to BCBSOK Patients.

129.    Each authorization created a new implied contract between Asana and BCBSOK. Based on each authorization, Asana had an expectation of the services that it was to provide and the payment that it was to receive based on the parties' prior course of dealing.

130.    All services provided to the BCBSOK Patients were authorized by BCBSOK and invoiced to BCBSOK accordingly.

131.    BCBSOK has not paid all of the monies owed for services that were provided by Asana to BCBSOK Patients for the claims at issue in this Counterclaim.

132.    As a direct and proximate result of BCBSOK's breach, Asana has sustained damages of not less than $1,589,800 for unpaid services, plus fees and interest, which amount Asana is entitled to have proven at trial.

### COUNT IV: Promissory Estoppel/Unjust Enrichment/Quantum Meruit

133.    Asana realleges and incorporates by reference the above allegations as if fully set forth herein.

134. This cause of action is brought pursuant to the law of California. The promises between Asana and BCBSOK were to be and were in fact performed in California, where Asana provided services to BCBSOK Patients as it agreed to do by participating in the Association and Blue Card Program, and where BCBSOK agreed to send payment to Asana as indicated by issuing authorization numbers.

135. This cause of action is pled in the alternative as permitted under Fed. R. Civ. Pro. 8(d)(3).

136. During the VOB and Pre-Service Request calls, and any subsequent authorization calls, Asana requested, and BCBSOK, on behalf of the BCBSOK Patients, promised to pay the Anthem Rates for services rendered to the BCBSOK Patients. That promise was unambiguous. But for the clear an unambiguous promise to pay, Asana would not have admitted the BCBSOK Patients for treatment.

137. Asana did not contact BCBSOK merely to discuss policy language. Rather, Asana contacted BCBSOK to obtain BCBSOK's promise, on behalf of the BCBSOK Patients, that it would pay Asana for services rendered to the BCBSOK Patients.

138. It is this specific promise to pay between Asana and BCBSOK, acting on behalf of the BCBSOK Patients, that forms the basis of this promissory estoppel claim.

139. During the calls between the parties, BCBSOK, on behalf of the BCBCOK Patients, promised to pay Asana an understood, finite rate.

140. This specific promise satisfies the first element of Asana's promissory estoppel claim.

141. It was reasonable for Asana to rely upon BCBSOK's promises to pay because it is common in the healthcare industry for insurers to promise providers to cover services at specified

rates and then make payments based on those promises—particularly given the parties prior course of dealing in which BCBSOK did pay for Asana's provision of covered services to BCBSOK insureds based on the Anthem Rates. Asana did rely on those promises and provided authorized treatment services.

142.    Detriment and actual reliance are clear. Asana was not paid for the claims at issue here for treatment it provided to the BCBSOK Patients. In addition, Asana decided to treat the BCBSOK Patients—and incurred the costs associated with that treatment—based on BCBSOK's promises to pay. These harms can be avoided only by the enforcement of the promise.

143.    BCBSOK promised to pay Asana at the Anthem Rate for services but has not paid on its promises for the disputed claims at issue. BCBSOK had the obligation to pay for the services at the promised rate. This is the obligation that BCBSOK assumed and that it has not performed.

144.    Enforcement of BCBSOK's promises is necessary in the interest of justice to, among other things, (i) prevent BCBSOK from avoiding their obligations to pay for medically necessary treatment that they expressly authorized and for which they promised payment to Asana; (2) provide proper payment to Asana for their provision of expensive treatment services to the BCBSOK Patients; (3) and protect those struggling with substance use disorders who are being targeted and discriminated against by insurers due to the high cost of substance use disorder treatment.

145.    Asana has suffered damages as a direct consequence of BCBSOK's breach. Damages equal the value of services provided to BCBSOK Patients at the Anthem Rate—$1,589,800 —as provided in Asana's invoices, plus fees and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaims-Plaintiff Asana prays for judgment against the Counterclaim-Defendant BCBSOK as follows:

1.      An award for compensatory, general, and special damages in amounts to be proven at trial;

2.      For costs incurred in connection with this lawsuit;

3.      For punitive damages;

4.      For prejudgment interest;

5.      For attorneys' fees;

6.      For statutory relief;

7.      For equitable, injunctive, and declaratory relief; and

8.      For all other relief the Court deems just and proper.

## Demand for Trial by Jury

Counterclaims-Plaintiff respectfully demands a trial by jury on all issues and claims so triable.

LAWRENCE BARTELS LLP

*/s/ David T. Bartels*

DAVID T. BARTELS
*Attorney for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathan Hagen*

/s/ *Matt M. Lavin*

MATTHEW M. LAVIN
*Attorney for Defendants Asana Recovery, Inc., Beachfront Sober Living, Inc., Asana Buy Sell LLC, Mark Shandrow, Adam Shandrow, and Jonathan Hagen*