STEVEN J. COLOGNE (Bar No. 118534)
scologne@higgslaw.com
KYLE W. NAGEOTTE (Bar No. 285599)
nageottek@higgslaw.com
JAKE D. SESTI (Bar No. 339005)
sestij@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:   (619) 236-1551
Facsimile:   (619) 696-1410

Attorneys for Defendant CHRISTIAN
SMALL. M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, a division of HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company,<br><br>Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ASANA BUY SELL LLC, MARK SHANDROW, ADAM SHANDROW, JONATHAN HAGEN, CHRISTIAN SMALL, M.D., JOHN DOES 1-50, AND ABC CORPS, 1-50,<br><br>Defendants. | Case No. 25-cv-00735-DOC-DFM<br><br>**DEFENDANT CHRISTIAN SMALL, M.D.'S REPLY TO DEFENDANT ASANA RECOVERY, INC.'S OPPOSITION TO DR. SMALL'S MOTION FOR LEAVE TO FILE CROSSCLAIM**<br><br>Date: April 13, 2026<br>Time: 8:30 a.m.<br>Dept: 10 A 10th Floor<br>Judge:  David O. Carter<br>Trial Date: November 3, 2026 |

Defendant Christian Small, M.D. ("Dr. Small") respectfully submits this Reply to Defendant Asana Recovery, Inc.'s ("Asana") Opposition to Dr. Small's Motion for Leave to File a Crossclaim against Asana.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

13553883.2                                        i

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND IN RESPONSE TO ASANA'S OPPOSITION ................................................................. 2

    A.    Asana Denies the *Only* Allegations in Plaintiff's Complaint Regarding Dr. Small's Inclusion on its Claim Forms ......................................................... 2

    B.    Asana Moves to Dismiss the Complaint Asserting Plaintiff's Allegations are False, Conclusory, and Lack Merit ................................................................. 3

III.    ARGUMENT .................................................................................................................. 4

    A.    Asana's Actions Prevented Dr. Small From Discovering the Facts Underlying His Crossclaim ............................................................................. 4

    B.    The Diligence Inquiry Focuses on Sufficient and Verifiable Information, Not Unsupported Allegations (That Asana Certified Were False) ................. 5

    C.    Asana's Cases Do Not Support its Arguments ............................................. 10

    D.    Prejudice and Case Management are Proper Factors to Consider Under Rule 16    13

IV.    ASANA IGNORES RULE 15 ....................................................................................... 15

V.    CONCLUSION ............................................................................................................. 16

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

13553883.2

ii

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

# TABLE OF AUTHORITIES

**Cases**

*Branch Banking & Tr. Co. v. D.M.S.I, LLC*
  871 F.3d (9th Cir. 2017) ...................................................................................12, 13

*Crawford v. Delta Sci. Corp.*
  2011 WL 1584302 at *1 (C.D. Cal. Apr. 25, 2011) .......................................7, 8, 9

*DMS Drywall & Interior Sys., Inc. v. Patriot Constr.*
  2024 WL 2176408, at * 1 (N.D. Cal. May 13, 2024)............................................17

*Entangled Media, LLC v. Dropbox Inc.*
  348 F.R.D. (N.D. Cal. 2025) ...................................................................................6

*Farnan v. Capistrano Unified School Dist.*
  654 F.3d (9th Cir. 2011) ........................................................................................14

*Ginger Root Off. Assocs., LLC v. Advanced Packaging & Prods. Co.*
  2008 WL 11338229, at *4 (C.D. Cal. Dec. 9, 2008)................................................6

*Grasty v. San Juan Unified Sch. Dist.*
  2020 WL 605329, at *8 (E.D. Cal. Feb. 7, 2020) ...................................................7

*Johnson v. Buckley*
  356 F.3d (9th Cir. 2004) ........................................................................................17

*Johnson v. Mammoth Recreations, Inc.*
  975 F.2d (9th Cir. 1992) ...................................................................................13, 15

*Kamal v. Eden Creamery, LLC*
  88 F.4th 1268 (9th Cir. 2023) ...........................................................................11, 13

*Kroeger v. Vertex Aerospace LLC*
  2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020).............................................17

*Learjet, Inc v. Oneok, Inc.*
  715 F.3d (9th Cir. 2013) ...................................................................................12, 13

