STEVEN J. COLOGNE (SBN 118534)
scologne@higgslaw.com
KYLE W. NAGEOTTE (SBN 285599)
nageottek@higgslaw.com
JAKE D. SESTI (SBN 339005)
sestij@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Attorneys for Defendant Christian Small, M.D.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, a division of HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company,<br><br>Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ASANA BUY SELL LLC, MARK SHANDROW, ADAM SHANDROW, JONATHAN HAGEN, CHRISTIAN SMALL, M.D., JOHN DOES 1-50, AND ABC CORPS, 1-50,<br><br>Defendants. | Case No. 8:25-cv-735-DOC-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CHRISTIAN SMALL M.D.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>JUDGE: Hon. David O. Carter<br>ROOM: Courtroom 10A<br>DATE: September 28, 2026<br>TIME: 8:30 a.m. |
| CHRISTIAN SMALL, M.D.,<br><br>Cross-Complainant,<br><br>v.<br><br>ASANA RECOVERY, INC.,<br><br>Cross-Defendant. | |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .... 5

II. STATEMENT OF UNCONTROVERTED FACTS .... 6

A. Background on Dr. Small and Headlands .... 6

B. Headlands's Contract with Asana .... 6

C. Headlands's Payment Structure .... 7

III. LEGAL STANDARD .... 8

IV. DISCUSSION .... 9

A. Fraud (First Cause of Action) .... 9

1. *Baines v. Moores* .... 10

2. Application .... 11

3. Plaintiff's Counterarguments Are Meritless .... 12

B. Fraudulent Concealment (First Cause of Action) .... 12

C. Negligent Misrepresentation (Second Cause of Action) .... 13

D. Intentional Interference (Third Cause of Action) .... 14

E. Aiding and Abetting Tortious Conduct (Fourth Cause of Action) .... 15

F. Derivative Claims (Fifth, Sixth and Seventh Causes of Action) .... 16

V. CONCLUSION .... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Addisu v. Fred Meyer
198 F.3d 1130, 1134 (9th Cir. 2000) ........ 9

AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.
28 Cal.App.5th 923, 950 (2018) ........ 16

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 248 (1986) ........ 8

Berryman v. Merit Property Management, Inc.
152 Cal.App.4th 1544, 1557 (2007) ........ 16

Black v. Shearson, Hammill & Co.
266 Cal. App. 2d 362, 367 (Ct. App. 1968) ........ 9

Buckaloo v. Johnson
14 Cal. 3d 815, 827 (1975) ........ 14

California Physicians' Serv. v. Aoki Diabetes Rsch. Inst.
163 Cal. App. 4th 1506, 1511 (2008) ........ 13

Celotex Corp. v. Catress
477 U.S. 317, 322 (1986) ........ 8, 9

Claar v. Burlington N. R.R.
29 F.3d 499, 502-5 (9th Cir. 1994) ........ 9

Della Penna v. Toyota Motor Sales, U.S.A., Inc.
11 Cal. 4th 376, 393 (1995) ........ 15

Friedman v. Merck & Co., Inc.
107 Cal. App. 4th 454, 457-76 (2003) ........ 13

Hawran v. Hixson
209 Cal.App.4th 256, 277 (2012) ........ 16

Hernandez v. Spacelabs Med. Inc.
343 F.3d 1107, 1112 (9th Cir. 2003) ........ 8

IIG Wireless, Inc. v. Yi
22 Cal.App.5th 630, 654 (2018) ........ 15

Kamen v. Lindly
(2001) 94 Cal.App.4th 197, 207 ........ 12

McKell v. Washington Mutual, Inc.
142 Cal.App.4th 1457, 1490 (2006) ........ 16

O'Dell v. Lee
2016 WL 1626810, at *3 (C.D. Cal., Apr. 22, 2016) .... 14

Poppell v. City of San Diego
149 F.3d 951, 954 (9th Cir. 1998) .... 9

Robinson Helicopter Co. v. Dana Corp.
34 Cal. 4th 979, 990 (2004) .... 9

Shamblin v. Berge
166 Cal. App. 3d 118, 123 .... 14

Surrell v. Cal. Water Serv. Co.
518 F.3d 1097, 1103 (9th Cir. 2008) .... 9

Tatung Company, Ltd. v. Shu Tze Hsu
217 F. Supp. 3d 1138, 1179 (C.D. Cal. 2016) .... 9, 13

