DAVID D. PIPER (CASB No. 179889)
DPiper@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
1 World Trade Center, Suite 2575
Long Beach, CA 90831
Telephone: (562) 366-1653
Facsimile: (562) 366-1646

BENJAMIN H. MCCOY (Pro Hac Vice)
BMcCoy@Stradley.com
JORDANN R. CONABOY (Pro Hac Vice)
JConaboy@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8108
Facsimile: (215) 564-8120

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company,

Plaintiff,

v.

ASANA RECOVERY, INC., et al.,

Defendants.

Case No.: 8:25-cv-00735-DOC-DFM

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DR. SMALL'S MOTION FOR SUMMARY JUDGMENT**

Hearing Date: September 28, 2026
Time: 8:30 a.m.
Place: Courtroom 10A
Judge: Hon. David O. Carter

## TABLE OF CONTENTS


INTRODUCTION ..... 1

PROCEDURAL HISTORY ..... 1

FACTUAL BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

- I. There Is Overwhelming Evidence of Dr. Small's Liability for Fraud and Fraudulent Concealment (Count 1) ..... 4
  - a. The Law Imposes Liability on Central Participants in Fraud Schemes Like Dr. Small ..... 4
  - b. Bains v. Moore Does Not Support Dr. Small ..... 5
  - c. Dr. Small's Non-Submitter Defense Fails ..... 6
    - i. Dr. Small Is Liable for Causing False Claim Submissions ..... 6
    - ii. Dr. Small Is Liable for His Co-Conspirators' Acts ..... 10
    - iii. Dr. Small Is Liable for Aiding and Abetting Fraud ..... 12
- II. Dr. Small Is Liable for Negligent Misrepresentation (Count 2) ..... 14
- III. Dr. Small Is Liable for Intentional Interference (Count 3) ..... 14
- IV. Dr. Small Faces Aiding-and-Abetting Liability (Count 4) ..... 14
- V. Dr. Small Is Liable for the Remaining Counts (Counts 5-7) ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Plambeck*,
802 F.3d 665 (5th Cir. 2015) ........................................ 11

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
158 Cal. App. 4th 226 (Cal. Ct. App. 2007) ........................................ 14

*Bains v. Moore*,
172 Cal. App. 4th 445 (Cal. Ct. App. 2009) ........................................ 5, 6

*Countrywide Home Loans, Inc. v. America's Wholesale Lender, Inc.*,
No. 12-00242, 2014 WL 545841 (C.D. Cal. Feb. 7, 2014) ........................................ 5

*Fifty-Six Hope Rd. v. Jammin Java Corp.*,
No. 16-05810, 2016 WL 9223890 (C.D. Cal. Dec. 8, 2016) ........................................ 10

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) ........................................ 5, 12, 13

*Geernaert v. Mitchell*,
31 Cal. App. 4th 601 (Cal. Ct. App. 1995) ........................................ 7

*Gonzalez v. City of Huntington Beach*,
No. 18-00953, 2021 WL 3037399 (C.D. Cal. July 19, 2021) ........................................ 3

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) ........................................ 4

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ........................................ 6

*Lomita Land & Water Co. v. Robinson*,
154 Cal. 36 (1908) ........................................ 13

*Klein v. Oakland Raiders, Ltd.*,
259 Cal. Rptr. 149 (Cal. Ct. App. 1989) ........................................ 14

*Menkes v. Stolt-Nielsen S.A.*,
No. 03-409, 2006 WL 1699603 (D. Conn. June 19, 2006) ........................................ 8

*People ex rel. Monterey Mushrooms, Inc. v. Thompson*, 136 Cal. App. 4th 24 (Cal. Ct. App. 2006) ... 5, 6, 10

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 3 Cal. Rptr. 3d 429 (Cal. App. Ct. 2003) ... 11

*Moss v. Kroner*, 197 Cal. App. 4th 860 (Cal. Ct. App. 2011) ... 6

*Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp. 2d 1082 (N.D. Cal. 2013) ... 12

