DAVID D. PIPER (CASB No. 179889)
DPiper@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
1 World Trade Center, Suite 2575
Long Beach, CA 90831
Telephone: (562) 366-1653
Facsimile: (562) 366-1646

BENJAMIN H. MCCOY (Pro Hac Vice)
BMcCoy@Stradley.com
JORDANN R. CONABOY (Pro Hac Vice)
JConaboy@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8108
Facsimile: (215) 564-8120

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company,<br><br>Plaintiff,<br><br>v.<br><br>ASANA RECOVERY, INC., et al.,<br><br>Defendants. | Case No.: 8:25-cv-00735-DOC-DFM<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><u>Hearing Date</u>: September 28, 2026<br><u>Time</u>: 8:30 a.m.<br><u>Place</u>: Courtroom 10A<br><u>Judge</u>: Hon. David O. Carter |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Court Should Treat the Scheme's Predicate Acts as Established and Limit Trial to Dr. Small's Responsibility and Damages .......... 2

II. Alternatively, BCBSOK Is Entitled to Partial Summary Judgment on Misrepresentations .......... 3

A. Dr. Small's Response Relies Upon a Sham Affidavit and Should Be Disregarded .......... 3

B. Contrary to Dr. Small's Assertion, BCBSOK's Motion is Narrowly Tailored to the Specific Misrepresentation Element of the Claims .......... 6

C. Defendants Misrepresented Charges .......... 6

D. Defendants Made Misrepresentations By Concealing Their Illegal Practices and Falsely Certifying Compliance .......... 7

E. Defendants Misrepresented Dr. Small as Members' Physician .......... 8

F. Defendants Made Misrepresentations by Creating False Medical Records .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Commissioner v. Sunnen*,
333 U.S. 591 (1948) .......... 2

*Epic Metals Corp. v. HH Robertson Co.*,
870 F.2d 1574 (Fed. Cir. 1989) .......... 2

*Galloway v. Mabus*,
No. 11-0547, 2013 U.S. Dist. LEXIS 15727 (S.D. Cal. Feb. 4, 2013) .......... 7

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993) .......... 7

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
No. 15-00865, 2018 U.S. Dist. LEXIS 173657 (C.D. Cal. Oct. 5, 2018) .......... 7

*Hyseni v. Penske Logistics LLC*,
No. 19-05671, 2021 WL 3371530 (D. Ariz. Aug. 3, 2021) .......... 7

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
140 S. Ct. 768 (2020) .......... 7

*Jou v. Adalian*,
No. 15-00155, 2016 WL 4582042 (D. Haw. Sept. 1, 2016) .......... 2

*United States ex rel. Mohamad v. Harper's Pharmacy Inc.*,
No. 24-0348, 2025 WL 3724875 (C.D. Cal. Nov. 13, 2025) .......... 6

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*,
121 F.3d 496 (9th Cir. 1997) .......... 5

*In re Out-of-Network Substance Use Disorder Claims*,
No. 19-2073, 2023 WL 2808747 (C.D. Cal Jan. 13, 2023) .......... 6

*Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*,
109 F.4th 1054 (8th Cir. 2024) .......... 9

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) .......... 3, 4

## INTRODUCTION

As explained in BCBSOK's opening papers, Dr. Small engaged in a shocking amount of fraud and misconduct that has left a trail of patient harm and deaths in its wake. He has pointed to no evidence that he treated a single patient despite being identified as the attending provider for every member. His signature was forged on medical records—which he was responsible for—to indicate he was involved in treatment or reviewed those records, both of which were false. He instructed doctors to ignore state law on supervising lower-level providers. BCBSOK's Medical Experts—the Chairman of the Department of Psychiatry and Behavioral Neurosciences at Cedars-Sinai Medical Center and a highly regarded Medical Director at an independent SUD facility—both expressed dismay at Dr. Small's conduct. Dr. Small could not find any medical professional to testify on his own behalf. As Dr. Small admitted, no other professional—in all of America—has set up a scheme like Dr. Small implemented.