*Owens v. Kaiser Found. Health Plan, Inc.*
  244 F.3d (9th Cir. 2001) ........................................................................................17

*Separation Design Group IP v. Inogen, Inc.*
  (C.D. Cal. Oct. 21, 2016)................................................................................6, 8, 9

**Statutes**

Fed. R. Civ. P. 11...............................................................................................passim

Fed. R. Civ. P. 15...............................................................................................passim

Fed. R. Civ. P. 16...............................................................................................passim

Higgs Fletcher &
Mack LLP
Attorneys at Law
San Diego

13553883.2                                    iii

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

## I.      **INTRODUCTION**

In response to Plaintiff's allegations that Dr. Small personally certified Asana's claim forms and served as the attending or supervising physician according to those claim forms, Asana **denied** those allegations in its Answer to Plaintiff's Complaint.  Asana then asserted a Counterclaim against Plaintiff and filed a Motion to Dismiss the Complaint further denying and refuting allegations surrounding Asana's billing practices, including those relating to Dr. Small, arguing the Complaint is "nothing more than an orchestrated scheme on the part of [Plaintiff] to discourage out-of-state providers like Asana from treating Oklahoma residents" in need of care.

Despite the foregoing, Asana now claims Dr. Small's Motion for Leave to File the Crossclaim ("Motion") should be denied because Dr. Small was not diligent in bringing his Crossclaim based on the aforementioned allegations in Plaintiff's Complaint that Asana **denied** were true.  Asana's position is inconsistent with its own prior actions and representations to Dr. Small, Plaintiff, and the Court.

In analyzing diligence under Federal Rule of Civil Procedure 16, the focus is on the actions the moving party took to obtain sufficient and verifiable information to determine whether to plead claims against another party.  And then, once the moving party had sufficient information or an evidentiary basis to assert those claims, if the moving party timely requested leave to bring the amended pleading, or here, the Crossclaim.

Further, under Rule 11, denials of factual contentions must be warranted by the evidence.  Indeed, Rule 11 prohibits a party from filing a pleading without sufficient or verifiable information to support the statements or allegations in the pleading.  By its Opposition, Asana admits to violating Rule 11 by claiming the allegations in Plaintiff's Complaint surrounding Asana's practice (whether correct or not) of listing Dr. Small as the attending and supervising physician and listing his NPI on all claim forms is in fact true – while months ago certifying that information

was false.  Asana also suggests Dr. Small should have violated Rule 11 too.  Asana argues Dr. Small should have reactively filed a Crossclaim against Asana the moment Plaintiff filed the Complaint and asserted allegations that Asana denied were false based on evidence (the claim forms) that were in the sole possession and control of Plaintiff and Asana.

Instead of ignoring and violating Rule 11, Dr. Small did exactly what the law requires: he propounded comprehensive written discovery to Plaintiff to obtain information relating to Plaintiff's claims and Asana's denials of those claims.  Dr. Small then diligently reviewed Plaintiff's 30,000 plus page rolling production.  Upon learning that Asana did in fact list Dr. Small as the attending and supervising physician on claim forms and was, in fact, listing his NPI on these claim forms too, Dr. Small immediately commenced the meet and confer and prepared the Crossclaim.

In sum, Asana has not submitted any evidence showing Dr. Small knew or should have known the facts underlying the Crossclaim sooner.  Asana also ignores its own conduct prevented Dr. Small from bringing the Crossclaim sooner.  Asana then relies on cases that do not support its Opposition and only prove that Dr. Small was diligent here.  For the reasons set forth herein, and in the Motion, this Court should grant leave for Dr. Small to assert his Crossclaim against Asana.  Allowing the Crossclaim will promote judicial economy, it will not impact the current Scheduling Order dates, no party will suffer prejudice from the amendment, and Dr. Small has been diligent.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND IN RESPONSE TO ASANA'S OPPOSITION

### A.     Asana Denies the *Only* Allegations in Plaintiff's Complaint Regarding Dr. Small's Inclusion on its Claim Forms

Plaintiff alleges that Dr. Small "personally certified the claims on Asana's behalf" and "[a]ccording to claim submissions, Dr. Small served as the attending or supervising professional for essentially every patient at Asana."  ECF No. 1 at ¶ 24.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

13553883.2

2

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

In Asana's Answer and response to paragraph 24 of the Complaint, Asana stated: "Paragraph 24 asserts no allegations against Defendants, and therefore Defendants are not required to respond to same.  To the extent a response is required, **Defendants admit only that Dr. Small is the medical director at Asana**." ECF No. 53 at p. 4 of 43[1], ¶ 24, emphasis added.  Thus, by Asana's own response, it denied that the insurance claims it submitted to Plaintiff listed Dr. Small as the attending or supervising professional on all claim forms.