Tindell v. Murphy
22 Cal. App. 5th 1239, 1249 (2018) .... 12

UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.
117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) .... 13

Unterberger v. Red Bull N. Am., Inc.
162 Cal. App. 4th 414, 423, (2008) .... 10

Weissich v. Cnty. of Marin
224 Cal. App. 3d 1069, 1083 (1990) .... 13

Yanase v. Automobile Club of So. Cal.
212 Cal. App. 3d 468, 472–73 (1989) .... 13


**Rules**


Fed. R. Civ. P. 56 .... 5, 8

Defendant Christian Small, M.D. ("Dr. Small") respectfully submits this Memorandum in Support of his Motion for Summary Judgment on Blue Cross and Blue Shield of Oklahoma's ("BCBSOK") claims pursuant to Fed. R. Civ. P. 56.

## I. INTRODUCTION

Dr. Small is collateral damage in a larger feud between BCBSOK and Defendant ASANA RECOVERY, INC., BEACHFRONT SOBER LIVING, INC., ("Asana"), an addiction treatment center. By way of background, Dr. Small is the President of Christian R. Small, M.D., PC d/b/a Headlands Addiction Treatment Services ("Headlands"). Headlands provides in-person and telehealth services to addiction treatment centers. Headlands is paid a flat monthly fee and a flat per-appointment fee—Headlands does not make claims to insurance for those services nor does it review insurance claims made by the treatment centers because it assigns any right to payment for services rendered to the treatment centers. Headlands has no hand in how treatment centers market themselves, how they obtain patients, or how they bill patient care to insurance carriers.

Here, BCBSOK's Complaint centers around alleged conduct committed by Asana. That is, BCBSOK alleges Asana engaged in body brokering, kick backing, and fraudulent billing. However, Dr. Small and other individuals at Headlands provide uncontroverted testimony that they were unaware of any such conduct and certainly did not engage in it themselves. Because all of BCBSOK's claims are predicated on *actual knowledge* by Dr. Small of Asana's tortious conduct—and because Dr. Small undisputedly had *no knowledge* of that alleged conduct—all of BCBSOK's claims necessarily fail. In short, Dr. Small is a complete outsider to the alleged conduct at the heart of BCBSOK's allegations. Dr. Small respectfully asks the Court to grant summary judgment (or partial summary judgment) as to each of BCBSOK's claims, so he can return to the important task of providing patient care instead of defending against frivolous claims.

/ / /

## II. STATEMENT OF UNCONTROVERTED FACTS

### A. Background on Dr. Small and Headlands

Dr. Small is the president of Headlands. (SSUF 1.) Headlands was formed in 2019, with the goal of advancing treatment options for individuals with substance abuse disorders. (SSUF 2.) Since its founding, Headlands has employed around 190 individuals, including 7 physicians, 62 Nurse Practitioners, 28 Physician Assistants, and 25 triage nurses. (SSUF 3.)

Headlands contracts with addiction treatment facilities, whereby Headlands provides telehealth and in-person medical evaluations, supervision, and support. (SSUF 4.) In turn, the facilities provide in-person clinical services to individuals needing care. Through written contracts, the facilities are required to carry out Headlands' treatment plans for patients. (SSUF 5.) Through written contracts, the facilities are required to carry out Headlands' treatment plans for patients. (SSUF 6.) Headlands imposes strict guidelines for evaluating patients and developing treatment for them. (SSUF 7.)

### B. Headlands's Contract with Asana

One such facility with which Headlands contracted was Asana. (SSUF 8.) In the contract with Asana—which was typical of the contracts Headlands entered into with care facilities—a licensed healthcare professional from Headlands was to perform an initial evaluation of a potential patient of Asana. (SSUF 8.) That evaluation included a medical work up and a care plan. (SSUF 9.) Headlands was on-call 24/7 for any and all follow up appointments, as necessary. (SSUF 10.) Headlands also scheduled routine follow-up appointments with patients, and Headlands' physician and medical professionals supervised the medical care of those patients. (SSUF 11.)