*Soderberg v. McKinney*, 44 Cal. App. 4th 1760 (Cal. App. Ct. 1996) ... 14

*United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008) ... 9

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377 (1st Cir. 2011) ... 9

*United States v. Mackby*, 261 F.3d 821 (9th Cir. 2001) ... 4, 6, 8

*United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997) ... 9

*Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016) ... 4

*Villareal v. Chubb & Son, Inc.*, No. 11-0674, 2012 WL 3151254 (C.D. Cal. July 31, 2012) ... 3

*Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773 (1979) ... 10

*Young v. Hamilton*, 92 F. App'x 389 (9th Cir. 2003) ... 11, 12

Plaintiff Blue Cross and Blue Shield of Oklahoma ("BCBSOK"), a Division of Health Care Service Corporation ("HCSC"), a Mutual Legal Reserve Company, submits this Brief in opposition to the Motion for Summary Judgment filed by Defendant Christian R. Small, M.D. ("Dr. Small"). Dkt. No. 103.

## INTRODUCTION

The Court should grant BCBSOK partial summary judgment without granting Dr. Small any relief. Dr. Small fueled a massive fraud scheme by selling the use of his medical license to dozens of SUD facilities so they could operate illegally without legitimate physician leadership or physician involvement in services. As part of this sham arrangement, Asana Recovery recruited patients through illegal kickbacks and gave Dr. Small the exclusive right to profit from providing them with alleged medical services. Equipped with Dr. Small's license, his billing assignment, and fabricated medical records that he prepared to support false billings, Asana submitted claims to BCBSOK and other health plans then split the proceeds with Dr. Small.

As this Court recognized, without Dr. Small, "the scheme would be worthless and would not be able to succeed." Dkt. No. 44 at 18. Dr. Small nevertheless seeks to evade responsibility because Asana's biller—rather than Dr. Small—performed the mechanical act of clicking "send" on claims transmitted to BCBSOK. But that position ignores the numerous bases for liability that Dr. Small faces: he caused the submission of false claims; he prepared fabricated medical records on which those claims were based; he bears responsibility for his co-conspirators' acts; and he provided substantial assistance to the fraud as an aider and abettor. Simply put, Dr. Small cannot escape liability for the fraud he enabled, advanced, and profited from. The Court should deny Dr. Small's Motion.

## PROCEDURAL HISTORY

On April 10, 2025, BCBSOK filed its Complaint against Dr. Small, as well as Asana and multiple individuals and entities affiliated with Asana (collectively, the "Asana Defendants"). Dkt. No. 1. BCBSOK and the Asana Defendants reached a

settlement earlier this year, and on June 16, 2026, this Court entered a $7.5 million Consent Judgment against the Asana Defendants that also enjoins them from submitting claims to BCBSOK or its affiliates. Dkt. No. 94. Dr. Small—the linchpin of the conspiracy—is the only remaining Defendant.

Dr. Small filed his Motion for Summary Judgment on August 13, 2026, a few hours before his deposition. Dkt. No. 103. On August 31, 2026, BCBSOK filed a Motion for Leave to Amend the Complaint, Dkt. No. 110, and a Motion for Partial Summary Judgment, Dkt. No. 111.

Dr. Small's Motion does not carry his Rule 56 burden. Unlike BCBSOK's separately filed Motion for Partial Summary Judgment, which identifies extensive record evidence, Dr. Small's Motion cites neither a single line of testimony nor virtually any of the hundreds of thousands of documents produced in discovery.

The only materials he relies on are a contract he prepared and two policy documents he drafted. That is insufficient for Dr. Small to establish that there is no genuine dispute as to any material fact. Moreover, Dr. Small's self-authored contract and policies do not support his arguments, and even if they did, testimony that he regularly violated his contracts and policies would substantially diminish their weight. Statement of Genuine Disputes ("SGD") ¶ 36. That testimony is consistent with the common practice of creating sham contracts and policies to give a healthcare fraud scheme an appearance of legitimacy.

## FACTUAL BACKGROUND

BCBSOK's Motion for Partial Summary Judgment included a statement of facts relating to Defendants' fraudulent conspiracy, their misrepresentations to BCBSOK, and Dr. Small's central role in the scheme. *See* Dkt. No. 111-1 at 3-15. To conserve the Court's and the parties' resources, BCBSOK incorporates that background and will only summarize it briefly here.