Reading Dr. Small's Opposition, one would know none of this. Unable to address (much less dispute) the actual material facts at the heart of BCBSOK's Motion, Dr. Small tries to manufacture a fantasy in hopes of muddying the waters. Some of what he says consists of outright misrepresentations in a sham affidavit, such as where he says 16 physicians worked at Headlands during a four-year period when his deposition testimony and the actual evidence say that, at most, only seven physicians worked at Headlands during that time, and most of the time there were only 1 or 2 physicians on staff. The rest of what he says is either utter misdirection or self-serving conclusions. He points to the services allegedly provided by unidentified people at Asana, but ignores that he himself did nothing and exercised no oversight with respect to these people even though he was Asana's alleged Medical Director. He references "Tiger Connect" communications between Headlands and Asana, while ignoring that his own expert said he is nowhere to be found in those messages. He highlights that the care was preauthorized but ignores that this was because he was

(falsely) identified as the attending provider. He purports to have no knowledge of billing, but then says that he knows BCBSOK filed this case just to avoid paying Asana claims involved in an arbitration Asana had against a different party that BCBSBOK had no involvement in and that is nowhere in the record.

But what Dr. Small cannot do is dispute the facts that actually matter for purposes of BCBSOK's Motion. Dr. Small cannot dispute the financial ledgers showing a proliferation of kickbacks to BCBSOK members. Dr. Small cannot dispute that he violated physician supervision limits. Dr. Small cannot dispute that he failed to fulfill his roles as Medical Director and attending physician. And Dr. Small cannot dispute that he forged his signature on medical records. Those are the facts that matter. Because those facts are undisputed, partial summary judgment is appropriate and the Court should find that there were misrepresentations on the claim forms.

## ARGUMENT

### I. The Court Should Treat the Scheme's Predicate Acts as Established and Limit Trial to Dr. Small's Responsibility and Damages

As explained in BCBSOK's opening papers, the Court should treat the Defendants' misrepresentations and misconduct as established because there is a consent judgment against Asana Defendants and those facts are not subject to any genuine factual dispute. In response, Dr. Small notes that "issue preclusion" cannot be based upon a consent judgment. Op. 23. That is not what BCBSOK is arguing. The ***only*** evidence that Dr. Small has offered to dispute much of the misconduct is the Asana Defendants' rote denials in deposition testimony. But a "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever."[1] *Commissioner v. Sunnen*, 333 U.S. 591, 597

[1] "[A] party may expressly reserve in a consent judgment the right to relitigate some or all issues that would have otherwise been barred between the same parties." *Epic Metals Corp. v. HH Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989). But "[a]ny such reservation must be discerned within the four corners of the consent decree, and

(1948). Thus, the Asana Defendants cannot deny their misconduct at trial when they have a judgment entered against them for that very misconduct. And because that eliminates the only evidence Dr. Small has to dispute those allegations, summary judgment on the underlying misconduct is warranted.[2] The only issue for trial should be Dr. Small's role in the scheme, his responsibility for the resulting misconduct, and damages.

## II. Alternatively, BCBSOK Is Entitled to Partial Summary Judgment on Misrepresentations

### A. Dr. Small's Response Relies Upon a Sham Affidavit and Should Be Disregarded

Dr. Small's Opposition relies heavily upon statements he makes in his own self-serving Declaration. *See* Small Decl. (Dkt. 117-3). The Court should disregard this Declaration because it is a sham. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (further citations omitted). This is known as the "sham affidavit" rule, and it prevents "a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (cleaned up).

---

cannot be expanded beyond the decree's express terms." *Id.* at 1577. The judgment here makes no such reservation and thus bars relitigation. *See Jou v. Adalian*, No. 15-00155, 2016 WL 4582042, at *17 (D. Haw. Sept. 1, 2016) (barring relitigation of claims where consent judgment did not expressly permit such relitigation)

[2] Indeed, a major benefit of the Consent Judgment is that it serves to narrow the issues of this case so that BCBSOK does not have to prove its case against the defendants it has already prevailed against.

Dr. Small's Declaration contains clear and unequivocal falsehoods directly contrary to his deposition testimony and the facts of record. Most notably, Dr. Small's assertion that Headlands employed 16 physicians between 2021 and 2024 is demonstrably false. In discovery, Dr. Small produced an employee census that showed he only ever employed 7 physicians total between 2021 and 2024, most of which were employed at different times and did not start until after 2023. SUF 96.[3] This would make it impossible for Dr. Small to comply with California regulations that limit physicians to supervising only four nurse practitioners ("NPs") and physician assistants ("PAs") at one time.