Similarly, in paragraph 75 of Plaintiff's Complaint, Plaintiff alleged that "[a]ccording to claim forms, [Dr. Small] certified that all treatments were true and correct, and either carried out by him or under his supervision."  ECF No. 1 at ¶ 75. In Asana's Answer and response to paragraph 75 of the Complaint, Asana stated: "Paragraph 75 asserts no allegations against Defendants, and therefore Defendants are not required to respond to same.  To the extent a response is required, **denied**." ECF No. 53 at p. 9 of 43, ¶ 75, emphasis added.  For a second time, Asana denied that its claim forms suggested or stated that Dr. Small certified all treatments were carried out by him or under his supervision.

**B.      Asana Moves to Dismiss the Complaint Asserting Plaintiff's Allegations are False, Conclusory, and Lack Merit**

In response to Plaintiff's Complaint, Asana filed a Motion to Dismiss asserting that Plaintiff's Complaint is "nothing more than an orchestrated scheme on the part of [Plaintiff] to discourage out-of-state providers like Asana from treating Oklahoma residents" in need of care.  ECF No. 28 at p. 8 of 35, lines 14-19.  As it pertains to Asana's billing practices, Asana argued "[a]t every turn, the Complaint fails to provide Defendants with sufficient information about the alleged misconduct to wage a defense other than stating a general denial. Despite attaching voluminous

---

[1] All page number citations refer to the ECF pagination for the respective document.

exhibits to the Complaint, BCBSOK fails to allege any specific facts relating to hundreds of patients and thousands of claims . . . .” *Id*. at p. 9 of 35, lines 18-28.

In the hundreds of pages of attachments to Plaintiff's Complaint, Plaintiff did not submit a single claim form submitted by Asana to Plaintiff showing Dr. Small as the attending/supervising physician, which forms the basis, in part, of Dr. Small's Crossclaim against Asana. *See* ECF No. 1-1 to 1-5. Indeed, Asana noted the same by arguing in its Motion to Dismiss “the exhibits themselves utterly fail to establish what BCBSOK purports them to be and, in many instances, directly refute BCBSOK's allegations.” ECF No. 28 at p. 10 of 35, lines 5-8.

For the remainder of Asana's lengthy Motion to Dismiss, it argued that all of Plaintiff's claims and allegations are conclusory, deficiently pled, provide no facts to support the claims, and should be dismissed. There is not a single mention of Dr. Small in Asana's motion and as to Asana's claim forms it submitted to Plaintiff, it asserts the “Complaint fails to specify in detail a single instance of how ***any defendant*** falsely certified a claim for payment to BCBSOK.” ECF No. 28 at p. 30 of 35, line 26, p. 31 of 35, lines 1-2.

## III. <u>ARGUMENT</u>

### A. **Asana's Actions Prevented Dr. Small From Discovering the Facts Underlying His Crossclaim**

Pursuant to Rule 11, by filing or serving a pleading, written motion, or other document to the Court or the parties, an attorney “certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,” that “**denials** of **factual contentions**” must be “warranted on the **evidence** . . . .” *Id*. at 11(b)(4). Violations of Rule 11 can subject the attorney and party to sanctions. *See id*. at 11(c). Also, Rule 8(b) provides various methods of answering a complaint, including admitting allegations, denying them, denying part of them and admitting the rest, or providing the party lacks information to admit or deny the allegations.

As discussed above, in response to Plaintiff's allegations in the Complaint that Asana's claim forms suggested and showed Dr. Small as the attending or supervising physician on claim forms, Asana **denied** those allegations.  ECF No. 53 at p. 4 of 43, ¶ 24, p. 9 of 43, ¶ 75.  By denying those factual contentions, Asana represented to Dr. Small (and this Court) that those denials were "warranted on the evidence" available to Asana.  Asana could have admitted those allegations or denied a portion and admitted the rest.  Instead, not only did Asana deny the allegations, the only portion it did admit was that Dr. Small is the medical director of Asana and then ignored or expressly denied the remainder.  *See* ECF No. 53 at p. 4 of 43, ¶ 24.