Under the contract with Asana, Asana was solely responsible for providing adequate staffing at its facility. (SSUF 12.) Asana was also solely responsible for ensuring that its staff maintain up to date licensure and remain in good standing with

their respective State licensing boards. (SSUF 13.) Asana was solely responsible for ensuring that its staff meet qualifications and mandates set by third-party payors and consistent with its coverage requirements. (SSUF 14.) Asana was also solely responsible for all management and administrative functions relating to the operation of the facility. (SSUF 15.) Finally, Asana agreed to produce and submit to third-party payers adequate and accurate claims and billings consistent with the standards of the applicable third-party payer. (SSUF 16.) In fact, the agreement is clear that "in no event shall [Headlands or its providers] bill or collect payment from any payor or any patient for the services provided by this agreement." (SSUF 17.)

Each and every patient who treated at Asana and submitted claims to BCBSOK is accounted for in the medical records. (SSUF 18.) The medical records for each and every patient that treated at Asana and submitted claims to BCBSOK have been produced in this litigation. (SSUF 19.)

### C. Headlands's Payment Structure

Headlands was paid by Asana in two ways. (SSUF 20.) First, Headlands was paid a flat fee of $3,000 per month for medical director services. (SSUF 21.) Second, Headlands was paid $225.00 for each initial evaluation and $55.00 for each follow-up appointment. (SSUF 22.) The agreement between Asana and Headlands is clear that the per-month and per-appointment flat fees were the *only* ways Headlands would be paid and that any right to fees for billing entries generated by Headlands' providers were irrevocably transferred to Asana. (SSUF 23.)

Neither Dr. Small nor Headlands was involved in, or aware of, how Asana marketed or markets itself to the general public. (SSUF 24.) Neither Dr. Small nor Headlands was involved in or aware of any purported "kick back" scheme by Asana. (SSUF 25.) Neither Dr. Small nor Headlands was paid any such kick back. (SSUF 26.) Headlands was only ever paid by Asana the monthly fee and the per-appointment fee, both of which were established by contract at the outset of the relationship. (SSUF 26.)

Neither Dr. Small nor Headlands was involved in or aware of any purported "body brokering" by Asana. (SSUF 27.) Neither Dr. Small nor Headlands was involved in or aware of any purported waiving of "cost share" by Asana. (SSUF 28.) Neither Dr. Small nor Headlands was involved in signing up any patient for insurance with BCBSOK. (SSUF 29.) Neither Dr. Small nor Headlands was involved in or aware that Asana provided any "free" housing to patients as a "kick back." (SSUF 30.) Neither Dr. Small nor Headlands was involved in billing any patient care to BCBSOK. (SSUF 31.) Neither Dr. Small nor Headlands has ever submitted any invoices, bills, or payment requests to BCBSOK as it relates to any care at Asana. (SSUF 32.)

Dr. Small and Headlands did not review or approve insurance claims submitted by Asana to BCBSOK. (SSUF 33.) In fact, Dr. Small has never reviewed or approved of *any* communication or representation from Asana to BCBSOK. (SSUF 34.) To the extent Asana supposedly billed BCBSOK for services not performed, neither Dr. Small nor Headlands were aware of any such occurrence or practice. (SSUF 35.)

## III. LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catress, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). The moving party may satisfy its initial burden by

showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 323-25.

Unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Evidence that is merely colorable or not significantly probative does not present a genuine issue. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Nor can the non-moving party satisfy its burden through "mere speculation, intuition or guessing." Poppell v. City of San Diego, 149 F.3d 951, 954 (9th Cir. 1998). Unreliable expert testimony may be excluded from summary judgment consideration. Claar v. Burlington N. R.R., 29 F.3d 499, 502-5 (9th Cir. 1994).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. See Celotex Corp., 477 U.S. at 322-23.

## IV. DISCUSSION

Dr. Small is entitled to Summary Judgment as to BCBSOK's entire Complaint. At a minimum, Dr. Small is entitled to partial summary judgment of BCBSOK's individual claims.

### A. Fraud (First Cause of Action)

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." Tatung Company, Ltd. v. Shu Tze Hsu, 217 F. Supp. 3d 1138, 1179 (C.D. Cal. 2016) (citing Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004)).