Under California law, the type of SUD treatment facility at issue here cannot function or bill unless a licensed physician oversees its operations and serves as its

medical director. *Id.* at 3. Dr. Small exploited that requirement for his own gain: he monetized his name, license, and signature by selling them to dozens of facilities he never visited so they could bill for treatment he never provided to patients he never met. *Id.* at 3-6. Dr. Small made tens of millions of dollars from this arrangement while vulnerable patients were recruited through inducements then subjected to substandard care without the required involvement and supervision of physicians. *Id.* at 7-12.

The claims at issue were false for several reasons, including that they falsely certified compliance with California laws governing medical directors and SUD facilities, and they identified Dr. Small as the patients' "attending provider" even though he had little to no involvement in their care. *Id.* at 12-13. And the claims rested on false medical records prepared by Dr. Small and his company—including records bearing forged versions of Dr. Small's signature to create the false impression that he had treated patients, as well as records falsely identifying him as their "attending" and "primary" physician. *Id.* In sum, Dr. Small was the engine of the scheme: he enabled facilities to operate, allowed them to recruit patients, and caused Asana and other co-conspirators to submit fraudulent claims.

## LEGAL STANDARD

Summary judgment is warranted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Villareal v. Chubb & Son, Inc.*, No. 11-0674, 2012 WL 3151254, at *3 (C.D. Cal. July 31, 2012) (Carter, J.) (quoting Fed. R. Civ. P. 56(a)). As this Court has recognized, "[s]ummary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury[,]" and the Court must "view the facts and draw inferences in the manner most favorable to the non-moving party." *Gonzalez v. City of Huntington Beach*, No. 18-00953, 2021 WL 3037399, at *2 (C.D. Cal. July 19, 2021) (Carter, J.) (citations omitted).

## ARGUMENT

### I. There Is Overwhelming Evidence of Dr. Small's Liability for Fraud and Fraudulent Concealment (Count 1)

#### a. The Law Imposes Liability on Central Participants in Fraud Schemes Like Dr. Small

Dr. Small offers no argument or evidence that the claims at issue were not fraudulent. He contends only that he should not be held responsible because he did not personally complete the scheme's final step by transmitting the claims to BCBSOK. Under that theory, a person who fabricates records and drives a fraud scheme enjoys immunity so long as he has someone else click "send" on the bills that allow the conspirators to profit. Adopting Dr. Small's argument would also insulate most physicians in America from liability for billing fraud, as doctors rarely perform the ministerial acts necessary to transmit their bills. The law is not so limited.

A defendant is liable for fraud if he causes a false bill to be submitted to the plaintiff; he cannot avoid liability merely because another participant transmitted the bill. *United States v. Mackby*, 261 F.3d 821, 825-27 (9th Cir. 2001) (clinic owner liable for fraudulent claims submitted by a third party because he "caused the claims to be submitted with false information").[1] Nor can a defendant escape liability by arguing—as Dr. Small does—that he is in the clear because he did not lie directly to the plaintiff. To the contrary, a defendant who prepares false or misleading information for an intermediary is liable "so long as the maker of the

[1] *Mackby* is a False Claims Act case. As relevant here, FCA precedent applies because the FCA incorporates common law fraud meanings. *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016) (FCA incorporates the common law meaning of fraud); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1173 n.5 (9th Cir. 2023) ("There is an obvious close relationship between a FCA cause of action and common law fraud. . . . And, both the common law and statutory actions are designed to address the same injury: reliance on an intentional, material misrepresentation.") (internal citations omitted).

misrepresentation 'intends or has reason to expect to have the misrepresentation repeated to a particular class of persons and the person relying upon it is one of that class." *Countrywide Home Loans, Inc. v. America's Wholesale Lender, Inc.*, No. 12-00242, 2014 WL 545841, at *3 (C.D. Cal. Feb. 7, 2014) (citing Restatement (Second) of Torts § 533 and quoting *Varwig v. Anderson-Behel Porsche/Audi, Inc.,* 74 Cal. App. 3d 578, 580 (Cal. Ct. App. 1977)) (cleaned up).