At his deposition, Dr. Small testified that in 2023—when he was a Medical Director at approximately 56 facilities—Headlands had just two to three other physicians. SUF 96 (quoting Small Dep. at 77:1-8). Two of those physicians (Drs. Ramharack and Eckman) provided services exclusively at two facilities, and another one (Dr. Brewer) testified that she was a part-time employee who was not responsible for patients' overall care. *Id.* Thus, Dr. Small and a part-time physician, plus potentially one other unidentified doctor, were the only physicians available to cover roughly 54 of the 56 facilities where Dr. Small was medical director and attending physician. Conaboy Dec. *Id.* This is a blatant violation of California regulations limiting physicians to only supervising 4 NPs and PAs at a time.

In contrast, there is no record evidence Headlands employed 16 physicians during the period cited in Dr. Small's declaration. The only support Dr. Small can muster for this assertion are just 3 physician contracts. The other 13 are nowhere to be found. The 3 "contracts" he does attach only confirm the falsity of his assertions.

- He first cites an alleged July 2024 offer letter to Dr. Bruce Pastner. But Dr. Small admitted during his deposition that Headlands was "unable to

[3] References to SUF refer to BCBSOK's Response to Dr. Small's Statement of Genuine Disputes filed contemporaneously with this Reply.

secure malpractice" for Dr. Pastner and he "had some things on his record that came up[,] . . . [a]nd so [Headlands] couldn't employ him[.]" Piper Dec. Ex. A (Dr. Christian Small Dep. at 96:6-16). Dr. Small also confirmed that Dr. Pastner "never performed any meaningful work for Headlands." *Id.*

- He next cites a 2019 contract between Headlands and Dr. Sarah Lee. Small Dec., Ex. 5. But there is no record evidence that Dr. Lee worked for Headlands from 2021 through 2024.
- Lastly, he attaches an August 2019 contract with Dr. Sarah Carey. Small Dec., Ex. 5. But Dr. Small's own records say Dr. Carey had a "Terminated Date" of January 31, 2020, meaning that she did not work for Headlands after that date or during the period when Dr. Small told the Court she did.

Beyond outright falsehoods, the Declaration is also littered with Dr. Small's own denials of misconduct or conclusory statements. *See, e.g.*, Small Decl. (Dkt. 173) ¶ 11,14-18 Such "[c]onclusory allegations … without factual support, are insufficient to defeat summary judgment." *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). The Court should disregard Dr. Small's sham Declaration.[4]

[4] These are not innocent or explainable mistakes. They are a part of a clear attempt to confuse the issues. Similar tactics permeate Dr. Small's Opposition. Dr. Small repeatedly misrepresents deposition testimony. For example, he cites the testimony of Jonathan Hagen as stating that Asana's staff ran issues by Dr. Small directly. But in the very next part of the transcript, Hagen recants that testimony and states that he "would not know if they went and talked to [[Dr Small]" about anything. SUF 8 (Hagen Dep at 80:13-81:9). He also lodges evidentiary objections to every single statement of fact, including to deposition testimony that Dr. Small himself relies upon.

**B. <u>Contrary to Dr. Small's Assertion, BCBSOK's Motion is Narrowly Tailored to the Specific Misrepresentation Element of the Claims.</u>**

Dr. Small attempts to avoid the merits of BCBSOK's Motion by suggesting that the alleged misconduct and misrepresentations at-issue in this case are too vague for him to understand. Op. 20-22. That is false. The misrepresentations and misconduct at-issue in this case are clearly spelled out, as the Court already determined in denying Defendants' Motions to Dismiss. *See* MTD Order (Dkt. 44). Indeed, the legal argument section of Dr. Small's brief addresses each one in separate sections. *See* Op. 24-28. To reiterate: BCBSOK seeks a ruling that the claim forms and medical records contained misrepresentations.

Dr. Small similarly misfires by contending that it would be improper to enter summary judgment on the misrepresentation elements of counts IV-VII because those claims do not require misrepresentations as an element for their claims. Op. 22-23. But each requires some sort of wrongful or inequitable act, which here include misrepresentations in addition to other misconduct. Dr. Small himself previously argued that BCBSOK's failure to plead misrepresentations was a ground to dismiss these causes of action. *See* Small MTD (Dkt. 33-1) at 11-14. BCBSOK is simply asking that the misconduct elements of these claims be deemed established.