Despite the foregoing, Asana now supports its Opposition by referencing Plaintiff's allegations in the Complaint discussed above, asserting that Dr. Small should have known that Asana listed his name on all claim forms as the attending and supervising physician.  ECF No. 66 (Asana's Opposition to the Motion ["Opp."] at p. 9 of 19, lines 20-21, p. 10 of 19, lines 1-2.  If Asana truly believes that, it begs the question why did Asana deny those allegations in its Answer and then argue in its Motion to Dismiss that the Complaint "fails to specify a single instance of how *any defendant* falsely certified a claim for payment to BCBSOK"?  ECF No. 28 at p. 30 of 35, line 26, p. 31 of 35, lines 1-2.

Thus, by its Opposition and taking into account the facts above, (1) Asana admits to violating Rule 11 by denying factual contentions in its Answer that it now concedes were true; and (2) Asana concealed these facts from Dr. Small to prevent him from discovering them sooner while at the same time trying to settle this action with Plaintiff and before Dr. Small could bring this Crossclaim.

**B.    The Diligence Inquiry Focuses on Sufficient and Verifiable Information, Not Unsupported Allegations (That Asana Certified Were False)**

When analyzing diligence under Rule 16, diligence requires the moving party to seek leave for the amendment once it "had sufficient information to plead claims"

against another party.  *Ginger Root Off. Assocs., LLC v. Advanced Packaging & Prods. Co.*, 2008 WL 11338229, at \*4 (C.D. Cal. Dec. 9, 2008); *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 655 (N.D. Cal. 2025) ("Indeed, waiting to amend a complaint or answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them.").

For example, in *Separation Design Group IP v. Inogen, Inc.*, plaintiff brought a motion for leave after the scheduling order deadline to add trademark infringement claims against defendant's newly released product, the G4.  2016 WL 7610616, at \*1 (C.D. Cal. Oct. 21, 2016).  In opposing the motion, the defendant argued that plaintiff knew about the development and intended release of the G4 for two years and could have anticipated that the G4 could be an infringing product before the scheduling order was considered and adopted.  *Id*. at \*2.  The Court disagreed.

The Court reasoned although plaintiff was aware that the G4 was going to be released, that "was not a sufficient basis to accuse" it of infringement.  *Id*.  Also, plaintiff sought discovery on the G4, but defendant "did not produce the requested materials."  *Id*.  As a result, plaintiff had to wait until the G4 was in fact released in the market to analyze potential infringement, and then plaintiff promptly moved for leave to amend after its release.  *Id*.  The Court reasoned "[t]his diligence is required by Fed R. Civ. P. 11," and the Court found diligence was met under Rule 16.  *Id*.; *see Grasty v. San Juan Unified Sch. Dist.*, 2020 WL 605329, at \*8 (E.D. Cal. Feb. 7, 2020) (giving "credit" to the moving party for waiting until he had a factual basis to seek leave, but denying leave because the moving party first discovered "his factual basis for these claims" approximately eight months before seeking leave); *L.M.W. v. Arizona*, 2024 WL 380978, at \*5 (D. Ariz. Feb. 1, 2024) (acknowledging the import of Rule 11 when analyzing diligence under Rule 16, which should consider when the moving party had "evidence" to support the new claim).

/ / /

*Crawford v. Delta Sci. Corp.* is also guiding here. There, plaintiff brought a motion for leave to amend the complaint months after the scheduling order deadline. 2011 WL 1584302, at *1 (C.D. Cal. Apr. 25, 2011). There, the Court noted the case was complex and after the Court entered the scheduling order the plaintiff served a subpoena to identify other responsible parties. *Id*. at *2. About two months later, the parties agreed to produce documents on a "rolling basis," and one month later some documents were produced. *Id*. Plaintiff then waited another two months for additional discovery and production of documents when they filed the motion for leave to amend. *Id*.

In finding the plaintiff was diligent, the Court noted that the existence of a third-party complaint against other defendants did "not mean that Plaintiffs necessarily had grounds to name" these other defendants as direct defendants to their complaint "without conducting further discovery. Even if such grounds existed (at least sufficient to meet Plaintiffs' obligations under Rule 11), it cannot be said that Plaintiffs lacked diligence simply because they chose to seek further discovery before amending their complaint." *Id*. Thus, the Court found plaintiffs were diligent and good cause existed under Rule 16 to allow the amendment. *Id*. at *3.