The "scienter" requirement is so essential to a fraud claim that summary adjudication *must* be granted if the facts are undisputed that the defendant was not aware of and did not participate in the fraudulent scheme. Black v. Shearson, Hammill & Co., 266 Cal. App. 2d 362, 367 (Ct. App. 1968) ("Knowledge of the

falsity of such statements, or scienter, is an essential element of fraud."); see e.g. Unterberger v. Red Bull N. Am., Inc., 162 Cal. App. 4th 414, 423, (2008) ("To avoid summary adjudication of its fraud claim, Carma was required to produce evidence of . . . knowledge of falsity (or "scienter"), . . . . But Unterberger's declaration—the only evidence Carma produced—identifies no specific misrepresentations of fact, no evidence of knowing falsity of any particular statement, and no evidence of intent to defraud. Unterberger's declaration is merely a series of conclusory allegations without the specificity necessary to survive a demurrer, much less raise triable issues of fact.").

**1. *Baines v. Moores***

Bains v. Moores (2009) 172 Cal.App.4th 445 is particularly instructive. There, several shareholders brought fraud claims against a corporation and its former directors, alleging the shareholders were induced to hold stock by the corporation's fraudulent and misleading financial reports. Id. at 449. The directors brought motions for summary judgment, asserting they were not aware of any of the alleged fraudulent accounting practices until the board of directors conducted an internal investigation which revealed the practices. Id. at 450. The trial court granted the directors' motions on the basis that the directors "met their burden of proof to show they had no actual knowledge of the financial fraud committed by the employees and officers of [the corporation]." Id.

On appeal, the plaintiff shareholders pointed to four categories of evidence they believed created a triable issue of fact regarding the directors' knowledge of falsity of the financial reports: (1) the directors' "suspicious" sale of stock, (2) inconsistencies between information presented to the board and the public, (3) purported "red flag" evidence identified by plaintiffs' expert, and (4) a supposed "whistleblower" email from an employee to one of the directors. Id. at 455-456. The Court of Appeal rejected each argument.

/ / /

Regarding (1) the stock sales, the Court recognized that the sales were indeed "suspicious," but it concluded that merely "suspicious" stocks sales are insufficient to meet the high burden of scienter for a fraud claim. Id. at 460-465. Regarding (2) the "inconsistencies" between what was publicly disclosed and what was discussed at board meetings, the Court held that no information about the *specific fraud* was ever disclosed, and scienter could not otherwise be *inferred*. Id. at 466-467. Regarding (3) the supposed "red flags" identified by Plaintiff's expert, the Court held those "red flags" did not put the directors on notice of the *actual fraud* being committed by employees and were, at best, evidence the directors "were negligent in their oversight of the company." Id. at 468. Finally, regarding (4) the supposed "whistleblower" email, there was no evidence that the email was from a credible source or that it implicated the broad fraudulent scheme alleged in the complaint. Id. at 469. Accordingly, the plaintiffs' evidence—which merely relied on trying to *infer* scienter from circumstantial evidence—could not create a triable issue of fact on the scienter element, and the summary judgment in favor of the directors was affirmed. Id. at 470, 487.

**2. *Application***

Here, Dr. Small has submitted evidence confirming that neither he nor Headlands was involved in or aware of (1) Asana's marketing practices in Oklahoma (or anywhere else), (2) Asana's purported "kickback" scheme, (3) Asana's purported "body brokering," (4) Asana's practice of "waiving" of "cost shares" for patients, (5) Asana's practices for signing up patients for insurance, (6) Asana's practice of providing housing, and / or (7) any failure by Asana to carry out the care plans devised by Headlands. (SSUF 24-35.) Dr. Small has also submitted evidence that he and Headlands were not involved in submitting, reviewing or approving claims to BCBSOK for patient care at Asana. (SSUF 31-34.) In fact, the agreement between Asana and Headlands expressly assigns any right to submit

claims for treatment from Headlands providers *to Asana*. (SSUF 17.) In short, Dr. Small was not aware of *any* of the allegations of fraud in this case.