Further, Dr. Small is liable for his co-conspirators' acts in furtherance of the conspiracy regardless of whether he personally performed every act or transmitted the fraudulent claims. *People ex rel. Monterey Mushrooms, Inc. v. Thompson*, 136 Cal. App. 4th 24, 36-37 (Cal. Ct. App. 2006). Finally, Dr. Small is liable as an aider and abettor because he "'provided substantial assistance to the fraudulent scheme[.]" Dkt. No. 44 at 17 (Decision Denying Dr. Small's Motion to Dismiss); *see also In re First Alliance Mortgage Co.*, 471 F.3d 977, 993–95 (9th Cir. 2006) (citing *Lomita Land & Water Co. v. Robinson,* 154 Cal. 36, 47–50 (1908)). Each fraud theory independently forecloses Dr. Small's non-submitter defense. Dkt. No. 44 at 18.

**b. *Bains v. Moore* Does Not Support Dr. Small**

Dr. Small relies principally on *Bains v. Moore*, 172 Cal. App. 4th 445 (Cal. Ct. App. 2009). That decision does not apply to this case.

In *Bains*, shareholders alleged that fraudulent accounting practices generated false and misleading financial reports that induced them to retain a company's stock. *Id.* at 449. They sued the company's outside directors under various California statutes that "generally prohibit[] making untrue statements in the purchase or sale of securities[.]" *Id.* at 477. Affirming the trial court's summary adjudication of the fourth amended complaint, the appellate court held that the outside directors' titles alone did not establish liability and that plaintiffs had offered no evidence that the directors knew of—let alone participated in—the alleged misconduct. *Id.* at 466-469. The court also rejected the plaintiffs' attempt to obtain summary judgment based on the "group published information" doctrine, a pleading device that attributes corporate

statements to directors without evidence of their involvement. *Id.* at 470.

*Bains* provides no basis for summary judgment here. BCBSOK does not rely on a group-pleading presumption or Dr. Small's title alone, but on evidence of his central role in the conspiracy. And even under the securities statutes at issue in *Bains*, "material[] assist[ance]" in a fraud scheme supports liability. *See Moss v. Kroner,* 197 Cal. App. 4th 860, 879 (Cal. Ct. App. 2011).

**c. <u>Dr. Small's Non-Submitter Defense Fails</u>**

**i. <u>Dr. Small Is Liable for Causing False Claim Submissions</u>**

A defendant who fuels a scheme and supplies false information underlying claims causes their submission and is liable for the resulting fraud. *Mackby*, 261 F.3d at 825-27. That is the case here. Unlike the mere bystanders in *Bains*, Dr. Small enabled, drove, and caused the submission of the claims that BCBSOK received and paid. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000) ("substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements").

Indeed, Asana's COO testified that Asana's biller relied on documents prepared by Headlands—Dr. Small's dba—"to submit bills to third-party payors[.]" SGD ¶ 37 ("[Q.] [Asana's biller] was reliant upon document prepared by [Dr. Small's company] to submit bills on behalf of Asana, correct? . . . [A.] Correct."). The CEO also explained that Asana could not operate or bill without Dr. Small agreeing to serve as its medical director. SGD ¶ 38 ("Q. So without Dr. Small serving as Asana's medical director, Asana never submits any bills, correct? A. Correct"). Dr. Small's liability therefore rests on his active role in advancing the scheme—not merely on his title. *See People ex rel. Monterey Mushrooms, Inc. v. Thompson*, 136 Cal. App. 4th 24, 36–37 (2006) (affirming liability where the defendant was an "active part of the

conspiracy" even though she did not personally submit the bills).[2]

Dr. Small's role also extended to the false information and certifications incorporated into the claims at issue. He knew the claims were accompanied by certifications of legal compliance, SGD ¶ 39, yet he still caused those certifications to be false through his unlawful practices—including being so absent that he left Asana without a legitimate medical director, illegally delegating his medical-director responsibilities to non-physicians, and by allowing nurse practitioners and physician assistants to operate without the required physician supervision and direction. SGD ¶¶ 40-58; *see also* Dkt. No. 111-1 (BCBSOK Br.) at 18-20.