**C. <u>Defendants Misrepresented Charges</u>**

Defendants provided kickbacks to members in the form of waived cost-shares. *United States ex rel. Mohamad v. Harper's Pharmacy Inc.*, No. 24-0348, 2025 WL 3724875, at *4 (C.D. Cal. Nov. 13, 2025). And they mispresented their charges by failing to disclose that they did so. *See, e.g.*, *In re Out-of-Network Substance Use Disorder Claims*, No. 19-2073, 2023 WL 2808747, at *32 (C.D. Cal Jan. 13, 2023).

In response, Dr. Small suggests that there are disputed facts because Asana Defendants denied that they provided kickbacks at depositions. As Magistrate Judge McCormick explained, such denials are something "every defendant announces in its

Answer." 9/3/26 Order (Dkt. 114) at 2. But Defendants admitted that if they did collect cost-shares, such collections would be contained in their financial ledgers. SUF 163. And the financial ledgers not only show that Defendants failed to collect cost-shares, but that they never intended to as they immediately booked the cost-shares as written-off debt the same day they accrued. *Id*. This is, quite possibly, the most clear-cut evidence of a kickback scheme that can exist. Defendants' self-serving and conclusory denials do not create a dispute of fact against this indisputable evidence. *See, e.g.*, *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (a party's denial of knowledge could be disregarded at summary judgment where it is contradicted by electronic records); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (party "cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."); *Hyseni v. Penske Logistics LLC*, No. 19-05671, 2021 WL 3371530, at *6 (D. Ariz. Aug. 3, 2021) (deposition testimony insufficient to establish dispute of fact where it is "vague, conclusory, and—like the denials themselves—unsupported by (and sometimes contradicted by) other evidence in the record"). The Court should therefore treat the charge and cost-share kickback misrepresentations as established. *See*, *e.g.*, *Johnson*, 2022 WL 423492, at *8; *Hsingching Hsu v. Puma Biotechnology, Inc.*, No. 15-00865, 2018 U.S. Dist. LEXIS 173657, at *37 (C.D. Cal. Oct. 5, 2018); *Galloway v. Mabus*, No. 11- 0547, 2013 U.S. Dist. LEXIS 15727, *15-16 (S.D. Cal. Feb. 4, 2013)

### D. Defendants Made Misrepresentations By Concealing Their Illegal Practices and Falsely Certifying Compliance

Defendants falsely certified that they complied with numerous laws; specifically: (i) laws prohibiting kickbacks, (ii) Medical Director laws, and (iii) laws requiring physician supervision and monitoring. Dr. Small does not dispute that these representations were made. Instead, he contends that there are disputes of fact as to whether kickbacks occurred or whether he complied with Medical Director and supervision regulations. These arguments are more specifically addressed in other

sections and fail for the reasons set forth therein.

**E. Defendants Misrepresented Dr. Small as Members' Physician**

Dr. Small misrepresented himself as the members' attending physician for over 99% of the claims at issue. BCBSOK SUF ¶¶ 67-68. Dr. Small offers no evidence to dispute that *Dr. Small* ever treated a single patient, monitored a patient's care, or supervised a patient's treatment. His attempts to avoid these undisputed facts only highlight the lengths he will go to try to justify his misconduct.

***First,*** Dr. Small contends that "the term 'attending physician' and 'primary physician' are subject to expert opinion and have different meanings in different contexts." Op. 26. But Dr. Small does not explain what those "different meanings" are, much less explain how they prevent summary judgment. To the contrary, whatever "differences" might exist in the definitions of these terms, there is no dispute that the attending physician is the individual responsible for the patient's care. Dr. Small's own expert stated as much. But what his expert would not do is opine that Dr. Small was actually acting as the attending physician. *See* Sesti Decl., Ex. M (Arrigo Scope of Report);

***Second***, Dr. Small highlights that he "did not list himself as the attending physician on claim forms or Asana's medical records." Op. 26. But he endorsed—albeit through a forged signature—records identifying himself as the attending physician and from which the claim forms were created. In fact, he was listed as an attending provider at virtually every facility he contracted with. SUF 84. It defies logic to suggest Dr. Small, a medical doctor, does not know what an attending provider is. But even if that is true, that it only confirms that he was misrepresented as being an attending provider. Arrigo Dep. (Dkt. 117-7) at 63:17-21.