Thus, in *Inogen* and *Crawford*, those plaintiffs sought discovery on the new product and discovery into whether the currently named parties were responsible for the plaintiff's harm. In *Inogen*, the defendant refused to provide information and in *Crawford*, a slow rolling production of documents were made. It was only when the plaintiff in *Inogen* learned of facts, evidence, and a sufficient basis that the new G4 product was potentially infringing did the diligence "clock" begin to run. The same applied in *Crawford* once the moving party learned further discovery would be futile.

Our facts closely resemble those in *Inogen* and *Crawford*. Here, without supporting evidence, and contrary to Dr. Small's Declaration, Asana argues that Dr. Small "already knew" all of Asana's claim forms listed him as the attending or

supervising physician.  Opp. at p. 11 of 19, lines 4-8.  Not only does the evidence show otherwise, consistent with Asana's Answer and Motion to Dismiss denying and refuting those allegations, the fact that Dr. Small was potentially "on notice" of these facts through Plaintiff's allegations is not the appropriate benchmark for analyzing diligence.  As in *Inogen* and *Crawford*, Rule 11 requires more before asserting a claim in Court.

Here, the appropriate measure of Dr. Small's diligence does not start after an unsupported **and contested** allegation in Plaintiff's Complaint wherein the only party with direct personal knowledge of the evidence and facts (Asana, who actually submitted and prepared the claim form) denied the truth of the allegations that now form the basis, in part, of Dr. Small's Crossclaim.  *See* Small Decl., ¶ 4 (Asana is wholly responsible for submitting claims to Plaintiff); *See generally* ECF No. 53 at pp. 16-43 at ¶¶ 1, 4, 7, 10-11, 21, 68, and 83 (Asana's counterclaim against Plaintiff confirming that Asana is wholly responsible for coordinating and billing insurance).

Noticeably absent from Asana's Opposition is a single reference to any evidence (aside from counsel's declaration discussing the meet and confer leading up to this Motion).  Similarly revealing, Asana did not submit a declaration from any person from Asana (i.e., manager, owner, officer) to support its now wholly contradictory position that Dr. Small knew all along that Asana was listing him (and including his NPI) as the supervising or attending physician on every claim form.  Asana does not submit a single document, email, text message, or otherwise showing that Asana informed Dr. Small of this information or that Dr. Small knew these facts earlier (or should have known them sooner).  Thus, the only evidence before the Court is Dr. Small's Declaration that shows he was not responsible for, or involved in, submitting claim forms to Plaintiff and did not know until mid-February 2026 that Asana billed Plaintiff by listing Dr. Small's NPI on claim forms and listing him as the attending or supervising physician for all services Asana billed for.  Small Decl., ¶¶ 4-7.

The entire premise of Asana's position is untenable.  Asana argues that to be diligent under Rule 16, the moment Plaintiff filed the Complaint, no matter how absurd or contested the allegations were, Dr. Small should have immediately sued Asana.  If Asana's position were accepted as true, parties would be forced to file lawsuits with blind ignorance on risk of losing the right to file that claim for a purported lack of diligence.  Put differently, Asana submits that Rule 11 should be ignored under these circumstances, and Dr. Small should have turned a blind eye to Asana's Answer, Asana's Motion to Dismiss, Asana's Counterclaim, and instead should have brought this Crossclaim before having any sufficient or verifiable information to support it.  That is not the law.

Instead, as explained in detail in Dr. Small's Motion, Dr. Small has been diligent in bringing this motion under Rule 16.  Dr. Small acted prudently by not reactively filing a crossclaim against Asana based on Plaintiff's unsupported and contested allegations.  Dr. Small then diligently commenced discovery, granted customary professional extensions on discovery responses, followed up diligently with Plaintiff on the status of its document production, and then reviewed its large rolling 30,000 plus page production.[2]  *See* Sesti Decl., ¶¶ 2-3.  Indeed, Asana does not dispute nor claim Dr. Small was not diligent in conducting discovery or reviewing Plaintiff's production.  When Dr. Small realized Asana's billing practices may be a violation of the Agreement or other rules, regulations, and laws, Dr. Small immediately commenced the meet and confer and preparation of the Crossclaim and this Motion.  *See* Motion at pp. 9-11.