### 3. ***Plaintiff's Counterarguments Are Meritless***

BCBSOK has been evasive in discovery regarding how Dr. Small is liable for Asana's supposed fraud. However, BCBSOK seems to be relying on the fact that Dr. Small's name appears as "medical director" on Asana's claim forms. As Bains demonstrates, however, such far-afield and circumstantial evidence is insufficient, by itself, to create an inference of scienter. See also e.g. Kamen v. Lindly (2001) 94 Cal.App.4th 197, 207 (affirming sustaining of demurrer by corporate directors who merely signed corporate disclosure statements but who were not involved in the fraudulent accounting contained in those statements: "An outside director does not become liable for the contents of a group published document merely by signing it.") BCBSOK will also likely submit "expert evidence" that Dr. Small "should have known" Asana was supposedly committing fraud on BCBSOK. Again, Bains confirms that "red flag" evidence is, at best, evidence of a negligently run business *not* evidence of scienter for fraud. "Should have known" is *not* the standard for fraud. See e.g. Tindell v. Murphy, 22 Cal. App. 5th 1239, 1249 (2018) (affirming dismissal of fraud claim where the allegations were that the sellers of a home "should have known" the property contained defects).

In summary, it is undisputed that Dr. Small was not aware of any fraudulent billing scheme committed by Asana. BCBSOK argument that Dr. Small can be liable for *someone else's fraud* simply by implication based on his job title is not supported by the law.

## B. Fraudulent Concealment (First Cause of Action)

Plaintiff's first cause of action also alleges "fraudulent concealment." A claim for fraudulent concealment can only arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." Tatung Company, Ltd. v. Shu Tze Hsu, 217 F.Supp.3d 1138, 1180 (C.D. Cal. 2016).

This claim also fails. First, Dr. Small is not in a fiduciary relationship with BCBSOK; in fact, Dr. Small is not even in a *contractual* relationship with BCBSOK. Cf. California Physicians' Serv. v. Aoki Diabetes Rsch. Inst., 163 Cal. App. 4th 1506, 1511 (2008) (explaining that relationships between managed care organizations, like BCBSOK, and health providers are contractual). Second, it is undisputed that Dr. Small was not aware of any of the alleged fraudulent activity here and, therefore, could not have "exclusive knowledge" of it. (SSUF 24-30, 35.) Third, Dr. Small did not "actively conceal" any facts from BCBSOK; in fact, Dr. Small had nothing to do with Asana's submission to BCBSOK. (SSUF 16-17, 31-34.) Fourth, Dr. Small did not make *any* representation to BCBSOK with respect to the care provided at Asana, let alone one that suppresses some material facts. (SSUF 16-17, 31-34.) Accordingly, none of the special circumstances for a fraudulent concealment claim applies.

### C. Negligent Misrepresentation (Second Cause of Action)

The elements of negligent misrepresentation are similar to those of fraud but require a different level of *mens rea*: the plaintiff must prove the defendant made the representation without any reasonable ground for believing it to be true. Friedman v. Merck & Co., Inc., 107 Cal. App. 4th 454, 457-76 (2003). An implied representation cannot support a negligent misrepresentation claim. Weissich v. Cnty. of Marin, 224 Cal. App. 3d 1069, 1083 (1990) ("[A] cause of action for negligent misrepresentation requires a positive assertion and does not apply to implied representations.") (citing Yanase v. Automobile Club of So. Cal., 212 Cal. App. 3d 468, 472–73 (1989)); see also UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) ("[U]nlike fraud, negligent misrepresentation requires a positive assertion to show a misrepresentation of

material fact; an omission or an implied assertion will not suffice," O'Dell v. Lee, 2016 WL 1626810, at *3 (C.D. Cal., Apr. 22, 2016) (Carter, J.)

BCBSOK cannot sustain its negligent misrepresentation claim because Dr. Small simply did not make any representation to BCBSOK, let alone material *mis*representation. (SSUF 16-17, 30-34.) In fact, the facts are undisputed that Asana was solely responsible for submitting any claims to patients' insurance providers. (SSUF 16-17.) As such, BCBSOK's negligent misrepresentation claim fails as a matter of law, and Dr. Small is entitled to summary judgment.

**D. Intentional Interference (Third Cause of Action)**

BCBSOK alleges intentional interference with both economic and contractual relationships.