Beyond that, Dr. Small created or caused the creation of fabricated medical records for the alleged services at issue, thereby causing the false information to be repeated in claims to BCBSOK. SGD ¶¶ 37, 65. For example, before claims submitted to BCBSOK falsely identified Dr. Small as the "attending provider," the medical records that he was responsible for listed him as both the "attending" and "primary" physician. SGD ¶¶ 59-60. Dr. Small also directed others to forge his signature on medical documents to give the false impression that he had treated the patients and reviewed their records when he had done neither. SGD ¶¶ 61-64.

Dr. Small's contract with Asana specifically required him to prepare these "patient record[s] . . . *for billing*," SGD ¶ 66 (emphasis added); *see also id.* at ¶ 65. He therefore knew—or had reason to expect—that Asana would repeat his misrepresentations in claims to health plans. Dr. Small is thus liable for those misrepresentations. *See Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605–06 (1995).[3]

---

[2] Dr. Small assigned Asana the right to bill for his services, so Asana was "billing on behalf of Dr. Small[.]" SGD ¶¶ 67-68.

[3] Like other courts applying California law, *Geernaert* adopted Section 533 of the Restatement, which provides that "[t]he maker of a fraudulent misrepresentation is subject to liability . . . if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its

And because Dr. Small caused the false claims, he remains liable regardless of who transmitted them. *See, e.g.*, *Mackby*, 261 F.3d at 825-27 (citing *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997) (doctor liable for false claims his wife prepared because he "delegated to his wife authority to submit claims on his behalf" and "utterly" failed to review the submissions)); *Menkes v. Stolt-Nielsen S.A.,* No. 03-409, 2006 WL 1699603, at *7 (D. Conn. June 19, 2006) (non-speaking defendants are liable if their conduct helped create false information).

The evidence establishes the causal chain demonstrating Dr. Small's central role in the claims at issue. Like its COO, Asana's CEO confirmed that its bills to BCBSOK were based on medical records prepared by Dr. Small and his company, and that Asana would not have billed without those records:

> Q. *[T]**he bills that Asana submitted to Blue Cross Blue Shield of Oklahoma and other payors were based on the medical records Dr. Small and Headlands prepared; weren't they*?**
>
> **A. *Yes, absolutely***, in addition to the other services we provided.
>
> Q. . . Asana wouldn't submit bill without Headlands having prepared medical records; would it have?
>
> A. No, absolutely not.
>
> **Q. *So Headlands, by preparing the medical records, caused Asana's bills to be submitted to Blue Cross Blue Shield of Oklahoma; did they not?***
>
> **A. *Correct.***

SGD ¶ 69 (emphasis added).

The CEO also testified that Dr. Small caused Asana to submit false medical records to BCBSOK to support the claims:

> Q. So the records that bore Dr. Small's signature indicating that Dr.

---

terms will be repeated or its substance communicated to the other." *Id.*

Small had reviewed the medical records, those were false; weren't they?

A. According to his statements [at his deposition] last week, yes. . . .

***Q. And it was Dr. Small that caused Asana to submit those false medical records to Blue Cross Blue Shield of Oklahoma; wasn't it?***

***A. In regards to his fraudulent signature, yes. Correct.***

SGD ¶ 70 (emphasis added); *see* also *United States v. Rutgard,* 116 F.3d 1270, 1293-95 (9th Cir. 1997*)* (affirming healthcare fraud convictions based in part on fabricated medical records); *United States v. Bourseau*, 531 F.3d 1159, 1167-70 (9th Cir. 2008) (affirming FCA liability based on fabricated cost reports).[4]

At a minimum, this evidence would permit a reasonable jury to find that Dr. Small caused the false claim submissions. His assertion that he did not personally transmit the claims therefore does not entitle him to summary judgment. *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 388–91 (1st Cir. 2011) (reversing dismissal of healthcare fraud case and holding that liability extends to non-submitters who cause false submissions).