***Third***, Dr. Small contends that whether he fulfilled the role of an "attending physician" is disputed because it requires a complex and "complicated" analysis into the day-to-day treatment of BCBSOK members. Op. 27. That is not correct. ***Neither Dr. Small nor his expert has pointed to any evidence that Dr. Small ever treated an***

***individual patient or had any involvement in their care***. Two medical experts testified Dr. Small did not meet the standards for an attending provider. *See* Danovitch Rebuttal (Dkt. 111-19); Bartolome Rebuttal (Dkt. 111-20). Tellingly, Dr. Small could not find any medical expert to rebut those opinions or testify on his own behalf.

None of Dr. Small's evidence says otherwise. The only evidence he cites is (i) Tiger Connect communications between Headlands non-physician staff and Asana, and (ii) testimony from BCBSBOK's corporate designee that "services were provided." Op. 27. But as Dr. Small's own expert admitted, neither Dr. Small nor any other physician is involved in ***any*** of the thousands of pages of Tiger Connect communications in the record.[5] SUF 121. The mere fact that services may have been provided by others is beside the point. The salient point for summary judgment is that Dr. Small had no involvement in those services as required of an attending provider, and the claims therefore contain misrepresentations.[6]

### F. Defendants Made Misrepresentations by Creating False Medical Records

Defendants' submissions to BCBSOK also contained misrepresentations because they included or were based on false medical records containing Dr. Small's forged signature to convey he reviewed records and provided treatment when he did not do so. SUF ¶¶ 76-79. Dr. Small does not dispute that his signature was forged, but

[5] This was contained in a "surrebuttal" report which was improper by itself. BCBSOK reserves the right to exclude it and simply cites it here to highlight the lack of a material dispute even in Dr. Small's improper expert report.

[6] Just about anybody can purport to provide SUD services just as most people could purport to provide legal advice. But that does not mean those services are proper, medically necessary, lawful, or reimbursable. It is the complete absence of a responsible physician from the services that is the problem. See, e.g., *Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*, 109 F.4th 1054, 1058 n.2 (8th Cir. 2024) (upholding fraud verdict where a provider "submitted [bills] under the identifier of one provider for work that is done by a different provider.").

argues that there is insufficient evidence that *every* one of Dr. Small's signatures was forged. That only makes BCBSOK's point. Dr. Small has no idea which of his signatures is real or forged because he implemented a business practice of inserting his signature on records he never reviewed. SUF 77-79. And as the Medical Director and attending physician, he is the one responsible for the records and his signature. That Dr. Small cannot say which (if any) of his own records was legitimate does not create a dispute of fact. It does the opposite.

Similarly, Dr. Small's suggestion that he "had no involvement in the preparation, review, and submission of insurance claims" (Op. 28) also fails. The insurance claims were literally created based upon his own forged medical records. SUF 83.

Dr. Small ends by contending that this issue requires a "claim-by-claim analysis of each claim to each medical record, including who provided the treatment, who supervised the mid-level practitioners, and so on." Op. 27. That is simply false. It is undisputed that Dr. Small implemented a business practice of using a forged signature so he didn't have to review records he was responsible for and that identified him as the attending physician. It is equally undisputed that Dr. Small himself was not involved in any treatment or supervision of individual patient care. Those are the only facts material to summary judgment, and Dr. Small cannot avoid these undisputed facts by vague references to what other people might have done. Dr. Small is the defendant in this case, and his forgery and dereliction of duty warrant summary judgment.

## CONCLUSION

The Court should streamline the trial and grant partial summary judgment in favor of BCBSOK.

Respectfully submitted,

Dated: September 14, 2026

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*

Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Benjamin H. McCoy, counsel of record for BCBSOK, certify that, on September 14, 2026, I caused service of the foregoing on all counsel of record through the Court's electronic filing system.

Dated: September 14, 2026 STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*
Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*

# CERTIFICATE OF WORD COUNT

I, Benjamin H. McCoy, counsel of record for BCBSOK, certify that this brief contains 3,282 words, which complies with L.R. 11-6.1. The brief is also fewer than 25 pages, which complies with the page limit set forth in Judge Carter's Procedures.

Dated: September 14, 2026

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Benjamin H. McCoy*

Benjamin H. McCoy (Pro Hac Vice)
bmccoy@stradley.com
Jordann R. Conaboy (Pro Hac Vice)
jconaboy@stradley.com
David D. Piper
dpiper@stradley.com

*Attorneys for Plaintiff*