---

[2] Dr. Small inadvertently stated Plaintiff produced approximately 23,000 pages of documents in early-to-mid December 2025.  Plaintiff produced in excess of 30,000 pages.  Sesti Reply Decl., ¶ 2.

### C.    Asana's Cases Do Not Support its Arguments

Asana relies on several cases that do not stand for the position Asana claims and instead support Dr. Small's Motion by showing the proper inquiry of diligence under Rule 16 is determining the timing of when the moving party had actual facts, evidence, or verifiable information to support the claim – not when the plaintiff made unsupported and refuted allegations in a complaint.

For example, Asana cites *Kamal v. Eden Creamery, LLC*, for the position that waiting for additional details before seeking leave to amend does not comport with Rule 16. Opp. at p. 13 of 19, lines 19-27. However, the district court there observed plaintiffs conclusively knew the identify and facts to seek leave to add Wells Enterprises as a defendant because the other defendants "disclosed the sale" to Wells Enterprises "in the parties' joint discovery plan" many months prior. 88 F.4th 1268, 1277 (9th Cir. 2023). The plaintiffs also "referred to the sale in their own filings." *Id.* In their motion, plaintiffs argued they needed additional details of the sale to allege successor liability and needed further discovery before bringing a fraud claim, but the district court noted the existing defendants produced "key documents" that plaintiff cited as the basis for these "new claims" five months before plaintiffs sought leave to amend. *Id.* at 1278.

Although the Ninth Circuit recognized that "document review takes time," plaintiffs delay in waiting five months to seek leave after finishing review of the "key documents" was unreasonable, in addition to the other circumstances. *Kamal*, 88 F.4th at 1278. For these reasons, the Court denied the motion for leave.

Asana also relies on *Learjet, Inc v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)* for the same proposition. There, a series of cases arose out of the energy crisis of 2000-2002. 715 F.3d 716, 724 (9th Cir. 2013). Beginning in 2005, plaintiffs brought various claims in state and federal court. The district court entered summary judgment in favor of defendants in 2011 finding that the state law

/ / /

claims were preempted by federal law. *Id*. at 724. Plaintiffs appealed, including appeals for denying motions to amend their complaints as untimely. *Id*.

On appeal, the Court noted that since at least 2007, based on the summary judgment rulings approximately two years before the plaintiffs sought leave, "they had known" the federal antitrust claims, which they sought leave to add, could be available claims. *Id*. at 737. Thus, plaintiffs failed to show any reason why they waited two years to add these new claims, so the motion was properly denied. That case is factually inapposite here.

Asana also relies on *Branch Banking & Tr. Co. v. D.M.S.I, LLC* for the same theory. There, the defendants filed an appeal of judgments against them, and the Court affirmed. 871 F.3d 751, 756 (9th Cir. 2017). In 2009 and 2010, defendants engaged in discussions with BB&T over a "work-out agreement" regarding restructuring a loan. *Id*. at 757. Nearly two years after the action was filed, defendants filed a second motion to again extend the deadline to amend pleadings seeking to add new defenses and a counterclaim against BB&T based on the 2009-2010 "work-out agreement." *Id*. Before the action was filed, there were related cases in 2004 and 2005 that dealt in part, with other "work-out agreements" between BB&T and defendants. Thus, the Court quickly affirmed the trial court's decision to deny leave because the defendants knew about these defenses and claims "long before the deadline to amend had passed." *Id*. at 765. Again, these facts do not apply here.

Finally, Asana relies on the heavily cited case of *Johnson v. Mammoth Recreations, Inc.* There, in December 1987, the plaintiff was injured while skiing at Mammoth Mountain. 975 F.2d 604, 606 (9th Cir. 1992). Plaintiff sued the ski lift manufacturer and Mammoth Recreations, who was allegedly a holding company for Mammoth Mountain Ski Area, who plaintiff did not name in the suit. *Id*. In Mammoth Recreation's answer, it denied having ownership of the ski resort. *Id*. Then, months later and within the deadline to amend, Mammoth Recreation's stated

Higgs Fletcher &
Mack LLP
Attorneys at Law
San Diego

13553883.2

11

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

in an interrogatory it did not own or operate the ski resort and further stated that Mammoth Mountain Ski Area was responsible for inspecting the faulty ski-lift. *Id*. at 606-607. Then, days later, Mammoth Recreation's counsel sent a letter to plaintiff that the proper defendant is Mammoth Mountain Ski Area, not Mammoth Recreations, and offered to substitute in the proper party. *Id* at 607.