To prove intentional interference with an economic relationship, a plaintiff must prove: "(1) he had an economic relationship with a third party containing the probability of a future economic benefit; (2) defendant had knowledge of this relationship; (3) defendant committed intentional and unjustified acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damages." Shamblin v. Berge, 166 Cal. App. 3d 118, 123 (citing Buckaloo v. Johnson, 14 Cal. 3d 815, 827 (1975)).

To prove the tort of interference with a contractual relationship, a plaintiff must prove "(1) that he had a valid and existing contract with a third party; (2) defendant had knowledge of this contract; (3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the relationship and (5) resulting damages." Shamblin, 166 Cal. App. 3d at 122–23.

A plaintiff "seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove . . . that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct

that was wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995).

Here, BCBSOK's tortious interference claim is rooted entirely in its misguided contentions that: (1) any referral arrangements were actually kickbacks, which improperly interfered with BCBSOK's contracts with its patients; and (2) Asana routinely waived patient cost sharing, which improperly interfered with BCBSOK's cost-savings incentives to drive patients to in-network providers. (Compl., ¶¶ 96-97.)

Again, Dr. Small was not involved in either of those purported schemes, so BCBSOK cannot establish "actual interference." (SSUF 24-35.) Moreover, Dr. Small was not *even aware* of any individual patient's insurance provider, so BCBSOK cannot establish "actual knowledge" of a pre-existing relationship. (SSUF 31-34; Declaration of Christian Small M.D., ¶ 21 ["Neither I nor Headlands was involved in billing any patient care to BCBSOK. In fact, it is irrelevant to Headlands whether a patient is insured—or by what insurance company—because Headlands's operations are not funded by making insurance claims."].)

Accordingly, BCBSOK cannot establish the requisite elements of its claims, and Dr. Small is entitled to judgment as a matter of law on BCBSOK's third cause of action.

**E. Aiding and Abetting Tortious Conduct (Fourth Cause of Action)**

Under California law, "courts have long held that liability for aiding and abetting depends on proof the defendant had *actual knowledge of the specific primary wrong* the defendant substantially assisted." IIG Wireless, Inc. v. Yi, 22 Cal.App.5th 630, 654 (2018) (italics original). Thus, where the facts are undisputed that a defendant had no actual knowledge of the tortious conduct of the third-party and no specific intent to engage in that wrongful conduct himself, the claim cannot lie as a matter of law. Id.

/ / /

Here, again it is undisputed that Dr. Small was not aware of any of the supposedly wrongful conduct committed by Asana. (SSUF 24-35.) Therefore, Dr. Small cannot be liable for that wrongful conduct, as a matter of law, and he is entitled to summary judgment on BCBSOK's fourth cause of action for aiding and abetting tortious conduct.

**F. Derivative Claims (Fifth, Sixth and Seventh Causes of Action)**

Plaintiff's fifth cause of action (for violations of the Unfair Competition Law), sixth cause of action (for money had and received) and seventh cause of action (for unjust enrichment) are all derivative of the other claims—that is, they arise from the exact same allegations—and, therefore, they rise and fall with those claims. See e.g. AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal.App.5th 923, 950 (2018) (affirming summary judgment: "when the underlying legal claim fails, so too will a derivative UCL claim"); Hawran v. Hixson, 209 Cal.App.4th 256, 277 (2012) ("Hawran's UCL claim is derivative of Hawran's defamation cause of action, that is, it is based on the same assertedly false and defamatory press release statements, and likewise that cause of action stands or falls with that underlying claim."); Berryman v. Merit Property Management, Inc., 152 Cal.App.4th 1544, 1557 (2007) (holding equitable claims were duplicative of UCL claim and derivative of other failed allegations); McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1490 (2006) ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.")

Because Dr. Small is entitled to summary adjudication of the other claims, so too, is he entitled to summary adjudication of the derivative claims.

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For all of the foregoing reasons, Dr. Small respectfully requests that the Court grant summary judgment or, in the alternative, partial summary judgment.

Dated: August 13, 2026 HIGGS FLETCHER & MACK LLP

By: */s/ Steven J. Cologne*
STEVEN J. COLOGNE (SBN 118534)
KYLE W. NAGEOTTE (SBN 285599)
JAKE D. SESTI (SBN 339005)
Attorneys for Defendant
Christian Small. M.D.