The Court should also reject Dr. Small's unsupported suggestion that he did not know he was listed on the claims, as well as his assertion that he "was not *even aware* of any individual patient's insurance provider." Small Br. at 15 (emphasis in original). Dr. Small stood by his name being listed on the claims during his recent deposition, SGD ¶ 71, and he is listed as the attending provider on claims from several other facilities where he serves as the alleged medical director, which demonstrates that the improper billing was part of his business practice, SGD ¶ 72. Plus, not only did the relevant members' medical records and the claims at issue identify Dr. Small as the "attending provider" or "attending physician," but BCBSOK also sent him hundreds of prepayment letters confirming that he had been identified as the

[4] Asana's CEO testified that he didn't know about Dr. Small's forged signatures until recently, and thus BCBSOK could not have known either. SGD ¶ 73.

members' physician. SGD ¶ 74.

Dr. Small's contract with Asana also charged him with "examin[ing]" and "audit[ing]" Asana's "records related to patients' medical and billing information" to carry out his "responsibilities as medical director, including . . . accuracy of billing and payment." SGD ¶ 75. His claimed billing detachment therefore rings hollow.[5]

**ii. <u>Dr. Small Is Liable for His Co-Conspirators' Acts</u>**

Dr. Small likewise cannot avoid responsibility for the scheme's other unlawful acts merely because he did not personally commit each one. This Court has already sustained BCBSOK's conspiracy allegations against Dr. Small. Dkt. No. 44 at 17–18. And it is axiomatic that a conspirator is liable for acts his co-conspirators commit in furtherance of the conspiracy, meaning that he "effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Fifty-Six Hope Rd. v. Jammin Java Corp.*, No. 16-05810, 2016 WL 9223890, at *9 (C.D. Cal. Dec. 8, 2016) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994)). Put differently, when two or more people conspire, "the law places civil liability for the resulting damage on all of them, regardless of whether they actually commit the tort themselves." *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784 (1979).

Substantial evidence shows that Dr. Small "was an active part of the conspiracy enabling [the co-conspirators] to achieve [their] objectives." *Monterey Mushrooms*, 38 Cal. Rptr. 3d at 688. He sold access to his license, allowing Asana and dozens of other facilities to operate and bill (SGD ¶¶ 38, 76), then he fueled their fraudulent billing by creating sham medical records (SGD ¶¶ 61-65), and by engaging in other

[5] Dr. Small's brief suggests BCBSOK's causes of action are premised "on the fact that Dr. Small's name appears as 'medical director' on Asana's claim forms." Dr. Small Br. at 12. That characterization is incorrect and incomplete.

unlawful and otherwise improper conduct (SGD ¶ 36).[6] In return, the Asana Defendants brought in patients through kickbacks (SGD ¶¶ 77-81), granted Dr. Small exclusive billing access for those patients (SGD ¶ 82), submitted fraudulent claims on behalf of the co-conspirators (SGD ¶ 68), and paid Dr. Small (SGD ¶ 82-83). Thus, the record satisfies "the elements of civil conspiracy[,]" which "are the formation and operation of the conspiracy, a wrongful act done pursuant to the conspiracy, and damage resulting to the plaintiff from the act." *Young v. Hamilton*, 92 F. App'x 389, 393 (9th Cir. 2003).

Each side relied on the other and performed an indispensable, complementary role. The Asana Defendants needed Dr. Small's license and false medical records to submit bills to BCBSOK and other payors. Dr. Small needed the Asana Defendants to furnish patients and submit claims so he could receive increased payments. This coordinated division of labor confirms the conspiracy and makes each conspirator responsible for the others' acts in furtherance of it. *See*, *e.g.*, *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 670-74 (5th Cir. 2015) (affirming a verdict against people who played different roles in a conspiracy that "targeted poor and uneducated individuals, convinced them that they needed chiropractic and legal services, and solicited payment for those services from insurers.").