Seven months later and four months after the scheduling order deadline, plaintiff sought leave to add Mammoth Mountain Ski Area as a defendant. *Id*. On appeal, the Ninth Circuit stated the plaintiff failed "to heed clear and repeated signals" that he had named the wrong defendant, and plaintiff failed to act for months after that. *Id*. at 609. Again, these facts bear very little resemblance to this litigation.

Indeed, all of these case (*Kamal*, *Learjet*, *Branch Banking*, and *Johnson*) are perfect examples of cases case that are distinguishable from the facts here. Unlike each of those cases, Asana cannot and did not point to a single piece of evidence that Dr. Small knew of the facts in support of his Crossclaim prior to February 2026, aside from the unverified allegations in Plaintiff's Complaint – allegations that Asana denied.

A party lacks diligence when they have actual knowledge or verified facts to support a claim and then are dilatory prior to requesting leave. Those circumstances are not present here – especially where Asana's actions prevented or mislead Dr. Small from learning the facts to support his Crossclaim against Asana sooner.

Further, Asana's additional argument that billing laws require Asana to list Dr. Small as the attending physician, thereby putting him on notice of his Crossclaim, is nonsensical. Opp. at p. 11 of 19, lines 9-28, p. 12 of 19, lines 1-4. Dr. Small is a doctor who performs medical services, he is not a billing provider or billing expert, and Asana was wholly responsible for billing claims to Plaintiff. *See* Small Decl., ¶ 4 (Asana is wholly responsible for submitting claims to Plaintiff); *See generally* ECF No. 53 at pp. 16-43 at ¶¶ 1, 4, 7, 10-11, 21, 68, and 83 (Asana's

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

13553883.2

12

DR. SMALL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSSCLAIM

counterclaim against Plaintiff confirming that Asana is wholly responsible for coordinating and billing insurance).  Asana's alleged compliance with billing practices and regulations did not put Dr. Small on actual or constructive notice of the facts underlying his Crossclaim.

### D.   Prejudice and Case Management are Proper Factors to Consider Under Rule 16

In *C.F. ex rel Farnan v. Capistrano Unified School Dist.*, the Ninth Circuit affirmed a ruling from this District and found the district court did not abuse its discretion in granting a motion to amend the scheduling order to permit an amended pleading.  654 F.3d 975, 984 (9th Cir. 2011).  The Court stated: "We also credit the district court's determination that the amendment created no meaningful case management issues and did not infringe on the efficient adjudication of the litigation . . . ." *Id*., internal quotations omitted.  In the following paragraph, the Ninth Circuit then analyzed prejudice showing that weighing prejudice is appropriate when determining a motion for leave under Rule 16.  *Id*. at 984-985.

Similarly, in *Velez v. Foresters Life Insurance and Annuity Company*, a 2025 case from this District, the district court "found good cause the modify the Scheduling Order" because "[t]hree principal observations support this conclusion," including "granting leave to amend will not cause prejudice."  2025 WL 3691474, at *3 (C.D. Cal. Dec. 11, 2025).  In the portion of the opinion analyzing prejudice, the Court also considered the impact of the amendment on case management.  *Id*. at *5 ("Thus, the Court finds that granting leave to amend the scheduling order here would not disrupt case management.").

Instead of acknowledging these cases, Asana accuses Dr. Small of "misleading" the Court by asserting that the Ninth Circuit and Courts in this District consider the impact to case management and prejudice under Rule 16.  Opp. at p. 8 of 19, fn. 5.  Ironically, Asana then cites to the Ninth Circuit's opinion in *Mammoth Recreations*, discussed above, and even quotes a portion of the opinion that provides

"the existence or degree of prejudice" to the parties "might supply additional reasons" when ruling on the motion.  Opp. at p. 9 of 19, lines 1-6, citing *Mammoth Recreations*, 975 F.2d at 609.