Although no further analysis is necessary, circumstantial evidence of Dr. Small's knowledge undermines his claimed ignorance and further supports his liability as a co-conspirator. *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 3 Cal. Rptr. 3d 429, 457 (Cal. App. Ct. 2003) ("to the extent that knowledge of the scheme's unlawful purpose is required, it may be inferred from the surrounding circumstances, including the nature of the acts done, the relation of the parties, and the interests of

---

[6] Asana's CEO testified about various ways in which Dr. Small violated his contract with Asana. Those acts also resulted in violations of the law, as explained in BCBSOK's brief in support of its Motion for Partial Summary Judgment.

the defendants"). The unusual pattern of financially vulnerable Oklahoma patients traveling to California for virtual visits with non-physicians strongly supports an inference that the arrangements were driven by kickbacks and that Dr. Small, as the purported medical director and attending physician, knew of the scheme's unlawful nature. SGD ¶ 84.[7] A whistleblower from Dr. Small's office also reported that Dr. Small and his lieutenant were the "ring leaders" and "very much involved with these schemes with Oklahoman's[,]" and that the office's "over abundance of Oklahoman's" had been an ongoing joke for years. SGD ¶ 85.[8] There is thus ample "circumstantial evidence" of Dr. Small's "concurrence" in all aspects of the conspiracy. *Young*, 92 F. App'x at 393.

**iii. <u>Dr. Small Is Liable for Aiding and Abetting Fraud</u>**

Even apart from any conspiracy, Dr. Small is liable for aiding and abetting the Defendants' fraudulent conduct. Dkt. No. 44 at 18-19 (denying Motion to Dismiss).

"California has adopted the common law rule that liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey v. U.S. Bank National Assn.*, 26 Cal. Rptr. 3d 401, 405

[7] As a BCBSOK witness explained, a large percentage of the relevant members "were coming from Oklahoma" while they were experiencing "homeless[ness]" or otherwise "struggling[,]" and as "the medical director . . . [i]t seems like Dr. Small would question why all these people from Oklahoma fly to California for these services[.]" SGD ¶ 84. An alleged medical director and attending physician operating legitimately would also want to be familiar with his patients' backgrounds and their motivations for receiving treatment.

[8] BCBSOK redacted the whistleblower's unsolicited email to protect her privacy. BCBSOK produced the unredacted email in discovery, and it will provide the complete email to the Court upon request. The Court can consider the email now since "the [] contents [of the email] could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

(Cal. Ct. App. 2005)) (cleaned up). The evidence supporting "actual knowledge" need not be "overwhelming[,]" so long as a "reasonable interpretation of the record [c]ould lead to a finding of actual knowledge." *Id.* (affirming a jury verdict for aiding and abetting fraud). Further, "[a] plaintiff may prove actual knowledge through inference or circumstantial evidence." *Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp. 2d 1082, 1099 (N.D. Cal. 2013) (denying motion for summary judgment on aiding and abetting tort claims).

The record would permit a reasonable jury to find that Dr. Small was aware of Asana's fraudulent conduct. He knew that the claims carried certifications of legal compliance, SGD ¶ 39, but his own practices made those certifications false. The numerous letters BCBSOK sent Dr. Small showing that he had been identified as the members' physician for billing purposes further support an inference that he knew of the false claims. SGD ¶ 74; *see also In re First All. Mortg. Co.*, 471 F.3d at 994 (knowledge inferred from reports showing fraudulent practices). What's more, Dr. Small gave himself the contractual right to regularly review claims for accuracy. SGD ¶ 75. The sham medical-directorships, false records, and forged signatures—along with Dr. Small's use of similar arrangements at dozens of other facilities—provide more circumstantial evidence that the scheme was embedded in his business practices.

The record also shows that Dr. Small's knowledge was coupled with substantial assistance. Dr. Small's sale of his license enabled Asana to operate, and his false records and false identification as the members' attending physician supplied the false documentation to support its claims. SGD ¶ 59-64, 69, 70. Those affirmative acts were essential to the scheme—not peripheral assistance. The Court should therefore grant BCBSOK partial summary judgment. At minimum, the Court should deny Dr. Small's motion because a reasonable jury could find that he substantially assisted the fraud. *See Lomita Land & Water Co. v. Robinson,* 154 Cal. 36, 47-48 (1908**)** (affirming liability where defendants knowingly and intentionally assisted a

fraudulent land-sale scheme); *In re First Alliance Mortg. Co.,* 471 F.3d 977, 993-1002 (9th Cir. 2006) (applying California law to affirm aiding-and-abetting fraud liability).