In response, Asana essentially ignores how the proposed Crossclaim would have no impact on case management.  Asana argues that it would require a modification of the deadline to amend pleadings, but that is all.  Opp. at p. 15 of 19, lines 20-25, p. 16 of 19, lines 1-4.  In essence, Asana agrees with Dr. Small that the Crossclaim would not require modification of the discovery and motion cutoff dates, expert exchanges, pretrial conferences, or anything else.  Dr. Small does not dispute that diligence is the focus of Rule 16, but the Ninth Circuit, and Courts in this District, properly consider other practical factors when analyzing a motion for leave under Rule 16, like case management and prejudice, and this Court should too.

In response to the prejudice factor, Asana claims it would be prejudiced because it has "conducted its entire litigation strategy" based on the understanding that only claims against Asana were Plaintiff's.  Opp. at p. 16 of 19, lines 14-22.  Asana also claims it is "on the brink" of settlement with Plaintiff, so it would be prejudiced by being kept in this case through a crossclaim.  The former argument is unsupported and contrary to Asana's other positions, and the latter is not how Court's analyze what constitutes prejudice, or not.

As to the former, that Asana has "conducted its entire litigation strategy" based on the current format of the case, Asana does not explain how.  Instead, Asana's "litigation strategy" has essentially been to do nothing and hope for an early resolution.  *See* ECF No. 66-1.  Asana proclaims it has been discussing a mediator and scheduling of mediation since November 2025, meaning settlement discussions must have commenced before then.  Asana admits in its Opposition that "discovery has not progressed further" because it has been engaged in "settlement communications" with Plaintiff.  Opp. at p. 16 of 19, lines 23-27.  Asana cannot

/ / /

now manufacture prejudice because it has sat idle in its own discovery with Plaintiff, Dr. Small, or third parties, in hopes of reaching a resolution with Plaintiff.

As for the latter argument, that Asana would be prejudiced by allowing the Crossclaim, prejudice focuses on whether the amended pleading arises out of the same set of facts as Plaintiff's claims such that the parties will not need to commence or defend against new or burdensome discovery. (*DMS Drywall & Interior Sys., Inc. v. Patriot Constr.*, 2024 WL 2176408, at * 1 (N.D. Cal. May 13, 2024). However, according to Asana's own arguments, the allegations relating to Asana's billing practices have been present since the start of this action. How Asana billed Plaintiff, the services Asana billed for, and the preparation and submission of the claim forms to Plaintiff are based on the same facts and issues that Asana will presumably rely on to defend Plaintiff's claims.

## IV.   ASANA IGNORES RULE 15

As explained in the Motion, because good cause exists to modify the Scheduling Order to allow for Dr. Small to assert the Crossclaim against Asana, the Court should then analyze whether leave to amend is appropriate under Rule 15.

Rule 15 "is to be applied with extreme liberality" (*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) and considers five factors: (1) bad faith; (2) undue delay; (3) prejudice; (4) futility of amendment; and (5) prior amendments. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

Aside from Asana's cursory and baseless prejudice argument, discussed above, Asana does not address the other Rule 15 factors. Thus, Asana has waived any argument that leave to amend is not warranted under Rule 15. *Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases and noting that failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver). However, even if Asana had responded or analyzed Rule 15 (it did not), leave to amend is warranted under Rule 15 for the reasons explained in the Motion. *See* Motion at pp. 15-18.

## V.     **CONCLUSION**

For the reasons set forth above, and in the Motion, this Court should grant leave for Dr. Small to assert his Crossclaim against Asana.  Allowing the Crossclaim will promote judicial economy, it will not impact the current Scheduling Order dates, and no party will suffer prejudice from the amendment.  Dr. Small diligently pursued this Crossclaim and all disputes and grievances amongst the Parties should be litigated at one time, in one judicial forum.

Dated: March 30, 2026                    HIGGS FLETCHER & MACK LLP


By:     _____/s/ Kyle W. Nageotte_____
STEVEN J. COLOGNE
KYLE W. NAGEOTTE
JAKE D. SESTI
Attorneys for Defendant CHRISTIAN SMALL. M.D.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Dr. Small certifies that this motion contains 5,168 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 30, 2026                HIGGS FLETCHER & MACK LLP


                                     By:      */s/ Kyle W. Nageotte*
                                            STEVEN J. COLOGNE
                                            KYLE W. NAGEOTTE
                                            JAKE D. SESTI
                                            Attorneys for Defendant CHRISTIAN
                                            SMALL. M.D.