**II. Dr. Small Is Liable for Negligent Misrepresentation (Count 2)**

Piggybacking on his erroneous fraud argument, Dr. Small claims he cannot be held liable for negligent misrepresentation because the claims at issue were submitted to BCBSOK by Asana, not Dr. Small. As with fraud, he is wrong. Dr. Small faces negligent-misrepresentation liability because he caused the submission of false claims to BCBSOK, and because he caused the creation of fabricated medical records that he knew—or had reason to expect—would result in their false information being relayed to BCBSOK and other health plans. *Soderberg v. McKinney*, 44 Cal. App. 4th 1760, 1770-72 (Cal. App. Ct. 1996). If anything, Dr. Small's arguments are even less effective for this claim because "negligent misrepresentation does not require knowledge of falsity." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).

**III. Dr. Small Is Liable for Intentional Interference (Count 3)**

Dr. Small seeks to avoid liability for intentional interference based on the ground that he "was not *even aware* of any individual patient's insurance provider." Dr. Small Br. at 15. That is demonstrably false since BCBSOK sent Dr. Small hundreds of letters informing him that the relevant members had coverage through BCBSOK. SGD ¶ 74. Patients' medical records and the claims data also list their insurers, and Dr. Small had access to and oversaw those records and data sets. In claims "for an intentional tort[,] [a]ll persons who are shown to have participated are liable for the full amount of the damages[.]" *Klein v. Oakland Raiders, Ltd.*, 259 Cal. Rptr. 149, 157-58 (Ct. App. 1989), modified (June 26, 1989).

**IV. Dr. Small Faces Aiding-and-Abetting Liability (Count 4)**

Dr. Small presents one argument as to why he allegedly should not be held liable for aiding and abetting tortious conduct: he claims he "was not aware of any of the supposedly wrongful conduct committed by Asana." Dr. Small Br. at 15.

BCBSOK has already addressed Dr. Small's knowledge of the scheme and his participation in it, and BCBSOK will not repeat those points. *See* Argument § I(c)(iii). Suffice to say the knowledge and substantial participation that supports Dr. Small's liability for aiding and abetting fraud applies to the other tortious conduct at issue.

### V. Dr. Small Is Liable for the Remaining Counts (Counts 5-7)

Dr. Small presents no independent arguments for why he is purportedly entitled to summary judgment on BCBSOK's cause of action under the UCL (Count 5) or its claims for money had and received (Count 6) or unjust enrichment/quantum meruit (Count 7). He argues only that "[b]ecause [he] is entitled to summary judgment of the other claims, so too, is he entitled to summary adjudication of [these] claims." Dr. Small Br. at 16. BCBSOK therefore rests on its arguments above and its briefs in support of its Motion for Partial Summary Judgment. In addition, unlike the causes of action discussed above, Counts 5-7 do not require the submission of false claims and thus will survive based upon Dr. Small's underlying misconduct regardless.

## CONCLUSION

Dr. Small built the scheme, enabled it, and profited from it. He cannot escape liability because someone else clicked "send." The Court should deny his Motion and grant BCBSOK partial summary judgment.

Respectfully submitted,

Dated: September 8, 2026 STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*
Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Benjamin H. McCoy, counsel of record for BCBSOK, certify that, on September 8, 2026, I caused service of the foregoing on all counsel of record through the Court's electronic filing system.

Dated: September 8, 2026

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*
Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*

**CERTIFICATE OF WORD COUNT**

I, Benjamin H. McCoy, counsel of record for BCBSOK, certify that, according to the Word count feature on Microsoft Word, this brief contains 4,905 words, which complies with L.R. 11-6.1. The brief is also fewer than 25 pages, which complies with the page limit set forth in Judge Carter's Procedures.

Dated: September 8, 2026

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*

Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*